# UNITED DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JENNIFER THONG,<br>13869 Rembrandt Way<br>Chantilly, VA 20151<br><br>        Plaintiff,<br><br><br>v.<br><br>ANDRE CHREKY SALON,<br>1604 K Street, N.W.<br>Washington, D.C. 20006<br><br>ANDRE CHREKY,<br>1604 K Street, N.W.<br>Washington, D.C. 20006<br><br>and<br><br>SPAC, LLC<br>1604 K Street, N.W.<br>Washington, D.C. 20006<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      Civil Action No:06-CV-01807-RCL |

## AMENDED COMPLAINT

Plaintiff, Jennifer Thong (the "Plaintiff"), by counsel, hereby files this Complaint for violation of the Fair Labor Standards Act of 1963 ("FLSA"); violation of the D.C. Wage and Hour Act ("WHA"); violation of the D.C. Wage Payment and Collection Act ("WPCA"), violation of the D.C. Human Rights Act ("DCHRA"); for unlawful assault, battery and conversion; negligence; and for intentional infliction of emotional distress against Defendants Andre Chreky ("Mr. Chreky"),  Andre Chreky Salon/Andre Chreky Inc. (the "Salon") and SPAC, LLC. ("SPAC") (collectively  "Defendants").  The Defendants did not compensate

Plaintiff for all hours worked and did not pay her at one and one half times her normal hourly rate of pay for all hours worked in excess of forty hours per week. As a result, Mr. Chreky and the Salon knowingly, willfully and intentionally violated and continue to violate the FLSA, the WHA and the WPCA. Plaintiff therefore brings this to recover unpaid wages, overtime pay, liquidated damages, attorney's fees and costs.

Further, Mr. Chreky and the Salon subjected Plaintiff to unwanted sexual comments, touches and physical attacks violating the DCHRA and intentionally committed assault, battery and intentional infliction of emotional distress against Plaintiff. The Salon and SPAC were negligent in failing to warn and protect Plaintiff from this physical and emotional harm. In addition, Mr. Chreky and the Salon confiscated and retained money that Plaintiff had earned in tips committing conversion and economically harming against Plaintiff. Plaintiff therefore brings this action for economic, compensatory and punitive damages, attorney's fees and costs, and all other forms of relief the Court deems just. Upon information and belief, Plaintiff alleges as follows:

## PARTIES AND JURISDICTION

1.      Plaintiff Jennifer Thong ("Plaintiff" or "Ms. Thong"), is a resident of Virginia. The actions complained of herein, however, took place primarily in the District of Columbia.

2.      Defendant Andre Chreky Salon/Andre Chreky Inc. (the "Salon"), is a District of Columbia corporation engaged in business at 1604 K Street, N.W. Washington, D.C.

3.      Defendant Andre Chreky ("Mr. Chreky"), is the owner and manager of Andre Chreky Salon. Mr. Chreky is a resident of Virginia and resides at 549 River Bend Road, Falls Church, Virginia 22066. Mr. Chreky is part owner of the Salon and SPAC.

4.      Defendant SPAC, LLC ("SPAC") is a District of Columbia corporation with its principal

2

place of business at 1604 K Street, N.W., Washington, D.C. 20006. SPAC owns and rents the property that houses the Salon. SPAC is owned and operated by principals Mr. Chreky and his wife, Serena Chreky.

5.      As Defendants regularly transact business in the District of Columbia, they are subject to personal jurisdiction in the District of Columbia.

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and § 1343(a)(3), as this case involves federal questions of law. This Court has supplemental jurisdiction over Plaintiff's state and common law claims under 28 U.S.C. § 1367(a).

## RELEVANT FACTS

### Background

7.      The Salon is a full service salon providing hair cuts, hair styling, hair coloring, manicures, pedicures, facials and massages.

8.      Mr. Chreky is the owner and operator of the Salon. Mr. Chreky has control over the day-to-day operations of the Salon and acted in the interest of the Salon in relation to Plaintiff.

9.      Mr. Chreky and the Salon are engaged in interstate commerce in the District of Columbia as they run and operate a hair salon that does business with clients in the District of Columbia and routinely provide stylists who travel all over the United States with clients.

10.     Plaintiff worked as a stylist at the Salon from 1998 until on or about April 1, 2006.

### Wage and Overtime Violations

11.     Upon information and belief, in 2003, the Salon was investigated by the Department of Labor ("DOL") for overtime violations. The DOL found that the Salon required stylists and other employees to work well over forty (40) hours per week every week, often as many as sixty

3

60 to seventy (70) hours per week, and failed to pay them any requisite overtime.

