IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JENNIFER THONG,                          )
                                         )
        Plaintiff,                       )
                                         )
        v.                               )       Civil No. 1:06-1807
                                         )
ANDRE CHREKY SALON, *et al.*,            )
                                         )
        Defendants.                      )

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Defendants Andre Chreky Salon and Andre Chreky (collectively "Defendants") oppose

Plaintiff Jennifer Thong's Motion to Compel the Production of Documents as follows:

*Introduction*

Ms. Thong served her Second Set of Requests for Production of Documents on

Defendants on October 26, 2007.  Defendants timely objected to her Request 19 for "All

documents evidencing the number of hours worked by employees of the Salon, including, but not

limited to, time cards, work schedules, and any reports or notes kept by supervisors or managers

regarding the number of hours worked by employees of the Salon" because "it is not limited

whatsoever in time" and "is duplicative, as Defendants have previously produced all payroll

records, which reflect hours worked, for all employees currently maintained by Defendants."

Defendants timely objected to her Request 20 for "The verified transcript of the

Deposition of Andre Chreky in the matter *Commonwealth ex rel. Doudaklian v. Andre Chreky*,

in the Fairfax County Circuit Court, State (sic) of Viginia" because the transcript "is not likely to

lead to the discovery of admissible evidence."

Defendants timely objected to her Request 22 for "Any and all credit card statements for the period 1998 to the present for all credit cards identified by Defendants in response to Plaintiff's Second Set of Interrogatories, Interrogatory No. 3" because the request was "overly burdensome and not likely to lead to the discovery of admissible evidence."

Defendants timely objected to her Request 24 for "Any and all documents relating or referring to Defendants' telephone bills and statements for the period 1998 to the present" because "it is unduly burdensome and not likely to lead to the discovery of admissible evidence."

As the following arguments will explain, Defendants are in fact unable to provide any of the requested documents other than those time records already turned over to Plaintiff.

## Argument

As further developed below, the grounds for Defendants' objections to Requests 19, 20, 22, and 24 remain true, and, notwithstanding these grounds, Defendants have produced all documents in their possession responsive to these Requests.

### I.    *Request 19*

Defendants are unable to produce further records evidencing hours worked, as requested by Plaintiff, because they already have produced all such documents in their possession. Further, Plaintiff's Fair Labor Standards Act (FLSA) claim allows a recovery for a time period of, at most, three years. As Plaintiff filed her Complaint in September of 2006, she can allege no set of facts that would entitle her to any compensation pre-dating September of *2003*. Under these circumstances, there is no conceivable way that records evidencing hours worked, dating back to *1998* – even if they were in Defendants' possession – could lead to the discovery of admissible evidence.[1] This request therefore is *per se* overly broad in scope of time.

---

[1]  Plaintiff's argument that the time scope objection is "moot" because she previously has limited the time period for the request to documents dating from "1998 to the present" fails to eliminate the insurmountable problem of the

More to the point, Defendants already have provided Plaintiff with *all* payroll records and time cards in their possession evidencing hours worked, and thus their objection that this Request is duplicative is well-taken. Despite the fact that Plaintiff is the *only named Plaintiff* in her FLSA action, Defendants have provided payroll records for *all* employees. While Defendants understand that Plaintiff's claim is based on her argument that she worked time in addition to that contained in the payroll records and time cards, Defendants cannot manufacture such additional responsive information where it does not exist. Therefore, Defendants have reasonably responded to this Request, in compliance with the requirements of the Federal Rules of Civil Procedure, and Plaintiff's Motion to Compel is unnecessary and frivolous.

II.    *Request 20*

Defendants are unable to produce Mr. Chreky's *Doudaklian* deposition transcript as requested because no such transcript exists. Mr. Chreky was not deposed in that case. Further, Plaintiff Thong "supports" this section of her Motion with references to discovery materials only and therefore misleads the Court by failing to reference the outcome (in Mr. Chreky's favor) of the cited *Doudaklian* case.

Specifically, the *Doudaklian* matter sought payment of child support by Mr. Chreky to a child whose mother claimed that Mr. Chreky was the child's father. Mr. Chreky testified at all times in that case that he was *not* the father of the child, and Defendants will so stipulate for purposes of this Motion. Mr. Chreky, if questioned by Plaintiff on this point at any time during the pending case, will not change his prior testimony that he is *not* the father of the child involved in that case. His testimony to that effect was validated by no less than the relevant tribunal, as the Fairfax Circuit Court found that Mr. Chreky was *not*, in fact, the father of the

---

three-year FLSA limitations period. Data contained in time records older than September of 2003 is irrelevant not because of Defendants' preferences, but because of the inherent limitations of the FLSA's recovery scheme.

child in that action. See transcript of Judge Stitt's Ruling in that case, April 21, 2005, attached as Exhibit 1.

To the extent Ms. Thong's arguments may be generalized to suggest that Mr. Chreky lied under oath in the *Doudaklian* matter in any context, Ms. Thong's exclusive use of the Doudaklian and Clarke statements as "evidence" that "Mr. Chreky previously lied under oath" about the paternity of the Doudaklian child is also explicitly misleading to the Court. Plaintiff at no point in her Motion mentions that Judge Stitt's ruling included his statements that "...I have severe problems with Ms. Doudaklian's credibility...[a]nd there was no evidence of a similar nature regarding Mr. Chreky's credibility, no indication he ever lied under oath." Exhibit 1 at 1323, lines 11-16.