12.    Upon information and belief, as a result of the DOL investigation, the Salon was required to pay the overdue overtime to many employees.

13.    Upon information and belief, despite this DOL investigation and its results, in 2004, the Salon classified all stylists as "salaried" employees and stopped paying overtime for work in excess of forty (40) hours.    Failure to pay stylists for hours worked and for overtime after the DOL investigation constitutes a knowing and willful failure by the Salon and Mr. Chreky to comply with the requirements of the FLSA, the WHA and the WPCA.

14.    Upon information and belief, despite calling the stylists "salaried" employees, the Salon treated them at all times as hourly employees.  The Salon would dock pay for stylists who did not work at least fifty-five (55) hours and would not pay stylists for any work in excess of fifty-five (55) hours.  Additionally, the stylists and other employees were not paid overtime for hours worked over forty (40) hours.

15.    Upon information and belief, from 2004 when the stylists were reclassified as "salaried" employees until February of 2006, the Plaintiff worked an estimated sixteen (16) overtime hours per week for which she was not compensated.

16.    On a daily basis, Mr. Chreky and the Salon would take money or checks earned by the Plaintiff and other stylists.  Every Saturday, Mr. Chreky and the Salon would then hand out envelopes containing the "tips."  Such envelopes contained less than the amount of tips that had been earned by the Plaintiff and at times, if Mr. Chreky was unhappy or angry with the Plaintiff or other stylists, the envelopes would contain no money at all.

**Inappropriate Sexual Comments**

4

17.    On a daily basis, Mr. Chreky will comment to one or more female employees that she looks "sexy" or "especially sexy today." He also repeatedly references the sex lives of female employees, questions whether their husbands can please them in bed and offers to "help out."

18.    Starting in the fall of 2000, Mr. Chreky made daily comments to Plaintiff about the way she looked and her attire. Such statements included that she looked "sexy," had "sexy legs," and that he liked the way she looked in that shirt or with that lipstick.

19.    Starting in the fall of 2003, Mr. Chreky repeatedly required Plaintiff to come to his office at the end of the day. During such visits, Mr. Chreky would discuss sexual topics and repeatedly proposition Plaintiff to have sex with him. He also told her that other stylists were having an affair with him.

20.    During such visits to his office, Mr. Chreky would promise better work, such as assigning the President's family to her or offering to let her travel with the President's family, in an attempt to induce Plaintiff to have sex with him.

21.    At a fundraiser in December of 2004, Mr. Chreky asked Plaintiff if she wanted to have a threesome and that he "would get any kind of girl [she] wanted, blond or brunette." Later he asked another employee if Plaintiff was the "hottest" stylist and if the three of them wanted to get a room with him for a threesome.

### Touching and Physical Attacks

22.    Throughout her employment, Mr. Chreky would often direct Plaintiff to help him with a client's hair. Mr. Chreky would then stand close to Plaintiff, rub hips against her or lean very close to her face as she worked.

23.    On or about November of 2003, Plaintiff was eating lunch in the kitchen area. In front of

5

other employees, Mr. Chreky stated that Plaintiff had sexy legs.  When the other employees had left, Mr. Chreky returned, leaned over Plaintiff and rubbed her leg and upper thigh.  Plaintiff told Mr. Chreky to stop and he responded, "you have such smooth legs.  Just let me touch them." Plaintiff slapped his hand and fled the room.

24.    On or about early summer of 2004, Plaintiff was waiting outside of the Salon for a ride that was over an hour late.  Mr. Chreky offered her a ride, which she declined.  After Mr. Chreky repeatedly insisted on driving her home, she reluctantly agreed.  On the drive home, Mr. Chreky pulled the car over and attacked her.  He pulled her toward him, tried to kiss her, pinned her to the back of the seat, and rolled on top of her.  Mr. Chreky lifted her skirt, grabbed her underwear and pulled it to the side, exposing her vagina, and then grabbed her genitals.  Plaintiff pleaded and tried to get him to stop.  Mr. Chreky unzipped his pants and tried to penetrate her with his penis.  When Plaintiff threatened to call the cops, Mr. Chreky stopped and drove her home while threatening her to not tell anyone about the ride home.

25.    Later in 2004, Plaintiff was again assaulted while alone in the lunchroom.  Mr. Chreky shoved her against the sink, pushed his groin against hers and attempted to get his hand under her bra.  When Plaintiff grabbed his arm and told him to stop, he pleaded for her to "let me touch it one time, just one time."  Plaintiff threatened to scream if he did not stop.  In response, Mr. Chreky backed off and she fled the room.