Plaintiff also at no point in her Motion acknowledges that Judge Stitt ruled that Mr. Chreky was *not* the father of the Doudaklian child. Pl. Brief at 8; Exhibit 1 at 1328, lines 17-20 ("...DCSE has failed to prove by clear and convincing evidence that Andre Chreky is the father of (the Doudaklian child)"). Instead, Plaintiff provides a string of statements positively advising the Court that Mr. Chreky *is* the father of the Doudaklian child. She states that "Ms. Doudaklian became pregnant with Mr. Chreky's child, and a subsequent DNA test established Mr. Chreky was the father of Ms. Doudaklian's child with 100% probability." Pl. Brief at 8. In fact, Mr. Chreky's paternity defense turned on the *unreliability* of the DNA test used in that case, and Judge Stitt found that the DNA test *did not establish* Mr. Chreky's paternity of the Doudaklian child. Exhibit 1, page 1328, lines 13-15 ("I accept Mueller's testimony that none of the Lab Corp. reports were scientifically valid").

Given these points, Defendants not only are unable to provide the requested transcript, as it does not exist, but her Motion further actively misleads this Court as to both the outcome of

the Doudaklian matter *and* Mr. Chreky's credibility based on his statements in that matter. For these reasons, Plaintiff's Motion on this point is unnecessary, frivolous, and factually misleading.

    *III.*    *Request 22*

Defendants are unable to produce the credit card statements requested because they do not retain credit card statements, generally, and are not in possession of any credit card statements pre-dating the filing of Plaintiff's Complaint in September of 2006, specifically. Even if these statements were in Defendants' possession, Defendants stand on their objection that production of these statements is overly burdensome and not likely to lead to the discovery of admissible evidence.

On September 20, 2007, the Plaintiff in a related case, *Ronnie Barrett v. Andre Chreky Salon, et al.,* Civil Action No. 07-CV-0250, issued a subpoena to the General Counsel of American Express, requiring production of "All records of American Express transactions made by or charged to Andre Chreky; Andre Chreky, Inc.; Andre Chreky Salon and Spa; or SPAC, LLC from January 2000 through the present, including, but not limited to all credit card statements, all records of transactions, and any and all correspondence between American Express and Andre Chreky; Andre Chreky, Inc.; Andre Chreky Salon and Spa; and/or SPAC, LLC relating to any credit card account." *See* Exhibit 2. This subpoena was followed on October 3, 2007, by a virtually identical subpoena requesting the same documents, but providing the names, home and business addresses, and social security numbers of Serena and Andre Chreky. *See* Exhibit 3. Neither Defendants nor, to Defendants' knowledge, American Express, objected to or otherwise moved to quash these subpoenas. By Order of the Court dated September 25, 2007, discovery in this case has been consolidated with discovery in the *Ronnie*

5

*Barrett* case. Furthermore, upon information and belief, counsel for the two plaintiffs have entered into a joint defense agreement.

Accordingly, Plaintiff may access these records, if at all, from counsel for Ms. Barrett or may issue a similar subpoena requesting the records from American Express. Because Plaintiff will be able to access these records, if at all, from a party that almost certainly is in possession of them, as opposed to Defendants, who are not in possession of them, asking Defendants to obtain these records is unduly burdensome. Fed. R. Civ. P. 26(b)(2) (stating that discovery may be limited where discovery is "obtainable from some other source that is…less burdensome").[2]

Second, Plaintiff may continue to assert that "witness testimony in depositions has confirmed that Mr. Chreky was involved in personal intimate relationships," but Plaintiff provides no evidence that any specific hotel or restaurant use possibly evidenced on a credit card used jointly by Mr. and Mrs. Chreky – both very busy business owners – supports such an assertion. Similarly, plaintiff is wholly unable to provide evidence that such reckless assertions bear any relation to Ms. Thong or her claims in this case, each of which is personal to Plaintiff (underpayment of wages, various DCHRA claims, assault and battery, conversion of property, intentional infliction of emotional distress, and negligent supervision). In the absence of some more specific stated expectation for the content of this requested discovery, Plaintiff's desire to examine years worth of credit card statements in their entirety amounts to nothing more than a fishing expedition.

Similarly, Plaintiff's argument that Mr. Chreky's personal use of a corporate American Express card tends to demonstrate an absence of corporate formality between the various

---

[2]  Plaintiff suggests that the Federal Rules require Defendants to have already provided "affidavits or other evidence" in support of the objections to Requests 22 and 24 regarding the unduly burdensome nature of these Requests. Defendants do not question that they must support these objections in the context of a Motion to Compel. However, the Rules do not require elaborate documentary support for objections when they are first interposed.

Defendants isn't based on any facts established to date. Without some factual basis for this assertion, ten years of credit card statements would be discoverable in every case involving a corporate defendant under the guise of this argument.

Plaintiff therefore cannot establish that this request is likely to lead to relevant, discoverable information. Could she, Defendants would continue to assert that it is beyond the requirements of the Rules for Defendants to obtain documents not in their possession and more easily obtained from a third party custodian. Notwithstanding the objections articulated in this Opposition, Defendants have not objected to the third-party subpoena to American Express seeking these statements. For these reasons and because Defendants do not possess the requested credit card statements, Plaintiff's Motion on this point is unnecessary and frivolous.