26.    In 2004 through 2006, Mr. Chreky would continually attempt to trap Plaintiff alone while at work.  If he ever found her alone, he would grab her around the shoulders or waist and press his groin against her body.  He would often try to grab her buttocks or genital area, and would grab and lift her skirt.  These attacks occurred, at times, as much as twice per day.

27.    In December of 2004, Mr. Chreky lured Plaintiff to his office by promising to switch her

6

schedule as she had repeatedly requested (in an attempt to be scheduled to work when Mr. Chreky was not). Suddenly, Mr. Chreky rolled his chair toward hers, grabbed her legs and moved his hand up toward her groin. She tried to resist. He told her to relax. He then grabbed the tie in the front of her shirt, tried to open it and get his hands under her bra. Plaintiff stood up crying and left the office.

28.    In March of 2005, Mr. Chreky attacked Plaintiff in the kitchen by slamming her into the sink. He pressed his body against hers, pried her legs apart with his leg and placed his hand underneath her skirt. Although Plaintiff repeatedly tried to escape, Mr. Chreky physically restrained her. He repeatedly asked her to just let him touch her. Mr. Chreky was able to grab the side of her underwear and told her, while holding a lighter up to her face, that if she kept fighting that he was going to burn her underwear off. Mr. Chreky then violently ripped her underwear off (bruising her genital area) and holding it up to his face, while saying, "see, now I got it and now I am going to keep it as a souvenir." That day, he repeatedly taunted her at her work station following this attack.

29.    Repeatedly during 2005 and up to her termination, Mr. Chreky would grab her when he found her alone and push her head toward his genitals demanding that she "give him a blow job." Plaintiff would often end these attacks by fleeing, pushing him back or telling him that another employee was coming.

30.    In late summer of 2005, Mr. Chreky ordered Plaintiff to do inventory on the fifth floor. Plaintiff thought she was safe on the fifth floor because Mr. Chreky was with a client, but Mr. Chreky followed and attacked her by forcing her against a wall at the top of the stairwell. Plaintiff tried to escape down the stairs, but to no avail. When Plaintiff screamed, he covered her mouth with his hand. Mr. Chreky unzipped his pants, pulled the Plaintiff's skirt up above her

7

waist, pulled her underwear to one side and attempted to penetrate her. At this point, Plaintiff was sobbing loudly and having trouble breathing. When he released her mouth, she began screaming and again, he covered her mouth. Plaintiff was finally able to get away when another employee walked to the bottom of the stairwell.

31.    In the fall of 2005, Mr. Chreky again required Plaintiff to come to his office. She went, but stood just inside the open door. Mr. Chreky got up and slammed the door, pushed her over and got on top of her. Plaintiff began to cry and yelled for him to let her go. He grabbed her skirt, tore it and tried to get his hand to her genital area. Mr. Chreky unzipped his pants, tried to get her skirt above her waist and attempted to penetrate her. At this time, another employee knocked on the door. In response, Mr. Chreky jumped up and zipped his pants. Plaintiff opened the door and ran past her shocked colleague.

### Reprisals and Damages

32.    Mr. Chreky repeatedly retaliated against Plaintiff for her rejections of his sexual advances. Mr. Chreky would alter her schedule, disrupt her work with regular clients, reassign her regular clients to other stylists and refuse to assign her new clients. Mr. Chreky would even assign clients who specifically asked for Plaintiff to other stylists. Such actions dramatically altered Plaintiff's earning potential and caused her great economic harm.

33.    As a result of Mr. Chreky's attacks, Plaintiff has experienced severe depression, anxiety, trouble sleeping, severe headaches, nightmares, and trouble being intimate with her husband. Plaintiff is currently under the care of a psychiatrist for treatment of injuries caused by Mr. Chreky's attacks.

34.    Plaintiff was the primary wage earner for her family while working at the Salon and earned close to $100,000 annually. She was concerned about being able to provide for her

family and she knew it would take years for her to build up her clientele if she left the Salon, which would cause her to earn far less income. Despite these needs, she could not take working at the Salon anymore and in February of 2006 she decided to leave.

35.    As a result of being forced to leave the Salon because of Mr. Chreky's attacks, Plaintiff was forced to take a new job, which only pays her about half of what she made at the Salon.

## COUNT I—Defendants Mr. Chreky and the Salon
### (Violation of the FLSA)

36.    Plaintiff incorporates herein by reference all of the allegations contained in paragraphs one through thirty-five.