IV.    *Request 24*

Defendants are unable to produce the telephone records requested because they do not retain telephone statements, generally, and are not in possession of any telephone statements pre-dating the filing of Plaintiff's Complaint in September of 2006, specifically. Even if these statements were in Defendants' possession, Defendants stand on their objection that production of these statements is overly burdensome and not likely to lead to the discovery of admissible evidence.

On November 6, 2007, the Plaintiff in a related case, *Ronnie Barrett v. Andre Chreky Salon, et al.,* Civil Action No. 07-CV-0250, issued a subpoena issued a subpoena to AT&T, requiring production of "All phone records of Andre Chreky (703-662-5418), including all incoming and outgoing calls, from 2000 through the present." See Exhibit 4. Neither Defendants nor, to Defendants' knowledge, AT&T, objected to or otherwise moved to quash this subpoena. By Order of the Court dated September 25, 2007, discovery in this case has been

consolidated with discovery in the *Ronnie Barrett* case. Furthermore, upon information and belief, counsel for the two plaintiffs have entered into a joint defense agreement.

Accordingly, Plaintiff may access these records, if at all, from counsel for Ms. Barrett or may issue a similar subpoena requesting the records from AT&T. Because Plaintiff will be able to access these records, if at all, from a party that almost certainly is in possession of them, as opposed to Defendants, who are not in possession of them, asking Defendants to obtain these records is unduly burdensome. Fed. R. Civ. P. 26(b)(2) (stating that discovery may be limited where discovery is "obtainable from some other source that is…less burdensome").

Again, Plaintiff may continue to assert that "telephone statements are relevant to confirm Mr. Chreky's inappropriate personal relationships with *some* of his female employees (emphasis added)," but Mr. Chreky's alleged inappropriate personal relationships with women *other than Plaintiff* are not relevant to Plaintiff's ability to prove any of her claims, each of which is personal to Plaintiff (underpayment of wages, various DCHRA claims, assault and battery, conversion of property, intentional infliction of emotional distress, and negligent supervision). And, Plaintiff provides no evidence that any specific telephone conversations possibly evidenced on a telephone statement supports such an assertion. Instead, she states without support that these statements "are relevant *to confirm* Mr. Chreky's inappropriate personal relationships (emphasis added)," and that provision of the statements "will likely confirm witness testimony regarding Mr. Chreky's personal escapades." Pl. Brief at 12. These self-serving assertions amount only to Plaintiff's stacking of hypothetical telephone conversations on top of hearsay testimony.[3] In the absence of some more specific stated expectation for the content of this

---

[3] Which can't possibly be "confirm[ed]" by telephone bills.

requested discovery, Plaintiff's desire to examine years worth of telephone statements in their entirety amounts to another fishing expedition.

Plaintiff's casual insertion of a paragraph in her Motion stating that she needs to see Mr. Chreky's telephone records because he "has contacted or attempted to contact a number of Ms. Thong's witnesses…to intimidate, threaten or otherwise persuade these witnesses" is a serious accusation entirely without admissible or otherwise proper support. Pl. Brief at 12. Plaintiff has provided only one Exhibit in support of this allegation – her attorney's Declaration. This Declaration is based entirely on hearsay. It states that Mr. Rose received a call from his client advising that *she* had heard from *another person* that Mr. Chreky had told *yet another person* "to lie if subpoenaed in this case." Decl. of Jonathan Rose at Paragraph 2. The amount of hearsay in this paragraph is almost unmanageably circuitous.

The Declaration further states that Mr. Rose received a call from an unnamed declarant in this case stating that "her ex-boyfriend" received a call from Mr. Chreky in which Mr. Chreky "spoke…in a threatening manner about her testimony in this case." Decl. of Jonathan Rose at Paragraph 3. Clearly, Mr. Rose knows who this declarant is, and she apparently has previously supplied sworn testimony in this matter, but Mr. Rose declines to provide her affidavit in support of this Motion, or even to name her. Again, this is a convoluted, soap-operatic piece of hearsay alleging a subjective understanding of a "threat" in a call the existence of which could be supported by better evidence than a third party's affidavit testimony.

Defendants therefore strongly object to Plaintiff's casual placement of a serious and insufficiently supported allegation regarding obstruction of justice in this Motion.

As with the credit card statements, Plaintiff cannot establish the relevance of these telephone statements. Could she, Defendants would continue to assert that it is beyond the

requirements of the Rules for Defendants to obtain documents not in their possession and more easily obtained from a third party custodian. Notwithstanding the objections articulated in this Opposition, Defendants have not objected to a third-party subpoena to AT&T seeking these statements. For these reasons and because Defendants do not possess the requested telephone statements, Plaintiff's Motion on this point is unnecessary and frivolous. Further, Defendants request that the Court find that the Motion's serious allegation of criminal conduct by Defendants is insufficiently supported, inappropriately presented, and without merit.

<em>Conclusion</em>

For these reasons, Defendants request that this Court deny Plaintiff's Motion to Compel, sanction Plaintiff for her misleading recitation of facts related to Mr. Chreky's previous involvement in the *Doudaklian* paternity case, and award Defendants the fees and costs associated with their Opposition to this unnecessary Motion.