37.    At all times relevant, Defendants were "employers" within the meaning of the FLSA. 29 U.S.C. § 203(d).

38.    At all times relevant, Plaintiff was an "employee" and was engaged in "commerce" within the meaning of the FLSA. 29 U.S.C. §§ 203(b), 203(e). Plaintiff was not an exempt employee under the FLSA, but rather, was a covered employee during her employment and was entitled to the protections of the FLSA.

39.    During the course of Plaintiff's employment, Plaintiff was required to work in excess of fifty-five (55) hours per week without pay and in excess of forty (40) hours without being paid one and one half time her normal hourly rate of pay. Defendants' practice of failing to pay overtime compensation for all work in excess of forty (40) hours to Plaintiff and for retaining Plaintiff's tips was and is in violation of the FLSA. 29 U.S.C. § 207.

40.    Plaintiff is entitled to an award of her unpaid overtime compensation (at the rate of one and one-half times her regular pay) and unpaid tips for the time period commencing two (2) years prior to the filing of this Complaint to the date of any final award of such unpaid overtime

9

compensation.

41.     Additionally, Plaintiff is entitled to an award of liquidated damages under the FLSA as well as pre- and post judgment interest, attorneys' fees and costs, all to be determined at the trial.

WHEREFORE, Plaintiff prays that she be awarded judgment against Defendants, jointly and severally, for unpaid overtimes wages and tips in an amount to be determined at trial, or other such amount as proved at trial, plus an equal amount in liquidated damages, interest (both pre- and post-judgment), attorney's fees, the costs of this action and any other and further relief this Court or a jury deems appropriate.

### COUNT II—Defendants Mr. Chreky and the Salon
### (Willful violation of FLSA)

42.     Plaintiff incorporates herein by reference all of the allegations contained in paragraphs one through forty-one.

43.     Defendants' practice of failing to pay overtime compensation for all work in excess of forty (40) hours to Plaintiff was and is in violation of the FLSA.

44.     Defendants' violations of the FLSA were and are being done willfully.  Because the DOL investigated and cited the Defendants in 2003 for failing to follow the FLSA, Defendants either knew or showed reckless disregard as to whether its conduct was prohibited by the FLSA.

45.     Plaintiff is entitled to an award of her unpaid overtime compensation (at the rate of one and one-half times her regular pay) and unpaid tips for the time period commencing three (3) years prior to the filing of this Complaint to the date of any final award of such unpaid overtime compensation.

10

46.     Additionally, Plaintiff is entitled to an award of liquidated damages under the FLSA as well as pre- and post judgment interest, attorneys' fees and costs, all to be determined at the trial.

WHEREFORE, Plaintiff prays that she be awarded judgment against Defendants, jointly and severally, for unpaid overtimes wages and tips in the amount an amount to be determined at trial, or other such amount as proved at trial, plus an equal amount in liquidated damages, interest (both pre- and post-judgment), attorney's fees, the costs of this action and any other and further relief this Court or a jury deems appropriate.

### COUNT III—Defendants Mr. Chreky and the Salon
### (Violation of the D.C. Wage and Hour Act)

47.     Plaintiff incorporates herein by reference all of the allegations contained in paragraphs one through forty-six.

48.     At all times relevant, Defendants were "employers" within the meaning of the WHA. D.C. CODE § 32-1002(3).

49.     At all times relevant, Plaintiff and was an "employee" within the meaning of the WHA. D.C. CODE § 32-1002(3).

50.     During the course of Plaintiff's employment, Plaintiff was required to work in excess of fifty-five (55) hours per week without pay and in excess of forty (40) hours without being paid one and one half times her normal hourly rate of pay.    Defendants' practice of failing to pay overtime compensation for all work in excess of forty (40) hours to Plaintiff and of retaining tips earned by Plaintiff was and is in violation of the WHA.  D.C. CODE § 32-1003.

51.     Plaintiff is entitled to an award of her unpaid overtime compensation (at the rate of one and one-half times her regular pay) and unpaid tips for the time period commencing three years

prior to the filing of this Complaint to the date of any final award of such unpaid overtime compensation. D.C. CODE § 32-1012.

52.    Additionally, Plaintiff is entitled to an award of liquidated damages under the WHA as well as pre- and post judgment interest, attorneys' fees and costs, all to be determined at the trial. D.C. CODE § 32-1012.

WHEREFORE, Plaintiff prays that she be awarded judgment against Defendants, jointly and severally, for unpaid overtimes wages and tips in the amount an amount to be determined at trial, or other such amount as proved at trial, plus an equal amount in liquidated damages, interest (both pre- and post-judgment), attorney's fees, the costs of this action and any other and further relief this Court or a jury deems appropriate.