January 4, 2008

Respectfully submitted,

_____ /s/ _____

John M. Bredehoft
D.C. Bar No. 375606
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, Virginia 23510
757-624-3225 (direct voice line)
757-624-3169 (facsimile)
jmbredehoft@kaufcan.com

Counsel for Defendants

V I R G I N I A:

      FAIRFAX COUNTY CIRCUIT COURT

---------------------------x
ADELE DOUDAKLIAN,        :
                         :
           Plaintiff,  :
                         :
           v.         : No. CH 189572
                         :
ANDRE CHREKY,          :
                         :
           Defendant. : Volume 5
---------------------------x


                     4110 Chain Bridge Road
                        Fairfax, Virginia

                Thursday, April 21, 2005


        The HEARING in this matter continued at

approximately 10:12 a.m. pursuant to notice.

BEFORE:

        DAVID T. STITT
        Judge



1094

```
 1   APPEARANCES:

 2       On behalf of Plaintiff:

 3           NANCY J. CRAWFORD, ESQUIRE
             Regional Special Counsel
 4           Office of Special Counsel
             Division of Child Support Enforcement
 5           Fairfax County Department of Social Services
             Commonwealth of Virginia
 6           3955 Pender Drive, Suite 100
             Fairfax, Virginia  22030
 7           (703) 359-1277

 8       On behalf of Defendant:

 9           GLENN C. LEWIS, ESQUIRE
             DOUGLAS S. LEVY, ESQUIRE
10           The Lewis Law Firm
             805 15th Street, NW., Suite 200
11           Washington, D.C.  20005
             (202) 408-0655
12

13

14

15

16                    *   *   *   *   *

17

18

19

20

21

22
```

BETA COURT REPORTING
www.betareporting.com
(202) 464-2400     800-522-2382

Hearing, 4/21/05                    Page 1094

1095

1       C O N T E N T S

2   WITNESS:            DIRECT CROSS REDIRECT  RECROSS

3   Andre Chreky        1098 1150

4   PLAINTIFF'S EXHIBITS:            MARKED RECEIVED

5   No. 34 - Marriage Licence            1192    1192

6

7

8                   *   *   *   *   *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

BETA COURT REPORTING
www.betareporting.com
(202) 464-2400      800-522-2382

**Hearing, 4/21/05**                    Page 1095

1321

1　future he can he can have a relationship

2　with.

3　　　　THE COURT:  Thank you, Ms.

4　Crawford.  As both counsel have said,  DCSE's

5　burden of proof in this matter is clear and

6　convincing evidence.  And there are at least

7　a couple of different aspects to this case.

8　There's what's been referred to as the he

9　said/she said part.  The testimony of the

10　parties which on key points was pretty much

11　180 degrees off -- pretty much contradictory.

12　The other part of the case was the testimony

13　of the experts.

14　　　　Now, looking at the -- at the

15　testimony of the parties, one thing that I

16　think is significant -- it has to be

17　significant -- is the credibility of Ms.

18　Doudaklian, and her credibility is very

19　problematic.

20　　　　There's evidence in the record of

21　repeated incidents of lying under oath to

22　Government agencies and to courts, and that

1322

1  was readily and, frankly, kind of casually

2  admitted by Ms. Doudaklian, also admitted

3  lying to other people like Mr. Lucas for

4  years about the paternity of Andrew.

5          But this, particularly lying under

6  oath and really not seeming bothered about

7  having been caught in those lies, I think it

8  makes her credibility highly suspect,

9  particularly in a case where there is no

10  documentary corroboration of her testimony

11  about an agreement between herself and Mr.

12  Chreky and the payment of dollars over a

13  period of years by Mr. Chreky, no documentary

14  evidence at all corroborating that.

15          There's also no real corroboration

16  of key aspects of her testimony about their

17  alleged relationship, some anecdotal

18  testimony by friends and relatives, but

19  nothing that really significantly

20  corroborated the nature or the timing of the

21  relationship.  Also, no gifts, mementos or

22  anything else of this -- according to her

1323

1 testimony -- extended relationship.

2          And her credibility in this case is

3 a particular issue because it's used -- it

4 relates to the calculation by Lab Corp. here.

5 They used a prior probability of .5 and that

6 assumes equal levels of credibility in the he

7 said/she said part of the case, and that

8 number is used as a multiplier to establish

9 the probability of paternity.

10          But the credibility of the parties

11 in this case is not equal.  As I've said, I

12 have severe problems with Ms. Doudaklian's

13 credibility.  And there was no evidence of a

14 similar nature regarding Mr. Chreky's

15 credibility, no indication he ever lied under

16 oath.

17          Some reference to him -- him being

18 evasive or not knowing the answers to some of

19 the questions on cross, but, you know,

20 neither one of the witnesses, frankly -- I

21 mean, in that particular area, I think the

22 same thing could be said of both of them.

1324

1       Now, to turn to the expert

2  testimony, three experts testified on two for

3  DCSE, one for the Defendant.

4       Mr. Mueller, who was the expert

5  called by the Defendant, has outstanding

6  credentials in the precise subject matter

7  area that this case is concerned with, and,

8  in fact, he teaches it at the university

9  level in the Department of Ecology and

10 Evolutionary Biology at the University of

11 California at Irvine.  He publishes

12 frequently about the subject matter area.  I

13 found him to be a very knowledgeable and

14 credible witness.