## COUNT IV—Defendants Mr. Chreky and the Salon
### (Violation of the D.C. Wage Payment and Collection Act)

53.    Plaintiff incorporates herein by reference all of the allegations contained in paragraphs one through fifty-two.

54.    At all times relevant, Defendants were "employers" within the meaning of the WPCA. D.C. CODE § 32-1301(1).

55.    At all times relevant, Plaintiff was an "employee" within the meaning of the WPCA. D.C. CODE § 32-1301(2).

56.    During the course of Plaintiff's employment, Plaintiff was required to work in excess of fifty-five (55) hours per week without pay and in excess of forty (40) hours without being paid one and one half time her normal hourly rate of pay.    Additionally, Defendants failed to pay Plaintiff the money that she had earned as tips as part of her compensation.    Under the WPCA,

Defendants were and are obligated to pay Plaintiff all wages due for work that Plaintiff performed. D.C. CODE § 32-1302.

57.    Plaintiff is entitled to an award of her unpaid compensation. Additionally, Plaintiff is entitled to an award of liquidated damages under the WPCA as well as pre- and post-judgment interest, attorneys' fees and costs, all to be determined at the trial. D.C. CODE § 32-1308.

WHEREFORE, Plaintiff prays that she be awarded judgment against the Defendants, jointly and severally, for unpaid overtimes wages and tips in the amount an amount to be determined at trial, or other such amount as proved at trial, plus an equal amount in liquidated damages, interest (both pre- and post-judgment), attorney's fees, the costs of this action and any other and further relief this Court or a jury deems appropriate.

## COUNT V—Defendants Mr. Chreky and the Salon
### (Violation of the District of Columbia Human Rights Act)

58.    Plaintiff incorporates herein by reference all of the allegations contained in paragraphs one through fifty-seven.

59.    At all times relevant, Defendants were "employers" within the meaning of the District of Columbia Human Rights Act ("DCHRA"). D.C. CODE § 2-1401.2(10).

60.    At all times relevant, Plaintiff was an "employee" within the meaning of the DCHRA. D.C. CODE § 2-1401.2(9).

61.    Plaintiff is female and therefore, is a member of a protected classification within the meaning of the DCHRA. D.C. CODE § 2-1402.11.

62.    Since her hiring in 1998, Plaintiff was subjected to a constant, continuous, ongoing and pervasively hostile working environment by Defendants. This hostile work environment was so

severe and pervasive that it altered the terms and conditions of Plaintiff's employment.

63.    Since her hiring in 1998, Mr. Chreky has repeatedly solicited sexual favors and/or contact with Plaintiff in exchange for employment benefits such as assigning her to high profile clients like the President's family.

64.    Plaintiff repeatedly advised Mr. Chreky that his statements and advances were offensive and unwelcome.

65.    Because Plaintiff repeatedly resisted Mr. Chreky's attacks, Mr. Chreky took tangible employment actions against her including reassigning key clients, refusing to assign new clients, adjusting her schedule, all of which caused her to lose much of her income.  Additionally, Mr. Chreky's continual attacks and harassment were so unbearable that Plaintiff was forced to find another job, effectively constructively terminating her.

66.    The harassment complained of affected the term, condition and privilege of Plaintiff's employment as prohibited by the DCHRA.

67.    The Salon is vicariously liable for Mr. Chreky's actions because he was, at all times relevant to this Complaint, the owner and operator of the Salon.

68.    As a direct and proximate result of the discriminatory conduct of Defendants, Plaintiff has lost considerable pay, has suffered humiliation, mental anguish, and emotional pain, as well as other incidental and consequential damages.

69.    Defendants unlawful and discriminatory motives in their treatment of the Plaintiff's employment were willful, wanton and malicious.  As a result, Plaintiff is entitled to full relief under the law, including, but not limited to, economic, compensatory and punitive damages.

WHEREFORE, Plaintiff prays that she be awarded: (1) a finding that Defendants

violated the DCHRA; (2) backpay, including all increases in pay and other benefits of employment that Plaintiff would have received but for Defendants' discriminatory conduct; (3) future pay, in lieu of reinstatement, including increases in pay and other benefits of employment that Plaintiff would have received but for Defendants' discriminatory conduct; (4) compensatory damages in an amount to be determined at trial but no less than $1,000,000 or a greater amount as deemed appropriate by a jury; (5) punitive damages in an amount to be determined at trial but no less than $3,000,000 or a greater amount deemed appropriate by a jury; and (6) attorney's fees and costs relating to this action and any other relief deemed appropriate.