15      Mr. Stuhlmiller certainly has

16 credentials, but I thought it was interesting

17 that his academic background is substantially

18 unrelated to his current job and to the

19 subject matter that's the basis of this case.

20 And I thought that he had a remarkably

21 cavalier attitude about some fundamental

22 problems with his report.

1325

1         In fact, he was so cavalier about

2   it, I think it raised issues about his

3   credibility and, frankly, I found his -- his

4   attitude and his testimony to be alarming,

5   given the extent of which our legal system is

6   currently relying on DNA evidence.

7         And what particularly disturbs me

8   about that is that most of the people coming

9   through our system, particularly criminal

10  defendants, do not have the resources to

11  mount the kind of challenge to the DNA test

12  results as was done in this case.

13        And as the people from Lab Corp.

14  Testified, very, very few of their results

15  are ever challenged at all.

16        Maha I didn't think added much.  He

17  didn't perform the tests at issue and

18  basically, he was defending the work of a lab

19  unit he's in charge of, work that was done by

20  an employee that he supervises, and if -- the

21  reports themselves, the March 6th, 2003

22  report which was signed under oath by

BETA COURT REPORTING
www.betareporting.com
(202) 464-2400     800-522-2382

1326

1  Stuhlmiller, it started off misspelling Ms.

2  Doudaklian's name and, certainly, that's not

3  a real big deal, but it's certainly not

4  particularly impressive and I think reflects,

5  to some extent, the -- the haste with which

6  these tests are done by this particular lab.

7        But the big problem with the March

8  2003 report is, as Dr. Mueller testified, it

9  is not scientifically valid.  It says on the

10  face of it, "The probability of paternity is

11  99.99 percent compared to the untested -- to

12  an untested, unrelated man of the Moroccan

13  population."

14        And that report said that without

15  even having consulted a Moroccan population

16  database.  So that was conceded by

17  Stuhlmiller and Maha.

18        So in -- after there was -- it was

19  clear that there was going to be a challenge

20  to this DNA test result, Lab Corp.,

21  unrequested by anybody, they just sua sponte

22  in November of 2004 issued a couple more

1327

1    reports.  It certainly appears to be an

2    attempt to bolster their case or cover their

3    tracks.

4            Again, it's signed under oath by

5    Stuhlmiller, and that report says "The

6    probability of paternity is 99.99 percent

7    compared to an untested, unrelated man of the

8    Moroccan" -- one of them was Moroccan Arab,

9    one was Moroccan Berber -- populations."

10           Again, Mueller said that is not a

11   scientifically valid report because the

12   population that was screened for the database

13   that -- that Maha apparently found on the

14   Internet was half of the people that are

15   needed to constitute a scientifically

16   appropriate database.

17           And I thought it was interesting

18   that Mr. Maha said that 100 people was his

19   minimum.  See, he basically agreed with

20   Mueller on that, and there was no question

21   that the number of people who had been

22   screened for that database that was used was

BETA COURT REPORTING
www.betareporting.com
(202) 464-2400     800-522-2382

1328

1    -- was half of the 100 that Maha and Mueller

2    both said you needed to have a scientifically

3    appropriate database.

4              We've already mentioned the thing

5    about Mueller's testimony about there was no

6    linkage equilibrium analysis done by Lab

7    Corp.  Before they took off and used an

8    alternative database.

9              I'm also concerned that it appears

10   that the -- that the entire Caucasian

11   database was not turned over as ordered.

12   That seemed to be conceded.

13             I accept Mueller's testimony that

14   none of the Lab Corp. reports were

15   scientifically valid.  And when you combine

16   that with the problems with the Plaintiff,

17   Ms. Doudaklian's credibility, DCSE has failed

18   to prove by clear and convincing evidence

19   that Andre Chreky is the father of Andrew

20   Lucas.

21             Mr. Lewis, do you have an order?

22             MR. LEWIS:  No.  I could -- with

1329

```
 1   that simple result and without, you know,

 2   pending the rest, we can put that together in

 3   a few minutes, I think.

 4           THE COURT:  Just take a blank and

 5   do that.

 6           THE CLERK:  I have one.

 7           MR. LEWIS:  Yes, sir.

 8           THE COURT:  There was some mention

 9   of a bifurcated hearing on where we go from

10   here?

11           Are you prepared to address that or

12   you want to file something, Mr. Lewis?

13           MR. LEWIS:  I was hoping we could

14   take stock of what has transpired and tally

15   everything up and put it in an organized way

16   for the court.

17           My first suggestion on that would

18   be if we could make a submission to the court

19   and schedule a hearing of not a long duration

20   down the road, three or four weeks, where we

21   could give you something you could look at

22   it, and we'll make argument on it.  As
```

1330

1  opposed to -- either that -- I just -- I

2  didn't think the court nor counsel, frankly,

3  or the parties had the appetite for a

4  full-blown evidentiary hearing which might up

5  unraveling something again and taking a

6  while.

7        On the other hand, Your Honor, and

8  I say this with complete transparency and the

9  court's comments seem to affirm the concerns,

10  given what the concerns are in this case, it

11  may well be that we should have an

12  evidentiary hearing with the players and on

13  the specific issue of -- of compliance and

14  what happened here, not about who is Dad and

15  all the other stuff.