**COUNT VI—Defendants Mr. Chreky and the Salon**
**(Violation of the District of Columbia Human Rights Act-Retaliation)**

70.     Plaintiff incorporates herein by reference all of the allegations contained in paragraphs one through sixty-nine.

71.     At all times relevant, Defendants were "employers" within the meaning of the DCHRA. D.C. CODE § 2-1401.2(10).

72.     At all times relevant, Plaintiff was an "employee" within the meaning of the DCHRA. D.C. CODE § 2-1401.2(9).

73.     Plaintiff is female and therefore is a member of a protected classification within the meaning of the DCHRA. D.C. CODE § 2-1402.11.

74.     Since her hiring in 1998, Plaintiff has been subjected to a constant, continuous, ongoing sexual harassment by Mr. Chreky.

75.     Plaintiff engaged in protected activity when she complained to Mr. Chreky that his comments were offensive and not welcome, and when she refused to consent to have sex with Mr. Chreky on multiple occasions.

76.     In response to Plaintiff's protected activity, Mr. Chreky has taken tangible employment actions against her including, reassigning key clients, refusing to assign new clients, adjusting her schedule, all of which caused her to lose much of her income.   Such actions constitute retaliation in violation of the DCHRA.   D.C. CODE § 2-1402.61.

77.     The Salon is vicariously liable for Mr. Chreky's actions because he was, at all times relevant to this Complaint, the owner and operator of the Salon.

78.     As a direct and proximate result of the retaliation of Defendants, Plaintiff has lost considerable pay, has suffered humiliation, mental anguish, and emotional pain, as well as other incidental and consequential damages.

79.     Defendants' retaliations against the Plaintiff were willful, wanton and malicious.   As a result, Plaintiff is entitled to full relief under the law, including, but not limited to, economic, compensatory and punitive damages.

WHEREFORE, Plaintiff prays that she be awarded: (1) a finding that the Defendants violated the DCHRA; (2) backpay, including all increases in pay and other benefits of employment that Plaintiff would have received but for Defendants' discriminatory conduct; (3) future pay, in lieu of reinstatement, including increases in pay and other benefits of employment that the Plaintiff would have received but for Defendants' discriminatory conduct; (4) compensatory damages in an amount to be determined at trial but no less than $1,000,000 or a greater amount as deemed appropriate by a jury; (5) punitive damages in an amount to be determined at trial but no less than $3,000,000 or a greater amount deemed appropriate by a jury; and (6) attorney's fees and costs relating to this action and any other relief deemed appropriate.

## COUNT VII—Defendants Mr. Chreky and the Salon
### (Assault)

80.    Plaintiff incorporates herein by reference all of the allegations contained in paragraphs one through seventy-nine.

81.    On multiple occasions, Mr. Chreky intentionally threatened or attacked Plaintiff causing her to suffer an apprehension of an unwanted physical contact from Mr. Chreky.

82.    Mr. Chreky knew or should have known that such actions would cause Plaintiff to suffer a reasonable apprehension of immediate harm and offensive contact to her person.

83.    Plaintiff reasonably believed that Mr. Chreky would harm her and such fear was directly caused by Mr. Chreky's actions.

84.    The threat of attack and the apprehension of unwanted physical contact has directly caused Plaintiff to suffer severe depression, anxiety, trouble sleeping, severe headaches, nightmares, and trouble being intimate with her husband.  Plaintiff is currently under the care of a psychiatrist for treatment for injuries caused by Mr. Chreky's attacks.

85.    The Salon is vicariously liable for Mr. Chreky's actions because he was, at all times relevant to this Complaint, the owner and operator of the Salon.

WHEREFORE, Plaintiff prays that she be awarded: (1) backpay, including all increases in pay and other benefits of employment that Plaintiff would have received but for Defendants' tortious conduct; (2) future pay, in lieu of reinstatement, including increases in pay and other benefits of employment that Plaintiff would have received but for Defendants' tortious conduct; (3) compensatory damages in an amount to be determined at trial but no less than $1,000,000 or a greater amount as deemed appropriate by a jury; (4) punitive damages in an amount to be determined at trial but no less than $3,000,000 or a greater amount deemed appropriate by a jury;

17

and (5) attorney's fees and costs relating to this action and any other relief deemed appropriate.

<u>**COUNT VIII—Defendants Mr. Chreky and the Salon**</u>
**(Battery)**

86.    Plaintiff incorporates herein by reference all of the allegations contained in paragraphs one through eighty-five.