16        There's no he said/she said, it's

17  simply about the rigors of the work they're

18  doing and what they should be doing and how

19  they went about their job in this case and

20  the stonewalling on the discovery and -- and

21  I'm going to mention some things about their

22  conduct in the trial as well.

1331

 1          So I -- my suggestion would be that

 2    we all get to take a breath and see what we

 3    have and get it to the court in some manner

 4    that allows for a streamlined presentation.

 5    Perhaps a hearing on like -- like an

 6    appellate argument would be where we get you

 7    papers and then argue it.

 8          THE COURT:  Yeah.  I think -- I

 9    don't think that a full-blown evidentiary

10    hearing is going to be necessary.  I think it

11    can be based on -- on what's happened during

12    this trial.  If we can do the argument on a

13    Thursday where it could be longer than 30

14    minutes but less than three hours.

15          MR. LEWIS:  Yes, Judge.

16          THE COURT:  I can do a briefing

17    schedule because I'm sure Ms. Crawford is

18    going to want to respond to whatever you

19    file.

20          MS. CRAWFORD:  Your Honor, also,

21    Mr. Shipley would need to respond to the

22    motions and sanctions against Lab Corp.

1332

1     THE COURT:  That's fine, too.  I

2  think he's got some explaining to do.

3     In terms of a Thursday, let's see

4  what is available for you folks and then we

5  can back off of a briefing schedule.

6     MR. LEWIS:  Yes, sir.

7     THE COURT:  May 26th through June

8  9th and 16th are available on Thursdays.

9     MR. LEWIS:  26th, Your Honor?  May

10  -- can Your Honor tell me when Memorial Day

11  is relation to the 26th?

12     MS. CRAWFORD:  That following

13  weekend, starting with the 27th.

14     MR. LEWIS:  The 27th.

15     MS. CRAWFORD:  Um-hum.

16     MR. LEWIS:  I would be available on

17  the 26th, Your Honor.

18     MS. CRAWFORD:  If I can just check

19  one calendar.

20     MR. LEWIS:  Sure.

21     MS. CRAWFORD:  I can be available

22  that day, and I did talk to Mr. Shipley and I

1333

1  believe he's available any Thursday in May

2  also.

3         Your Honor, if I could just note an

4  appeal on behalf of the Division. I don't

5  know that we'll proceed on that, but just to

6  protect that.

7         THE COURT: Certainly. Would you

8  look at your calendar on June 9th? I'm

9  sorry, I've got a matter settling on the 25th

10 that has a habit of going over the time

11 estimates; there's some concern with that.

12        MR. LEWIS: May I use a cell phone

13 to make a quick call, Your Honor?

14        THE COURT: Sure.

15            (Pause)

16        THE COURT: Never mind. I'll tell

17 you, if that does go over, I'll just put them

18 into the next week or something like that.

19 If the 26th is good for both of you-all,

20 let's use that.

21        MR. LEWIS: You're talking about

22 three hours anyway, so maybe it can still be

1334

1    heard that day, the other day.

2              THE COURT:  We can take it in the

3    afternoon.  That's a good point, too.

4              All right.  Mr. Lewis, today is the

5    21st --

6              MR. LEWIS:  Yes, sir.

7              THE COURT:  -- how about May 6th

8    for your -- that's a couple of weeks for your

9    opening brief.

10             MR. LEWIS:  A good portion of that

11   I'm away.  If I could have just a couple more

12   days than that, not a lot, just, perhaps --

13   what date is that?  It's a Thursday.

14             Can I get to the following Monday,

15   is that possible?

16             THE COURT:  The 9th?

17             MR. LEWIS:  The 9th.  I'm happy to

18   have Ms. Crawford have as much time as I do.

19             THE COURT:  We're going to go into

20   June then.  That's fine, we can do that.

21             Ms. Crawford --

22             MS. CRAWFORD:  Yes, Your Honor.

1335

1    THE COURT:  -- a comparable amount

2    of time would be --

3    MR. LEWIS:  Your Honor, my heroic

4    associate is telling me we should accept May

5    5th; I will.  We don't want to drag this out.

6    So let's say May 5 -- close of business May

7    5.

8    THE COURT:  I've given you the 6th,

9    which is the Friday.

10   MR. LEWIS:  Sixth is great.

11   THE COURT:  Ms. Crawford --

12   MS. CRAWFORD:  Yes, Your Honor.

13   THE COURT:  -- would the 20th, that

14   would be another two weeks, would that do

15   you?

16   MS. CRAWFORD:  I believe I can do

17   that, Your Honor.  Let me just check my

18   calendar.

19   (Pause)

20   MS. CRAWFORD:  That will be fine,

21   Your Honor.

22   THE COURT:  All right.  So we've

1336

1    got the Defendant's brief due May 6th; DCSE

2    response May 20th; the hearing on the 26th.

3            MR. LEWIS:  Yes.

4            THE COURT:  When I say "DCSE

5    response," obviously, the gentleman that's

6    representing Lab Corp. is welcome to file

7    something, Ms. Crawford.

8            MS. CRAWFORD:  I'll let him know,

9    Your Honor.

10           THE COURT:  If you-all will do that

11   order, I think that winds up it up.

12           MR. LEWIS:  I'm just about done

13   with it, including the last part.