87.    On multiple occasions, Mr. Chreky intentionally physically touched and attacked the Plaintiff

88.    Mr. Chreky knew or should have known that such contact would bring about harmful and offensive contact to the Plaintiff's person.  Mr. Chreky acted with intent and malice in attacking the Plaintiff.

89.    The physical attacks and unwanted physical contact from the Mr. Chreky has directly caused the Plaintiff to suffer bruises, aches, pains, severe depression, anxiety, trouble sleeping, severe headaches, nightmares, and trouble being intimate with her husband.  Plaintiff is currently under the care of a psychiatrist for treatment for injuries caused by Mr. Chreky's attacks.

90.    The Salon is vicariously liable for Mr. Chreky's actions because he was, at all times relevant to this Complaint, the owner and operator of the Salon.

WHEREFORE, Plaintiff prays that she be awarded: (1) backpay, including all increases in pay and other benefits of employment that Plaintiff would have received but for Defendants' tortious conduct; (2) future pay, in lieu of reinstatement, including increases in pay and other benefits of employment that Plaintiff would have received but for Defendants' tortious conduct; (3) compensatory damages in an amount to be determined at trial but no less than $1,000,000 or a greater amount as deemed appropriate by a jury; (4) punitive damages in an amount to be determined at trial but no less than $3,000,000 or a greater amount deemed appropriate by a jury;

18

and (5) attorney's fees and costs relating to this action and any other relief deemed appropriate.

**COUNT IX—Defendants Mr. Chreky and the Salon**
**(Conversion)**

91.    Plaintiff incorporates herein by reference all of the allegations contained in paragraphs one through ninety.

92.    As part of her employment compensation, Plaintiff earned tips from clients.  The clients paid such tips to Plaintiff and the tips belonged to Plaintiff.

93.    Mr. Chreky required Plaintiff, and other stylists, to give him the full amount of their tips on a daily basis.  On a weekly basis, Mr. Chreky would return some but not all of the tips that Plaintiff had earned and at times, Mr. Chreky would not return any of the tips at all.

94.    The Salon is vicariously liable for Mr. Chreky's actions because he was, at all times relevant to this Complaint, the owner and operator of the Salon.

95.    The taking and retention of Plaintiff's money constitutes the unlawful taking and exercise of ownership and control by Defendants over the personal property of Plaintiff.  Because Defendants never returned most of the tips, such a taking constituted a complete deprivation of Plaintiff's rights to such property.

96.    As a direct result of Defendants' actions, Plaintiff has suffered a loss of a large amount of her income.

WHEREFORE, Plaintiff prays that she be awarded: (1) backpay, including all increases in pay and other benefits of employment that Plaintiff would have received but for Defendants' tortious conduct; (2) future pay, in lieu of reinstatement, including increases in pay and other benefits of employment that Plaintiff would have received but for Defendants' tortious conduct;

19

(3) compensatory damages in an amount to be determined at trial but no less than $1,000,000 or a greater amount as deemed appropriate by a jury; (4) punitive damages in an amount to be determined at trial but no less than $3,000,000 or a greater amount deemed appropriate by a jury; and (5) attorney's fees and costs relating to this action and any other relief deemed appropriate.

### COUNT X—Both Defendants
### (Intentional Infliction of Emotional Distress)

97.    Plaintiff incorporates herein by reference all of the allegations contained in paragraphs one through ninety-six.

98.    Mr. Chreky repeatedly sexually harassed and attacked Plaintiff.  Such pattern of harassment and attacks constitute extreme and outrageous conduct by Mr. Chreky.  Mr. Chreky acted intentionally and in reckless disregard that such actions would cause severe emotional distress to Plaintiff.

99.    The physical attacks and unwanted physical contact from Mr. Chreky has directly caused Plaintiff to suffer severe emotional distress including, severe depression, anxiety, trouble sleeping, severe headaches, nightmares, and trouble being intimate with her husband.  Plaintiff is currently under the care of a psychiatrist for treatment for injuries caused by Mr. Chreky's attacks.

100.    The Salon is vicariously liable for Mr. Chreky's actions because he was, at all times relevant to this Complaint, the owner and operator of the Salon.

WHEREFORE, Plaintiff prays that she be awarded: (1) backpay, including all increases in pay and other benefits of employment that Plaintiff would have received but for Defendants' tortious conduct; (2) future pay, in lieu of reinstatement, including increases in pay and other benefits of employment that Plaintiff would have received but for Defendants' tortious conduct;

(3) compensatory damages in an amount to be determined at trial but no less than $1,000,000 or a greater amount as deemed appropriate by a jury; (4) punitive damages in an amount to be determined at trial but no less than $3,000,000 or a greater amount deemed appropriate by a jury; and (5) attorney's fees and costs relating to this action and any other relief deemed appropriate.