14           THE COURT:  You can finish it up.

15   Let Ms. Crawford endorse it.

16           Thank you, Counsel.

17           MR. LEWIS:  Thank you, Your Honor.

18               (Whereupon, at 3:49 p.m., the

19               HEARING was adjourned.)

20               *   *   *   *   *

21

22

**KATZ, MARSHALL & BANKS,** LLP

By Process Server
September 20, 2007

General Counsel
American Express
2900 North Commerce Parkway
Miramar, Florida 33205

Re:    Subpoena in Ronnie Barrett v. Andre Chreky, et al., No. D.D.C. 07-CV-
0250 (RCL)

Dear General Counsel:

I represent Ronnie Barrett in the above-captioned case, pending before the District
Court of the District of Columbia. Enclosed please find a subpoena issued to State Farm
Insurance in the above-captioned case. The subpoena requires production of the
documents[1] identified in the attachment to the subpoena by October 10, 2007.

The subpoena does not require you to provide testimony. To produce documents
in lieu of your appearance, you may simply provide copies of the documents — all
records pertaining to Andre Chreky, Andre Chreky, Inc, or SPAC, LLC maintained by
American Express in either its main office or field offices — to Bradley Beilly, 400 SE
18th Street Fort Lauderdale, Florida 33316 by 9 am on October 10, 2007.

The information sought is identified in Attachment A to this subpoena. We are
willing to provide payment for reasonable costs of copying and sending the documents.

Thank you for your assistance.

Sincerely,

Ari Wilkenfeld
Attorney for Ronnie Barrett



EXHIBIT
2

---

[1] "Documents" shall mean every writing of every type and description, and every
other instrument or device by which, through which, or on which information has been
recorded, preserved, or transmitted, including but not limited to memoranda, notes,
letters, drawings, files, graphs, charts, maps, photographs, agreements, contracts,
telephone messages, handwritten notes, diaries, logs, calendars, ledgers, studies, data
sheets, computations, calculations, accounting(s), financial statements, tax forms, voice
recordings, medical records, computer tapes or disks, and other data compilations. RECEIVED

SEP 2 4 2007

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

Southern                    DISTRICT OF                    Florida

Ronnie Barrett

V.

Andre Chreky, et al

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  D.D.C. 07-CV-0250 (RCL)

TO:  General Counsel
     American Express
     2900 North Commerce Parkway
     Miramar, Florida 33205

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A

| PLACE     Bradley Beilly
400 SE 18th Street Fort Lauderdale, Florida  33316 | DATE AND TIME
10/10/2007 9:00 am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)       Partner | DATE
9/20/2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Ari Wilkenfeld, Esq., Katz, Marshall & Banks, LLP, 1718 Conn. Ave. N.W. 6th Floor, Wash. DC 20009, (202) 299-1140

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev.  12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

SERVED ON (PRINT NAME) | MANNER OF SERVICE

SERVED BY (PRINT NAME) | TITLE

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## Attachment A

Please produce:

All records of American Express transactions made by or charged to Andre Chreky;
Andre Chreky, Inc.; Andre Chreky Salon and Spa; or SPAC, LLC from January 2000
through the present, including, but not limited to all credit card statements, all records of
transactions, and any and all correspondence between American Express and Andre
Chreky; Andre Chreky, Inc.; Andre Chreky Salon and Spa; and/or SPAC, LLC relating to
any credit card account.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Subpoena to General Counsel,

American Express, was served on counsel for Defendants by electronic mail September

20, 2007 and by First Class Mail this 20th day of September, 2007, to:

>   John Bredehoft, Esquire
>   David Sullivan, Esquire
>   Kaufman & Canoles
>   Suite 2100
>   150 West Main Street
>   Norfolk, VA 23510

_____
Ari M. Wilkenfeld

**KATZ, MARSHALL & BANKS, LLP**

By Process Server
October 3, 2007

American Express (Miramar, FL)
c/o American Express—Datamark, Inc.
ATTN: Subpoena Compliance
43 Butterfield Circle
El Paso, TX 79906

Re:    Subpoena in Ronnie Barrett v. Andre Chreky, et al.,
No. D.D.C. 07-CV-0250 (RCL)

Dear Subpoena Compliance Officer:

I represent Ronnie Barrett in the above-captioned case, pending before the District Court of the District of Columbia. Enclosed please find a subpoena issued to American Express in the above-captioned case. The subpoena requires production of the documents[1] identified in the attachment to the subpoena by October 10, 2007.

The subpoena does not require you to provide testimony. To produce documents in lieu of your appearance, you may simply provide copies of the documents — all records pertaining to Serena Chreky▮▮▮▮▮▮▮), Andre Chreky▮▮▮▮▮▮▮▮▮, Andre Chreky, Inc., or SPAC, LLC maintained by American Express in either its main office or field offices — to Bradley Beilly, 400 SE 18th Street Fort Lauderdale, Florida 33316 by 9 am on October 10, 2007.

The information sought is identified in Attachment A to this subpoena. We are willing to provide payment for reasonable costs of copying and sending the documents.

Thank you for your assistance.

Sincerely,

*Ari Wilkenfeld* /DK

Ari Wilkenfeld
Attorney for Ronnie Barrett



EXHIBIT
3

---

[1] "Documents" shall mean every writing of every type and description, and every other instrument or device by which, through which, or on which information has been recorded, preserved, or transmitted, including but not limited to memoranda, notes, letters, drawings, files, graphs, charts, maps, photographs, agreements, contracts, telephone messages, handwritten notes, diaries, logs, calendars, ledgers, studies, data sheets, computations, calculations, accounting(s), financial statements, tax forms, voice recordings, medical records, computer tapes or disks, and other data compilations.