### COUNT XI—The Salon
### (Negligent Supervision)

101.    Plaintiff incorporates herein by reference all of the allegations contained in paragraphs one through one hundred.

102.    As an employer, the Salon has a duty to use reasonable care in its supervision and retention of employees. The Salon owed a duty to Plaintiff to protect her from the unreasonable risk of foreseeable harm.

103.    The Salon also had a duty to train, supervise, and restrain its principal manager, Mr. Chreky, from harming Plaintiff and its other female employees.

104.    Mr. Chreky's persistent sexual harassment and assaultive conduct towards Plaintiff and other female Salon employees was well known to the Salon.

105.    The Salon, owned and controlled by Mr. Chreky and his wife, Serena Chreky, had actual and constructive knowledge that Mr. Chreky harassed, assaulted, and battered Plaintiff and other female Salon employees. The Salon acquired this knowledge through Mr. Chreky, its President and Treasurer.

106.    The Salon breached its duties to protect its employees from unreasonable risk of harm, and to train and restrain its manager Mr. Chreky from sexually harassing and assaulting its employees.

21

107.   The Salon's breach of its duties was the proximate cause of Plaintiff's injuries and damages.

WHEREFORE, the Plaintiff prays that she be awarded: (1) backpay, including all increases in pay and other benefits of employment that Plaintiff would have received but for Defendants' unlawful conduct; (2) future pay, in lieu of reinstatement, including increases in pay and other benefits of employment that the Plaintiff would have received but for Defendants' unlawful conduct; (3) compensatory damages in an amount to be determined at trial but no less than $1,000,000 or a greater amount as deemed appropriate by a jury; (4) punitive damages in an amount to be determined at trial but no less than $3,000,000 or a greater amount deemed appropriate by a jury; and (5) attorney's fees and costs relating to this action and any other relief deemed appropriate.

## COUNT XII—SPAC, LLC.
### (Negligence)

108.    Plaintiff incorporates herein by reference all of the allegations contained in paragraphs one through one hundred and seven.

109.    Landlords in the District of Columbia have a duty to protect invitees from the foreseeable risk of harm caused by third parties on its property.

110.    SPAC, LLC., a corporation owned and operated by Mr. Chreky and his wife, Serena Chreky, leased the premises at 1604 K Street, NW, Washington, D.C. to the Salon where Plaintiff worked.

111.    Plaintiff's employment at the Salon made here an invitee of SPAC, LLC.

112.    SPAC, LLC. had actual and constructive knowledge that Mr. Chreky harassed and assaulted Plaintiff and other female Salon employees on its premises.  This knowledge was gained from its principal, Mr. Chreky.

113.    SPAC, LLC had a duty to warn and protect Plaintiff from known harassing and assaultive conduct.

114.    SPAC, LLC.'s breached its duty to warn and protect Plaintiff, and was the proximate cause of Plaintiff's injuries and damages.

WHEREFORE, the Plaintiff prays that she be awarded: (1) backpay, including all increases in pay and other benefits of employment that Plaintiff would have received but for Defendants' unlawful conduct; (2) future pay, in lieu of reinstatement, including increases in pay and other benefits of employment that the Plaintiff would have received but for Defendants' unlawful conduct; (3) compensatory damages in an amount to be determined at trial but no less

than $1,000,000 or a greater amount as deemed appropriate by a jury; (4) punitive damages in an amount to be determined at trial but no less than $3,000,000 or a greater amount deemed appropriate by a jury; and (5) attorney's fees and costs relating to this action and any other relief deemed appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectively requests that this Court: (1) enter judgment against Defendants on all claims, (2) grant Plaintiff the specific relief requested following each claim, including attorney's fees and costs, and (3) grant such other relief as this Court deems just and proper.

Respectfully submitted,

Dated: February 15, 2007    KATTEN MUCHIN ROSENMAN LLP

By:_____

Jonathan G. Rose (D.C. Bar No. 446208)
Ryan J. Liebl
1025 Thomas Jefferson Street, N.W.
East Lobby, Suite 700
Washington, D.C. 20007
(202) 625-3807
jonathan.rose@kattenlaw.com

Counsel for Plaintiff

## JURY DEMAND

Plaintiff demands a trial by jury on all triable issues.

_____
Jonathan G. Rose

25