RECEIVED

OCT - 9 2007

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

Southern _____  DISTRICT OF _____ Florida

Ronnie Barrett

V.

Andre Chreky, et al

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] D.D.C. 07-CV-0250 (RCL)

TO: American Express--Datamark
ATTN: Subpoena Compliance
43 Butterfield Circle
El Paso, TX 79906

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A

| PLACE | Bradley Beilly 400 SE 18th Street Fort Lauderdale, Florida 33316 | DATE AND TIME 10/10/2007 9:00 am |
|---|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _Counsel for Plaintiff_ | 10/3/2007 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Ari Wilkenfeld, Esq., Katz, Marshall & Banks, LLP, 1718 Conn. Ave. N.W. 6th Floor, Wash. DC 20009, (202) 299-1140

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                          DATE

SIGNATURE OF SERVER

_____

ADDRESS OF SERVER

_____

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information protected to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## **Attachment A**

Please produce:

All records of American Express transactions made by or charged to Serena Chreky;
Andre Chreky; Andre Chreky, Inc.; Andre Chreky Salon and Spa; or SPAC, LLC from
January 2000 through the present, including, but not limited to all credit card statements,
all records of transactions, and any and all correspondence between American Express
and Serena Chreky, Andre Chreky; Andre Chreky, Inc.; Andre Chreky Salon and Spa;
and/or SPAC, LLC relating to any credit card account.

Serena Chreky



Andre Chreky



## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Subpoena to American Express, was

served on counsel for Defendants by electronic mail October 3, 2007 and by First Class

Mail this 3rd day of October, 2007, to:

John Bredehoft, Esquire
David Sullivan, Esquire
Kaufman & Canoles
Suite 2100
150 West Main Street
Norfolk, VA 23510

Ari M. Wilkenfeld

# KATZ, MARSHALL & BANKS, LLP

By Process Server
November 6, 2007

AT&T
Registered Agent: CT Corporation
4701 Cox Road, Suite 301
Glen Allen, VA 23060

    Re:   <u>Subpoena in Ronnie Barrett v. Andre Chreky, et al.,</u>
           <u>No. D.D.C. 07-CV-0250 (RCL)</u>

Dear Registered Agent:

      I represent Ronnie Barrett in the above-captioned case, pending before the District Court of the District of Columbia. Enclosed please find a subpoena issued to AT&T in the above-captioned case. The subpoena requires production of the documents[1] identified in the attachment to the subpoena by November 26, 2007.

      The subpoena does not require you to provide testimony. To produce documents in lieu of your appearance, you may simply provide copies of the documents — all records pertaining to Luzminda Roberts (phone number ███████████ or Andre Chreky (phone number: ███████████ maintained by AT&T in either its main office or field offices — to **Tim Schulte, Shelley & Schulte, P.C., 700 East Franklin Street, 12th Floor, Richmond VA 23218-0605** by 9:00 am on November 26, 2007.

      The information sought is identified in Attachment A to this subpoena. We are willing to provide payment for reasonable costs of copying and sending the documents.

      Thank you for your assistance.

                         Sincerely,

                         Ari Wilkenfeld
                         Attorney for Ronnie Barrett

> **EXHIBIT**
> 4

---

[1] "Documents" shall mean every writing of every type and description, and every other instrument or device by which, through which, or on which information has been recorded, preserved, or transmitted, including but not limited to memoranda, notes, letters, drawings, files, graphs, charts, maps, photographs, agreements, contracts, telephone messages, handwritten notes, diaries, logs, calendars, ledgers, studies, data sheets, computations, calculations, accounting(s), financial statements, tax forms, voice recordings, medical records, computer tapes or disks, and other data compilations.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

Eastern _____ DISTRICT OF _____ Virginia

Ronnie Barrett

V.

Andre Chreky, et al

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] D.D.C. 07-CV-0250 (RCL)

TO:  AT&T
     Registered Agent: CT Corporation
     4701 Cox Road, Suite 301
     Glen Allen, VA 23060

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A

| PLACE    Tim Schulte, Esq., Shelley & Schulte, P.C., 700 East Franklin Street, 12th Floor, Richmond VA 23218-0605 | DATE AND TIME 11/26/2007 9:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)    for Plaintiff | DATE 11/6/2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Ari Wilkenfeld, Esq., Katz, Marshall & Banks, LLP, 1718 Conn. Ave. N.W. 6th Floor, Wash. DC 20009, (202) 299-1140

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

|  DATE | SIGNATURE OF SERVER |
|---|---|
| | |
| | ADDRESS OF SERVER |

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises --- or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## Attachment A

Please produce:

All phone records of Luzminda Roberts ██████████, including all incoming and outgoing calls, from 2000 through the present.

All phone records of Andre Chreky ██████████ including all incoming and outgoing calls, from 2000 through the present.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Subpoena to AT&T, was served on

counsel for Defendants by electronic mail November 6, 2007 and by First Class Mail this

6th day of November, 2007, to:

John Bredehoft, Esquire
David Sullivan, Esquire
Kaufman & Canoles
Suite 2100
150 West Main Street
Norfolk, VA 23510

Ari M. Wilkenfeld