**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JENNIFER THONG, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil No. 1:06-1807 (RCL) |
| ) | |
| ANDRE CHREKY, an individual, ) | |
| ANDRE CHREKY SALON, ) | |
| and SPAC, L.L.C., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**PLAINTIFF'S MOTION FOR A UNILATERAL EXTENSION OF DISCOVERY AND**
**MOTION TO COMPEL THE IMMEDIATE PRODUCTION OF DOCUMENTS**

Plaintiff Jennifer Thong ("Plaintiff" or "Ms. Thong"), through undersigned counsel,

respectfully submits this Motion for a Unilateral Extension of Discovery and Motion to Compel

the Immediate Production of Documents ("Motion").  Pursuant to Local Civil Rule 7(m), the

parties have met and conferred in a good faith effort to resolve these outstanding discovery

issues, and this Motion is opposed.

**I.     INTRODUCTION**

Throughout this case, Defendants' discovery responses have been incomplete and

seemingly deliberately evasive.  In fact, this Court has already characterized Defendants' lack of

candor in the discovery process as "disturbing."  See Memorandum and Opinion on Plaintiff's

Motion to Compel the Production of Documents and Order thereon, Docket Nos. 27, 28, reported

at Thong v. Chreky, et al., 247 F.R.D. 193, fn. 2 (D.D.C. 2008) (hereinafter "Order").

Despite the Court's prior admonition regarding Defendants' evasive conduct, Defendants

have continued to exhibit a pattern and practice of withholding documents, delaying document

productions, and evading their basic obligations under the Federal Rules of Civil Procedure. Defendants' conduct has led to increased time and cost expended by Plaintiff, and has hindered Plaintiff's ability to efficiently, and quickly, prosecute her case.

After four joint extensions to the discovery schedule, the parties are currently facing a discovery deadline of September 30, 2008. The parties have tentatively scheduled the key party depositions for mid-September. To date, however, Defendants have still failed to produce all documents compelled by this Court's Order and failed to promptly produce documents responsive to Plaintiff's discovery requests. Plaintiff has been extremely patient in accommodating Defendants on their numerous discovery failures over the past few months (including granting numerous extensions). However, Plaintiff can no longer rely on Defendants oral and written assurances that documents are forthcoming, as Defendants have consistently failed to uphold their promises regarding how or when documents will be produced.

Plaintiff should not be required to proceed with Defendants depositions in this matter without the benefit of reviewing documents that Defendants should have produced months ago. Plaintiff needs sufficient time to prepare for Defendants depositions upon receipt of these outstanding document productions. Accordingly, Plaintiff respectfully requests this Court grant Plaintiff a unilateral one month extension of discovery until October 31, 2008. In addition, Plaintiff respectfully requests this Court: (1) Order Defendants to immediately comply with the Court's Order and produce all of Defendant Chreky's detailed cellular telephone records from AT&T no later than September 8, 2008; and (2) Order Defendants to produce all documents and information responsive to Plaintiff's discovery requests no later than September 8, 2008. Plaintiff also respectfully requests the Court award all other relief this Court deems proper for

Defendants' failure to comply with the Court's Order and their obligations under the Federal Rules of Civil Procedure.

## II.     DEFENDANTS STILL HAVE NOT FULLY COMPLIED WITH THIS COURT'S JANUARY 18, 2008 ORDER

Plaintiff issued her Second Set of Requests for Production in this matter more than ten months ago.  (See Plaintiff's Second Set of Document Requests, Oct. 26, 2007, Ex. 1.) Plaintiff's Request for Production No. 24 sought: "Any and all documents relating or referring to Defendants' telephone bills and statements for the period 1998 to the present."  Plaintiff's Request No. 24 clearly sought records related to **all** of Defendants' telephone lines, both land lines and cellular phones, and was not limited by particular service provider(s) in any way.   In addition, Plaintiff's Request No. 24 clearly sought telephone records for **all** Defendants -- the Salon, SPAC and Mr. Chreky individually.  (See id., Definitions, Ex. 1) (defining "Defendants" as all three entities).

Defendants objected to this Request on the ground it was "unduly burdensome" and "not likely to lead to the discovery of admissible evidence," and Defendants refused to produce responsive documents.  (See Defendants Responses to Plaintiff's Second Set of Document Requests, Nov. 26, 2007, Ex. 2.)  Significantly, Defendants did not object to the Request as being "vague" or "ambiguous." (Id.)

In light of Defendants' stonewall response, Plaintiff filed a Motion to Compel the Production of Documents (see Pl. Motion, Docket No. 24), and on January 18, 2008, the Court granted Plaintiff's Motion to Compel in its entirety.  Specifically, the Court Ordered Defendants to produce "any and all [] telephone statements currently within defendants' possession, custody or control," which included at least "the 16 months worth of telephone statements that defendants

have retained since plaintiff filed her Complaint" within ten (10) days of the Order.[1]  (See Order,

Docket Nos. 27, 28, reported at Thong v. Chreky, et al., 247 F.R.D. 193, 198 (D.D.C. 2008).)

On February 4, 2008, in response to the Court's Order compelling Defendants to produce

these telephone records, Defendants provided Plaintiff with Supplemental Discovery Responses.

(See Defendants' Second Supp. Responses, February 4, 2008, Ex. 3.)   Defendants stated that

they: "currently possess the previous eight months (from May 2007 through December 2007) of

telephone bills." (Id.)  Defendants concurrently produced eight pages of Verizon bills.

However, Defendants did not produce any of the detailed telephone "statements" showing any

record of the calls made and received from Defendants' telephone lines, as called for by the

discovery request and as Ordered by the Court.   Instead, Defendants stated they "have requested

copies of prior bills from Verizon, but Defendants do not currently have these prior bills in their

possession or control.   Defendants shall supplement this response upon receipt of those bills."

(Id.)

Plaintiff logically relied on Defendants' written assurances that they had requested the

documents from their service provider, Verizon, and believed Defendants would produce these

documents as soon as they were received from Verizon, in accordance with their obligations

under the Order and Fed .R. Civ. P. 26(e).  In addition, based on Defendants' production of eight

months of bills from Verizon, and Defendants' concurrent discovery response stating that

Defendants had reached out only to Verizon to obtain additional statements, Plaintiff logically

understood this to mean that Verizon was the only service provider for all of Defendants'

telephones (both land lines and cellular phones).  Defendants never told Plaintiff that they

---

[1]     Ten calendar days from the date of the Order landed on January 28, 2008.  Ten court days
        from the date of the Order landed on February 1, 2008.  Defendants provided
        supplemental responses on February 4, 2008.

maintained a telephone account through a service provider other than Verizon. **The fact Defendants counsel limited their supplemental response to Verizon records is perplexing because Mr. Chreky's AT&T cell phone records finally produced today show well over a hundred calls between Mr. Chreky and his counsel on this AT&T cell phone.**

When preparing for Defendants' depositions in late July 2008 (six months after the Court Ordered these telephone records produced) Plaintiff still had not received: (1) the supplemental production of documents Defendants claimed they had requested from Verizon, (2) the detailed "statements" (showing calls made and received) requested and Ordered produced by the Court, or (3) a supplemental production of telephone bills and statements from December 2007 to the present. Consequently, on July 22, 2008, Plaintiff requested the immediate production of these telephone records. (See E-mail from Emily Seymour to David Sullivan, July 22, 2008, Ex. 4.) In response, Defendants provided Plaintiff with repeated oral assurances that these detailed Verizon records would be forthcoming. However, at no point during the parties' meet and confer efforts did Defendants ever reveal that Defendants maintained a telephone account with a service provider other than Verizon.

On July 25, 2008, Defendants finally produced detailed Verizon telephone statements from January 2008 to June 2008 only. (See Letter from David Sullivan to Jonathan Rose, July 25, 2008, Ex. 5.) Not only did this production fail to satisfy the requirements of the Court's Order, it failed to comply with Defendants' own discovery responses, as Defendants assured Plaintiff back in February that they had requested 16 months of Verizon statements going back to the time Plaintiff filed her Complaint in 2006. (See Defs. Second Supp. Responses, Ex. 3.) After reviewing Defendants' partial production, Plaintiff again requested the detailed Verizon statements going back at least 16 months to the time Plaintiff filed her Complaint in 2006 as

required by the Court's Order, and as Defendants promised in their supplemental discovery responses. Plaintiff raised this issue with Defendants' counsel multiple times - on both August 5, and on August 7. (See E-mail from Jonathan Rose to David Sullivan, August 5, 2008, Ex. 6; E-mail from Jonathan Rose to David Sullivan, August 7, 2008, Ex. 7.)

On Friday, August 8, 2008, Defendants finally produced detailed Verizon statements for February 2007, April-May 2007, and July-December 2007. (See Letter From Anna Richardson to Jonathan Rose, August 8, 2008, Ex. 8.) Defendants indicated they "anticipate receiving September-December 2006 and March and June 2007, in this detailed format, mid-week next week," and assured Plaintiff they would forward these documents immediately. (See id.) Defendants finally produced these additional statements on August 13, 2008 – almost exactly eight months after the Court's Order to produce. (See Letter From Anna Richardson to Jonathan Rose, August 13, 2008, Ex. 9.)

Once Plaintiff was finally able to review these detailed telephone statements, it was abundantly clear that Defendants did not include records from Mr. Chreky's AT&T cellular phone in this production.[2] Plaintiff immediately alerted Defendants to this egregious deficiency in their production. (See E-mail from Jonathan Rose to David Sullivan, August 14, 2008, Ex. 10.)

Defendants finally agreed to seek these records from AT&T on August 15, 2008. (See Letter from David Sullivan to Jonathan Rose, August 15, 2008, Ex. 11.) Defendants just produced some of these AT&T documents for Mr. Chreky's cellular phone on August 21, 2008;

---

[2]     Mr. Chreky provided his cellular telephone number on the record during his deposition in the Barrett case. Mr. Chreky's cellular phone number begins with a "703" area code. All of the phone numbers included in the Verizon records began with a "202" area code, and appear to be phone records for the Salon only.

however, not **all** of the telephone records have been produced.[3]  (See Letter from David Sullivan to Jonathan Rose, August 21, 2008, Ex. 12.)  Defendants claim they will produce these documents "any day now." (Id.)

## III.    DEFENDANTS HAVE NOT COMPLIED WITH THEIR DISCOVERY OBLIGATIONS UNDER THE FEDERAL RULES OF CIVIL PROCEDURE

Despite the Court's stern warning that Defendants' lack of candor in the discovery process was "disturbing,"[4] Defendants have continued to provide incomplete and deliberately evasive discovery responses, and delayed production of key documents.

### A.    Defendants Late Production of Key Corporate Formation Documents Forced the Parties to Extend Discovery

Plaintiff issued her First Set of Document Requests in June 2007 seeking "all documents identifying SPAC and Andre Chreky's Salon's owners, officers, managers, and their corporate structure," and "all documents reflecting the relationship between SPAC, the Salon, Mr. Chreky and Serena Chreky, including but not limited to rental or lease agreements, administrative service agreements, invoices, bills, checks, corporate filings and licenses." (See Plaintiff's First Set of Requests for Production (excerpt), Requests 25, 26, Ex. 13.)  Defendants responded by producing an income statement and tax filings, but did not produce any documents evidencing corporate structure as called for by the requests, such as bylaws, articles of incorporation,

---

[3]    Conspicuously, among other things, these records show that Mr. Chreky contacted one witness 6 times in the few days leading to her deposition in an apparent attempt to intimidate and shape her testimony in this case.  If Plaintiff had this information months ago, it would have undoubtedly affected Plaintiff's discovery efforts in this case.

[4]    In ruling on Plaintiff's Motion to Compel, the Court noted that, at no point in Defendants' responses to Plaintiff's Second Set of Document Requests, amended responses, or during the parties' Rule 7(m) conference last winter did Defendants ever reveal that Mr. Chreky was not deposed in his Fairfax County paternity lawsuit.  Based on Defendants' less-than-truthful responses, the Court found Defendants' lack of candor "disturbing," and noted how Defendants' conduct led to wasted time and effort by Plaintiff and by the Court.  See Thong v. Chreky, et al., 247 F.R.D. 193, fn. 2 (D.D.C. 2008).

meeting minutes, lease agreements, administrative service agreements, or operating agreements.[5] (See Defendants' Responses to Plaintiff's First Set of Requests for Production (excerpt), Request 25, Ex. 14.)

Frustrated by Defendants' failure to produce these basic corporate formation documents, Plaintiff issued a Second Set of Document Requests with more tailored requests in October 2007. (See Plaintiff's Second Set of Requests for Production, Request Nos. 1-5, Ex. 1.)  Despite the fact that Defendants had 30 days to locate, copy, and produce these documents, Defendants responded to these requests in November 2007 by stating that they were "in the process of locating such documents and will provide them as soon as they are available." (See Defendants Responses to Plaintiff's Second Set of Requests for Production, Ex. 2).  Plaintiff did not immediately press the issue as Plaintiff assumed Defendants were diligently searching for these documents and would promptly supplement their responses in accordance with their obligations under Fed.R.Civ.P. 26(e).

In late March 2008, after Serena Chreky's first deposition in the related Barrett case, and just prior to Mr. Chreky's scheduled deposition, Defendants miraculously discovered these key corporate formation documents (i.e., bylaws articles of incorporation, operating agreements, lease documents) that had been requested by Plaintiff ten months earlier.  (See Letter from David Sullivan to Jonathan Rose, March 28, 2008, Ex. 15.)  Defendants' late production of these key corporate documents after the party depositions had commenced in the Barrett case was, to say the least, suspect.  Defendants failure to produce these documents in a timely manner forced

---

[5]       Such documents should have been readily available for production because correct and complete books and records and minutes of the proceedings of shareholders and board of directors must be maintained by business owners, such as Defendants, at all times in accordance with District of Columbia law.  See D.C. Code § 29-101.45.

Plaintiff to prepare for these key party depositions without the benefit of this discovery, and forced the parties to request yet another discovery extension from the Court. (See Motion to Modify Scheduling Order, April 4, 2008, Docket No. 37.)

**B.    Defendants Just Produced Cosmetology Licenses for Key Employees**

Two months ago, on June 18, 2008, Plaintiff requested Defendants supplement their responses to Plaintiff's document requests pursuant to Federal Rule of Civil Procedure 26(e). Specifically, Plaintiff requested Defendants provide "any updated financial information for the 2007 tax year for Defendants, any recent complaints made by employees regarding harassment, compensation or employment practices, recent tip disclosure forms, updated cosmetology licenses, and any updated employment policies and practices at the Salon." (See Letter from Jonathan Rose to David Sullivan, June 18, 2008, Ex. 16. )(emphasis added).  Given that the discovery cut-off at that time was set for July 30, 2008, and Mr. Chreky's and the 30(b)(6) depositions were scheduled to proceed in July, Plaintiff requested these supplemental documents be produced no later than Monday, June 30, 2008.

As of July 9, 2008, Defendants had failed to provide Plaintiff with **any** response to this letter, and failed to produce the supplemental responses as requested.  Upon inquiring about the status of the supplemental production, Defendants responded:

> As for the documents, I think the only things that exist are some financial information, which I'm working on, and a couple new licenses.  I can spare you the suspense on that last part and tell you that three employees with license problems obtained new licenses, and Serena can also testify to that information during the 30(b)(6).

(See E-mail from David Sullivan to Emily Seymour, July 9, 2008, Ex. 17.)

When Defendants still had not provided the updated licenses for the employees with "license problems," as they promised on July 9, Plaintiff again inquired about the status of these

licenses on both on August 18, and August 21, 2008. (See Letter from Jonathan Rose to David Sullivan, August 18, 2008, Ex. 18; E-mail from Emily Seymour to David Sullivan, August 21, 2008, Ex. 19.) Although Defendants' counsel clearly had possession of these updated licenses as early as July 9, they were not produced until August 21. (See Letter from David Sullivan, August 21, 2008, Ex. 12.) Moreover, Plaintiff just received these licenses today, and confirmed these licenses were issued to these employees on February 14, 2008, and March 11, 2008 and May 12, 2008, respectively, yet, Defendants have offered absolutely no explanation as to why these licenses were not produced until this week.

### C.    Defendants Still Have Not Produced A Statement of Net Worth

Plaintiff issued her First Set of Interrogatories in this action in June 2007. Plaintiff sought "annual financial information about Defendants, including but not limited to the Defendants' assets, liabilities, revenues, debts, cash flow and net worth." (See Plaintiff's First Set of Interrogatories (excerpt), No. 16, Ex. 20.)

Since propounding this interrogatory, Defendants have repeatedly promised to provide Plaintiff with a statement of Defendants net worth. Defendants accountant verified she was, in fact, in the process of preparing a statement of Defendants' net worth at her deposition on July 17, and Defendants counsel confirmed on the record during her deposition that this net worth statement would be produced in connection with this litigation.[6] Most recently, in arguing against Plaintiff's Subpoena to Adams National Bank, Defendants argued the Adams Bank subpoena was unnecessary because "Defendants' accountant is preparing a [statement of Defendants' net worth] and Defendants will share it with Ms. Thong upon receipt of it." (See

---

[6]    Defendants have designated Ms. Tosi-Miller's testimony as "Confidential" under the Protective Order entered in this case. Therefore, Plaintiff has not attached the testimony herein.

Defendants Motion to Quash Subpoena on Adams National Bank, at p. 3, Docket No. 45.) However, even at this late date, Defendants still have not provided Plaintiff with this statement of net worth. (See Letter from David Sullivan, August 21, 2008, Ex. 12.) Clearly the net worth statement and Adams Bank records are equally as important to Plaintiff – the bank records will confirm whether, in fact, the net worth statement is accurate – whenever Defendants get around to producing it.

**D.    Defendants Still Have Not Produced Documents In Response to Plaintiff's Fourth Request for Production of Documents**

On June 24, 2008, Plaintiff issued her Fourth Request for the Production of Documents to Defendants. (See Plaintiff's Fourth Request for the Production of Documents, June 24, 2008, Ex. 21.) Defendants requested an extension to respond to this Fourth Set of Document Requests, which Plaintiff granted out of professional courtesy. As such, Defendants had forty days to search for, collect, and produce the responsive documents. In light of Plaintiff's readiness to grant an extension, Plaintiff expected that Defendants would provide substantive responses in good faith. Instead, however, Defendants completely stonewalled Plaintiff with their answers, and produced a mere six pages of documents. (See Defendants' Responses to Plaintiff's Fourth Request for the Production of Documents, August 5, 2008, Ex. 22.) These responses demonstrated a complete lack of respect for the discovery process as Defendants clearly made little to no effort to search for and collect the responsive documents in their possession during the time to respond.

1.    Nicole Juliano's Personnel File

Plaintiff's Document Request No. 1 sought the complete personnel file of Nicole Juliano. Ms. Juliano's personnel file is unquestionably relevant to Plaintiff's claims of sexual harassment in this case. To Plaintiff's knowledge, Ms. Juliano previously worked as a make-up artist at the

Andre Chreky Salon.  Maurice Clarke testified that Ms. Juliano complained to him about Mr. Chreky's inappropriate sexual advances during her employment at the Salon.  Specifically, Mr. Clarke testified that Ms. Juliano provided him with a letter explaining in explicit detail the different times and dates Mr. Chreky touched her, or made inappropriate sexual advances towards her.  Mr. Clarke testified he gave this letter to Mr. Chreky as part of his efforts to bring these concerns to Mr. Chreky's attention, and Mr. Chreky balled the letter up in his hand like a piece of trash.  (See generally Clarke Deposition excerpts, at pp. 57-65, Ex. 23.)  This letter, along with any other information about Ms. Juliano and her complaints of sexual harassment by Mr. Chreky are undisputedly relevant to Plaintiff's claims, and should be contained in her personnel file.

In response to Plaintiff's request for Ms. Juliano's personnel file, Defendants claimed that "no such documents exist."  (See Defendants' Responses to Plaintiff's Fourth Request for the Production of Documents, Ex. 22.)  This response was extremely troubling.  To date, Defendants have produced approximately 40 personnel files in this action, including the personnel files for Ms. Thong and Ms. Barrett, all of Defendants' declarants, as well as the personnel files of Ms. Thong's and Ms. Barrett's declarants.  Defendants had absolutely no difficulty locating and producing the personnel files for all of these individuals, most of whom, like Ms. Juliano, have not worked in the Salon for a number of years.  Yet, curiously, Defendants are now "missing" the personnel file of another woman who, like Ms. Thong and Ms. Barrett, rejected Mr. Chreky's unwelcome sexual advances and detailed the events in writing.  Defendants response is, to say the least, suspect.

-12-

2.    <u>Communications Between Defendants and Their Bookkeeper</u>

Plaintiff's Document Request Nos. 3 and 4 sought communications between Defendants, Ms. Chreky and their bookkeeper, Ms. Elizabeth Biggs.  Notwithstanding Defendants objections based on relevance[7] and duplication,[8] Defendants' responded to both Request Nos. 3 and 4 by asserting that they "do not possess **any** responsive documents" (emphasis added).  (<u>Id.</u>)  This response was completely implausible.  Ms. Biggs has been the Defendants' bookkeeper for approximately three or four years and is their current bookkeeper.  Ms. Biggs testified she works at the Salon in the early morning hours, and the remainder of the day corresponds with Ms. Chreky via e-mail while she is at her other job.  In addition, Ms. Biggs testified she always copies Serena Chreky on all communications between herself and Adams National Bank and their accountant, Goodman & Company.  (<u>See</u> Biggs Dep., at pp. 101, 187, and 200, Ex. 24.)  In

---

[7]    Defendants object that Requests Nos. 3 and 4 are "not likely to lead to the discovery of admissible evidence."  It is improper for Defendants to summarily determine what discovery is or is not "likely" to lead to admissible evidence at this stage, as Defendants are not privy to Plaintiff's theories of the case and legal strategy.  Curiously, Defendants did not object to Plaintiff's Rule 45 subpoena to Ms. Biggs on the basis that it was "not likely to lead to the discovery of admissible evidence," but now suddenly raise the issue when it would require Defendants to review and produce documents.

[8]    Defendants' also object that Requests Nos. 3 and 4 are "duplicative" because Plaintiff also served a Rule 45 subpoena on Ms. Biggs, and Ms. Biggs produced responsive documents.  This objection makes no sense.  The Request is not "duplicative" on Defendants, as Plaintiff has not made an identical prior request on Defendants.  Moreover, the fact that Plaintiff issued a Rule 45 subpoena to Ms. Biggs seeking similar communications is completely irrelevant and unpersuasive.  Ms. Biggs testified she did not retain, and did not produce, all communications between herself and the Defendants because her usual business practice is to only retain communications she deems "important" and those she may need to reference at a later date.  Consequently, Ms. Biggs' document production did not include all communications between her and the Defendants over the course of their four-year working relationship.  Certainly, additional communications exist that Ms. Biggs did not deem "important" enough for retention, but were (or should have been) retained by Defendants.

light of Ms. Biggs' testimony, it is difficult to believe Defendants' response that they had not

retained <u>any</u> of these communications regarding their personal and business finances.

> 3.    Communications Between Defendants and Their Accountant

Similarly, Plaintiffs' Document Request Nos. 7 and 8 sought communications between

Defendants, Ms. Chreky and their CPA firm, Goodman & Company.  Notwithstanding

Defendants' similar objections based on relevance[9] and duplication,[10] in response to these

Requests, Defendants produced just three pages of documents - one invoice for tax services.

(<u>Id.</u>)  Again, this response was completely absurd.  Goodman & Company has been Defendants'

CPA been for the last three tax years.  Ms. Tosi-Miller produced documents demonstrating

communications between herself and Serena Chreky – sometimes communicating multiple times

a day.  Some of the communications produced between and among Goodman, Ms. Biggs and

Ms. Chreky are as recent as July 2008, as they were discussing the Defendants' 2007 tax filings.

---

[9]    Defendants object that Requests Nos. 7 and 8 are not likely to lead to the discovery of admissible evidence.  As with Request Nos. 3 and 4,  it is improper for Defendants to summarily determine what discovery is or is not "likely" to lead to admissible evidence at this stage, as Defendants are not privy to Plaintiff's theories of the case and legal strategy.  As with the subpoena served on Ms. Biggs, Defendants did not object to Plaintiff's Rule 45 subpoena to Ms. Tosi-Miller on the basis that it was not "likely" to lead to the discovery of admissible evidence, but now raise the issue when it would require Defendants to review and produce documents.

[10]    Defendants similarly object these Requests are "duplicative" because Plaintiff also served a Rule 45 subpoena on Ms. Tosi-Miller, and Ms. Tosi-Miller produced responsive documents.  Again, this objection makes no sense.  The Request is not "duplicative" on Defendants, as Plaintiff has not made an identical prior request on Defendants.  Moreover, the fact that Plaintiff issued a Rule 45 subpoena to Ms. Tosi-Miller seeking similar communications is completely irrelevant and unpersuasive.  Ms. Tosi-Miller produced the communications she retained between herself and the Defendants.  However, this is far from comprehensive.  Ms. Tosi-Miller did not likely retain all communications she sent to the Defendants, which would more logically be in Defendants' files.  In addition, because Ms. Tosi-Miller is not a Defendant in this action, she is under no obligation to retain documents since the filing of Plaintiff's Complaint, whereas Defendants are under such an obligation and should have retained all such communications.

It is completely unbelieveable that Defendants did not retain one, single communication related to their personal and corporate finances between to and/or from their CPA over the course of this three-year relationship, even the communications regarding this year's tax filings.   As with Ms. Biggs, in light of Ms. Tosi-Miller's testimony,[11] it is difficult to believe Defendants have not retained <u>any</u> of these communications with their CPA regarding their personal and business finances.

### 4.    Communications Between Defendants and Their Banker

Plaintiffs' Document Request Nos. 9 and 10 sought communications between Defendants, Ms. Chreky and their banker, Mr. Terrell Braden.   Notwithstanding their objections, Defendants once again responded that they "do not possess **any** responsive documents" (emphasis added). This response was astonishing, because Ms. Biggs testified she always copied Ms. Chreky on any communications between herself and Mr. Braden when providing Mr. Braden with any instructions regarding the Chreky's accounts at Adams National Bank.  (<u>See</u> Biggs Dep., Ex. 24.) In light of Ms. Biggs' testimony, it is difficult to believe Defendants had not retained <u>any</u> of these communications with their banker regarding their personal and business finances.

### 5.    Communications Between Defendants and Their Estate Planner

Plaintiffs' Document Request Nos. 5 and 6 sought communications between Defendants, Ms. Chreky and their estate planner, Mr. Salaman.  Defendants objected to this request on the basis that Mr. Salaman is an attorney, and all communications are privileged.  While Plaintiff understands that some, or all, of these communications with Mr. Salaman may be protected by the attorney-client privilege if Mr. Salaman is, in fact, an attorney, Plaintiff respectfully

---

[11]    Defendants have designated Ms. Tosi-Miller's testimony as "Confidential" under the Protective Order entered in this case.  Therefore, Plaintiff has not attached the testimony herein.

requested that Defendants produce a privilege log so Plaintiff can evaluate the merits of this asserted privilege, and confirm the privilege has not been waived; for example, by copying a third-party on the communications. (See Letter from Jonathan Rose to David Sullivan, August 6, 2008, at p. 4, Ex. 25.) Defendants still have not produced a privilege log.

6.    Meet and Confer Efforts

Although Defendants had 40 days to search for, and collect, responsive documents, Defendants responses demonstrated that Defendants had clearly failed to undertake a good faith search for documents as required by the Federal Rules of Civil Procedure. Accordingly, Plaintiff promptly alerted Defendants to the blatant deficiencies with their production. (See Ex. 25.) On Monday, August 11, counsel for the parties met and conferred telephonically regarding Defendants' discovery responses. During this telephonic conference, Defendants' counsel admitted that they did not undertake a through search for communications, but rather, simply took Defendants' word that "no documents existed." At that time, Defendants counsel agreed to hire a computer expert to search Defendants' hard drives for responsive documents – as Defendants should have done during the 40 days they initially had to respond.

On August 12, Defendants' counsel informed Plaintiff that a computer expert was "on site" that very day, and he expected to receive responsive emails within the next 24 hours. (See E-mail correspondence between David Sullivan and Jonathan Rose, August 12, 2008, Ex. 26.) Because Defendants so obviously failed to even look for responsive documents prior to responding to discovery, Plaintiff asked Defendants to re-double their efforts and look for Ms. Juliano's personnel file as well. (See id.)

To date, Defendants still have not produced any of these responsive communications, as promised, and still has not produced a privilege log detailing the communications between

Defendants and their estate planner that they claim are privileged. Defendants now claim these documents will be available for Defendants' counsel's review on August 25 (two months after Plaintiff first issued her document requests), but there is absolutely no guarantee when these documents will actually be available for Plaintiff's review. (See Letter from David Sullivan, August 21, 2008, Ex. 12.)

## IV.    THE COURT SHOULD GRANT PLAINTIFF A UNILATERAL EXTENSION OF DISCOVERY UNTIL OCTOBER 31, 2008

Fed.R.Civ.P. 16 gives the Court the power to control pretrial matters, and aid the parties and the Court in preparing for and conducting the trial. Fed.R.Civ.P 16(b)(4) grants the Court the power to modify the Scheduling Order "upon a showing of good cause." See also LCvR 16.4 ("The court may modify the scheduling order at any time upon a showing of good cause.") Here, good cause exists to modify the scheduling order, and unilaterally extend Plaintiff's discovery by one month.

Plaintiff has complied with all of her discovery obligations, and it has been a one-way street of Defendants' consistent failure to comply with their discovery obligations. Defendants completely failed to timely comply with the Court's Order to produce **all** telephone records over eight months ago. In February, Defendants assured Plaintiff they requested detailed documents from Verizon in order to comply with the Court's Order. Yet, these documents were not produced to Plaintiff until July 2008 – and they were only produced after Plaintiff repeatedly inquired about their production status. It appears either: (1) Defendants received these Verizon documents and withheld them until Plaintiff inquired; or (2) Defendants never actually requested the documents from Verizon in February 2008, as they represented in their supplemental discovery responses. Even after Defendants recognized their error, Defendants continued to drag

their feet and delay production for weeks, while providing assurances both orally and in writing that the documents would be produced.

More significantly, Defendants deliberately withheld key information regarding Mr. Chreky's cellular telephone account. Defendants undoubtedly understood that the Court's order required production of **all** of Defendants telephone records – including Mr. Chreky's cellular phone records. Defendants requested telephone records from Verizon related to the Salon's telephone accounts, demonstrating that such records in the possession of their service provider(s) were within Defendants' "possession, custody and control" because they could be obtained with a simple request. Yet, Defendants did not undertake similar efforts to obtain telephone statements from AT&T for Mr. Chreky's cellular phone at the same time. Instead, Defendants did not seek these documents from AT&T until August 2008 and just produced these documents on August 21 – eight months after the Court's Order, and a mere one month before the current close of discovery.

In addition, Defendants have significantly delayed production of several categories of documents responsive to Plaintiff's First, Second and Fourth Sets of Document Requests, and First Set of Interrogatories. Plaintiff's request for a statement of net worth has been pending for more a year. In mid-July, Ms. Tosi-Miller testified that she was working on the net worth statement for Defendants. Yet, Defendants claim Ms. Tosi-Miller is "still working on this statement." (See Letter from David Sullivan, August 21, 2008, Ex. 12.) Defendants have offered absolutely no explanation why this net worth statement has taken so long to prepare, or otherwise provide concrete information as to how or when it will be produced. Likewise, Defendants indicated as early as July 9 that they had updated cosmetology licenses for the employees with license problems ready for production but, inexplicably failed to produce them

until August 21 – only after numerous written requests from Plaintiff and the threat of Court intervention.

Moreover, despite the fact that Defendants had 40 days to respond to Plaintiff's Fourth Request for the Production of Documents – more than the standard amount of time granted under the Federal Rules of Civil Procedure – Defendants admittedly did not even begin to search for documents until <u>after</u> their discovery responses were due, and after the parties' telephonic meet and confer session on August 11.  (<u>See</u> Letter from David Sullivan, August 21, 2008, Ex. 12.) Again, Defendants made absolutely no effort to collect these documents, or otherwise provide concrete information as to how or when they would produce these documents, until faced with the threat of Court intervention with this Motion.

Such inexplicable delays have undoubtedly caused increased costs for Plaintiff and inhibited her ability to efficiently, and quickly, prosecute her case.  On multiple occasions, Plaintiff has anticipated the production of documents in a timely manner, and has then been forced to postpone depositions.   Plaintiff wants to conclude the discovery phase of this case as quickly as possible, and proceed to trial.  However, due to Defendants delays, Plaintiff cannot proceed with Defendants' depositions on the current discovery schedule, as Plaintiff has absolutely no guarantee when these outstanding documents will be produced.

Accordingly, good cause exists to modify the scheduling order, and Plaintiff respectfully requests this Court grant Plaintiff a unilateral one month extension of discovery until October 31, 2008 due to Defendants' conduct.

## V.    THE COURT SHOULD ORDER DEFENDANTS TO PRODUCE ALL OUTSTANDING RESPONSIVE DOCUMENTS IMMEDIATELY

Plaintiff can no longer rely on Defendants' empty promises regarding their production of documents.  It is essential that Defendants produce **all** of these documents with ample time for

Plaintiff's review prior to Defendants' depositions. Accordingly, Plaintiff respectfully requests that Court Order Defendants to comply with its January 18, 2008 Order and produce **all** telephone records for Mr. Chreky's cellular phone no later than September 8, 2008. In addition, Plaintiff respectfully requests this Court Order Defendants to produce: (1) a statement of Defendants' net worth prepared by Defendants' CPA; (2) communications responsive to Plaintiff's Fourth Request for the Production of Documents; and (3) a privilege log detailing Defendants communications with their Estate Planner, no later than September 8, 2008.

Defendants' delay tactics have undoubtedly led to increased time and cost expended by Plaintiff in this matter, as Plaintiff has been forced to draft numerous "meet and confer" letters, e-mails, and participate in numerous telephone conversations to compel Defendants to comply with the Court's Order, and the Federal Rules of Civil Procedure. Accordingly, Plaintiff also respectfully requests this Court award all other relief this Court deems proper for Defendants' failure to comply with the Federal Rules of Civil Procedure.

Dated: August 22, 2008

Respectfully submitted,

By:_____/s/_____
        Jonathan G. Rose (Bar No. 446208)
        Sheppard Mullin Richter & Hampton LLP
        1300 I Street, N.W., 11th Floor East
        Washington, D.C. 20005
        202-218-0018 (Direct)
        202-312-9410 (Fax)
        jrose@sheppardmullin.com
        Counsel for Plaintiff Jennifer Thong

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of August 2008, I caused true copies of the

foregoing Plaintiff's Motion For a Unilateral Extension of Discovery and Motion to Compel the

Immediate Production of Documents to be served via ECF and first class mail on:

>       John Bredehoft, Esq.
>       David J. Sullivan, Esq.
>       Kaufman & Canoles, P.C.
>       150 West Main Street, Suite 2100
>       Norfolk, Virginia 23510


>       _____/s/_____
>       Jonathan G. Rose

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JENNIFER THONG )<br><br>Plaintiff )<br><br>v. )<br><br>ANDRE CHREKY SALON, et al. )<br><br>Defendants. ) | Civil No. 1:06-1807 (RCL) |

## PLAINTIFF JENNIFER THONG'S SECOND REQUEST
## FOR THE PRODUCTION OF DOCUMENTS TO DEFENDANTS

Pursuant to Fed. R. Civ. P. 34, Plaintiff Jennifer Thong ("Ms. Thong" or "Plaintiff"), by and through her attorney, hereby requests that Defendants Andre Chreky, Andre Chreky Salon, and SPAC, LLC (collectively "Defendants") produce all documents and things listed herein to undersigned counsel within thirty (30) days of receipt of this request.

These requests are continuing in nature, and require Defendants to promptly serve a supplemental response if additional documents are acquired by Defendants after its initial response.

These requests shall be read and interpreted in accordance with the definitions and instructions set forth below:

## DEFINITIONS AND INSTRUCTIONS

**1.    Definitions**

1.    The word "document" is used in the broadest sense possible and means the original and all drafts of all written or graphic matter, however produced or reproduced, of any kind or description, whether or not sent or received, and all copies thereof which are different in

any way from the original (whether by interlineation, receipt stamp, notation, indication of copies sent or received, or otherwise), including without limitation, any paper, book, account, photograph, blueprint, drawing, sketch, schematic, agreement, contract, collective bargaining agreement, memorandum, press release, circular, advertising material, correspondence, letter, telegram, telex, object, report, opinion, investigation, record, transcript, hearing, meeting, study, note, notation, working paper, summary, intra-office communication, diary, chart, minute, index sheet, computer software, invoice, records or recording, or summary of any telephone or other conversation, or of any interview or of any conference, or any other written, recorded, transcribed, punched, taped, filmed or graphic matter, including any electronically stored information in computerized format, computer files, or e-mail of which you have or have had possession, custody or control.

2.    The term "person or entity" means natural persons, businesses, proprietorships, partnerships, firms, corporations, institutions, employee benefit plans, bodies, joint ventures, other forms of legal entity, municipal corporations, federal, state and local governments, all departments and agencies thereof, and any other governmental agencies, any other group or combination acting as an entity, and any representative or agent of the foregoing.

3.    The word "communication" means any manner or form of information or message transmission, however produced or reproduced, whether by "document" or orally or otherwise, which is made, distributed or circulated between or among persons, or data storage or processing units, and any and all documents containing, consisting of, or relating or referring, in any way, either directly or indirectly, to a communication.

4.      The word "Defendants" means Andre Chreky, Andre Chreky Salon, and SPAC, LLC, and any of these entities' owners, directors, employees, agents, managers, representatives, or attorneys.

5.      The word "Mr. Chreky" means Defendant Andre Chreky.

6.      The word "SPAC" means Defendant SPAC, LLC, its owners, directors, employees, agents, managers, representatives, or attorneys.

7.      The word "Salon" means Defendant Andre Chreky Salon, its owners, directors, employees, agents, managers, representatives, or attorneys.

8.      The words "you" and "your" means Andre Chreky, Andre Chreky Salon, and/or SPAC, LLC, and any of these entities' owners, directors, employees, agents, managers, representatives or attorneys.

9.      The words "Plaintiff" or "Ms. Thong" mean Plaintiff Jennifer Thong.

10.     The word "Answer" means the Answer filed by Defendants Andre Chreky, Andre Chreky Salon, and SPAC, LLC in the United States District Court for the District of Columbia (Civil Action No. 1:06-1807), on April 13, 2007, in response to Plaintiff's Amended Complaint, filed on February 16, 2007.

11.     The word "any" means each and every as well as any one.

12.     The words "and" and "or" shall be construed conjunctively or disjunctively, as necessary to make the request inclusive rather than exclusive.

13.     The word "identify" means:

(a)     with respect to a natural person, to state the full name, present or last known title or position, business affiliation, and business address.

(b)     with respect to a corporation, to state the corporation's full name and address.

(c)     with respect to a person or entity other than a natural person or corporation, to state its proper name or designation and its address.

14.     The words "relating" or "referring" means consisting of, embodying, summarizing, describing, mentioning, evidencing, or in any way pertaining to.

15.     The word "date" means the exact day, month and year, if ascertainable, or if not, the best approximation thereof.

17.     The term "employment agreement" means the document(s) used by the Salon to record or confirm employment by the Salon, define the scope of employment and/or outline compensation arrangements for employees of the Salon.

18.     The term "hotel reward club program" means a guest reward program that awards points, airline miles or other benefits with each reservation or hotel stay, including but not limited to the Hilton HHonors Program and the Starwood Preferred Guest/ StarPoints Program.

## 2.     <u>Instructions</u>

1.     If the Defendants assert a claim of attorney-client privilege or attorney work product with respect to any of the requests contained herein:

a.     State the precise nature of the privilege or other protection claimed;

b.     Describe the document with sufficient particularity such that Plaintiff can evaluate the claim of privilege or other protection;

c.     Identify each person or entity who signed the document and the identity of each person who participated in preparing the document;

d.      State the date of the document;

e.      State the title or heading of the document;

f.      State the numbered request(s) to which the document is responsive;

g.      State the present (or if present is not known, the last known) location and custodian of the document; and

h.      Identify any person or entity who reviewed or received copies of the document.

2.      In producing documents pursuant to this request, please indicate to which numbered request(s) each document is responsive.

3.      This document request is continuing in nature, and to the extent that the Defendants, the Defendants' attorneys, agents or representatives become aware of additional documents responsive to this request subsequent to their initial response to this request, the Defendants are requested immediately to provide such documents, or if such documents are not in the Defendants' custody, possession or control, to provide the information requested herein.

## DOCUMENTS REQUESTED

1.      Any and all "minute books" for the Salon for the period 1998 to the present.

2.      Any and all Articles of Incorporation for the Salon.

3.      Any and all Bylaws for the Salon.

4.      Any and all operating agreements for SPAC, LLC.

5.      Any and all rental or lease agreements for the premises located at 1604 K St., NW, Washington, DC, 20006 for the period 1998 to the present.

6.      Any and all documents relating to the assessed tax value by the District of Columbia for the premises located at 1604 K St., NW, Washington, DC, 20006.

7.     Mr. Chreky's W-2 Forms for the years 2002, 2003, 2004, 2005, and 2006.

8.     Mr. Chreky's pay stub(s) for October 2007.

9.     Serena Chreky's W-2 Forms for the years 2002, 2003, 2004, 2005, and 2006.

10.    Serena Chreky's pay stub(s) for October 2007.

11.    Detailed general ledger for the Salon for the year ending April 30, 2007.

12.    Any and all documents or records relating to the April 2007 bank statements for the Salon.

13.    Any and all documents or records relating to the April 2007 bank statements for SPAC, LLC.

14.    Any and all documents relating to life insurance policies for Mr. Chreky.

15.    Any and all documents relating to life insurance policies for Serena Chreky.

16.    The 1099 Form for the Salon for the year 2006.

17.    The W-2 Form for the Salon for the year 2006.

18.    Any and all employment agreements for all employees, officers, managers, and supervisors of the Salon for the period 1998 to the present.

19.    All documents evidencing the number of hours worked by employees of the Salon, including, but not limited to, time cards, work schedules, and any reports or notes kept by supervisors or managers regarding the number of hours worked by employees of the Salon.

20.    The verified transcript of the Deposition of Andre Chreky in the matter <u>Commonwealth ex rel. Doudaklian v. Andre Chreky</u>, in the Fairfax County Circuit Court, State of Virginia.

21.    Any and all bank statements for the period 1998 to the present for all savings accounts, checking accounts and safety deposit boxes identified by Defendants in response to Plaintiff's Second Set of Interrogatories, Interrogatory No. 1.

22.    Any and all credit card statements for the period 1998 to the present for all credit cards identified by Defendants in response to Plaintiff's Second Set of Interrogatories, Interrogatory No. 2.

23.    Any and all hotel reward club program statements for the period 1998 to the present for all reward club programs identified by Defendants in response to Plaintiff's Second Set of Interrogatories, Interrogatory No. 3.

24.     Any and all documents relating or referring to Defendants' telephone bills and statements for the period 1998 to the present.


Dated: October 26, 2007

                                        Respectfully submitted,


                              By:       _____
                                        Jonathan Rose, DC Bar No. 446208
                                        Emily N. Seymour, DC Bar No. 500201
                                        Sheppard Mullin Richter & Hampton, LLP
                                        1300 I Street, N.W.
                                        11th Floor East
                                        Washington, D.C. 20005
                                        (202) 218-0000 (phone)
                                        (202) 218-0020 (fax)
                                        jrose@sheppardmullin.com
                                        eseymour@sheppardmulllin.com

                                        Counsel for Plaintiff Jennifer Thong

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of October, 2007, I caused true copies of the foregoing Plaintiff Jennifer Thong's Second Request for the Production of Documents to be personally served on:

> John Bredehoft, Esq.
> David J. Sullivan, Esq.
> Kaufman & Canoles, P.C.
> 150 West Main Street, Suite 2100
> Norfolk, Virginia 23510

_____
Jonathan Rose

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JENNIFER THONG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 1:06-01807 (RCL) |
| ) | |
| ANDRE CHREKY SALON, ET AL. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' OBJECTIONS AND RESPONSES TO**
**PLAINTIFF JENNIFER THONG'S SECOND SET OF REQUEST**
**FOR THE PRODUCTION OF DOCUMENTS TO DEFENDANTS**

Defendants Andre Chreky, Andre Chreky Salon, and SPAC, LLC (the "Defendants"), by

counsel, respond to Plaintiff Jennifer Thong's Second Set of Request for the Production of

Documents to Defendants as follows:

    1.     Any and all "minute books" for the Salon for the period 1998 to the present.

    <u>Objection</u>:    Defendants object to this Request for Production on the grounds that it is

vague, unduly burdensome, and not likely to lead to the discovery of admissible evidence, as it

seeks "[a]ny and all 'minute books'" without regard to the subject matter of the issues addressed

therein.

    2.     Any and all Articles of Incorporation for the Salon.

    <u>Response</u>:    Defendants are in the process of locating such documents and will provide

them as soon as they are available.

    3.     Any and all Bylaws for the Salon.

<u>Response</u>:    Defendants are in the process of locating such documents and will provide them as soon as they are available.

4.    Any and all operating agreements for SPAC, LLC.

<u>Response</u>:    Defendants are in the process of locating such documents and will provide them as soon as they are available.

5.    Any and all rental or lease agreements for the premises located at 1604 K St., NW, Washington, DC, 20006 for the period 1998 to the present.

<u>Response</u>:    Defendants are in the process of locating such documents and will provide them as soon as they are available.

6.    Any and all documents relating to the assessed tax value by the District of Columbia for the premises located at 1604 K St., NW, Washington, DC, 20006.

<u>Response</u>:    Defendants are in the process of locating such documents and will provide them as soon as they are available.

7.    Mr. Chreky's W-2 Forms for the years 2002, 2003, 2004, 2005, and 2006.

<u>Objection</u>:    Defendants object to this request on the grounds that it is unduly burdensome, not likely to lead to the discovery of admissible evidence, and duplicative, as five years of tax records are not necessary to determine Defendants' financial status, Defendants assert that they have previously produced documents evidencing the income and net worth of each defendant, including two years of tax returns, and Plaintiff has issued subpoenas for tax records directly from Defendants' tax preparer, Goodman & Company; Andre and Serena Chreky have executed releases authorizing Goodman & Company to produce responsive tax records.

8.    Mr. Chreky's pay stub(s) for October 2007.

2

<u>Objection</u>:     Defendants object to this Request for Production on the grounds that it is not likely to lead to the discovery of admissible evidence, as none of plaintiff's claims are based on acts alleged to have occurred in October 2007.  To the extent this Request for Production purports to be based on assessing Defendants' financial status, Defendants assert that they have previously produced documents evidencing the income and net worth of each defendant.

9.     Serena Chreky's W-2 Forms for the years 2002, 2003, 2004, 2005, and 2006.

<u>Objection</u>:     Defendants object to this request on the grounds that it is unduly burdensome, not likely to lead to the discovery of admissible evidence, and duplicative, as five years of tax records are not necessary to determine Defendants' financial status, Defendants assert that they have previously produced documents evidencing the income and net worth of each defendant, including two years of tax returns, and Plaintiff has issued subpoenas for tax records directly from Defendants' tax preparer, Goodman & Company; Andre and Serena Chreky have executed releases authorizing Goodman & Company to produce responsive tax records.

10.     Serena Chreky's pay stub(s) for October 2007.

<u>Objection</u>:     Defendants object to this Request for Production on the grounds that it is not likely to lead to the discovery of admissible evidence, as none of plaintiff's claims are based on acts alleged to have occurred in October 2007.  To the extent this Request for Production purports to be based on assessing Defendants' financial status, Defendants assert that they have previously produced documents evidencing the income and net worth of each defendant.

11.     Detailed general ledger for the Salon for the year ending April 30, 2007.

<u>Objection</u>:     Defendants object to this Request for Production on the grounds that it is not likely to lead to the discovery of admissible evidence, as none of plaintiff's claims are based

3

on acts alleged to have occurred in 2007. To the extent this Request for Production purports to be based on assessing Defendants' financial status, Defendants assert that they have previously produced documents evidencing the income and net worth of each defendant.

12.    Any and all documents or records relating to the April 2007 bank statements for the Salon.

Objection:    Defendants object to this Request for Production on the grounds that it is not likely to lead to the discovery of admissible evidence, as none of plaintiff's claims are based on acts alleged to have occurred in April 2007. To the extent this Request for Production purports to be based on assessing Defendants' financial status, Defendants assert that they have previously produced documents evidencing the income and net worth of each defendant.

13.    Any and all documents or records relating to the April 2007 bank statements for SPAC, LLC.

Objection:    Defendants object to this Request for Production on the grounds that it is not likely to lead to the discovery of admissible evidence, as none of plaintiffs claims are based on acts alleged to have occurred in April 2007. To the extent this Request for Production purports to be based on assessing Defendants' financial status, Defendants assert that they have previously produced documents evidencing the income and net worth of each defendant.

14.    Any and all documents relating to life insurance policies for Mr. Chreky.

Objection:    Defendants object to this Request for Production on the grounds that it is not likely to lead to the discovery of admissible evidence. To the extent this Request for Production purports to be based on assessing Defendants' financial status, Defendants assert that they have previously produced documents evidencing the income and net worth of each defendant.

4

15. Any and all documents relating to life insurance policies for Serena Chreky.

Objection:    Defendants object to this Request for Production on the grounds that it is not likely to lead to the discovery of admissible evidence.    To the extent this Request for Production purports to be based on assessing Defendants' financial status, Defendants assert that they have previously produced documents evidencing the income and net worth of each defendant.

16. The 1099 Form for the Salon for the year 2006.

Response:    Defendants are in the process of locating any such document in Defendants' possession and will produce responsive documents when available.

17. The W-2 Form for the Salon for the year 2006.

Response:    Defendants are in the process of locating any such document in Defendants' possession and will produce responsive documents when available.

18. Any and all employment agreements for all employees, officers, managers, and supervisors of the Salon for the period 1998 to the present.

Objection:    Defendants object to this Request for Production on the grounds that it is overly burdensome and not likely to lead to the discovery of admissible evidence.

19. All documents evidencing the number of hours worked by employees of the Salon, including, but not limited to, time cards, work schedules, and any reports or notes kept by supervisors or managers regarding the number of hours worked by employees of the Salon.

Objection:    Defendants object to this Request for Production on the grounds that it is not limited whatsoever in time.    Defendants further object that this Request for Production is duplicative, as Defendants have previously produced all payroll records, which reflect hours worked, for all employees currently maintained by Defendants.

20. The verified transcript of the Deposition of Andre Chreky in the matter Commonwealth ex rel. Doudaklian v. Andre Chreky, in the Fairfax County Circuit Court, State of Virginia.

Objection: Defendants object to this request on the ground that it is not likely to lead to the discovery of admissible evidence.

21. Any and all bank statements for the period 1998 to the present for all savings accounts, checking accounts and safety deposit boxes identified by Defendants in response to Plaintiff's Second Set of Interrogatories, Interrogatory No. 1.

Objection: *See* Objection to Interrogatory No. 1.

22. Any and all credit card statements for the period 1998 to the present for all credit cards identified by Defendants in response to Plaintiff's Second Set of Interrogatories, Interrogatory No. 2.

Objection: *See* Objection to Interrogatory No. 2.

23. Any and all hotel reward club program statements for the period 1998 to the present for all reward club programs identified by Defendants in response to Plaintiff's Second Set of Interrogatories, Interrogatory No. 3.

Objection: *See* Objection to Interrogatory No. 3.

24. Any and all documents relating or referring to Defendants' telephone bills and statements for the period 1998 to the present.

Objection: Defendants object to this Request for Production on the grounds that it is unduly burdensome and not likely to lead to the discovery of admissible evidence.

6

November 26, 2007                              Respectfully submitted,

                                               John M. Bredehoft
                                               D.C. Bar No. 375606
                                               KAUFMAN & CANOLES, P.C.
                                               150 West Main Street, Suite 2100
                                               Norfolk, Virginia 23510
                                               757-624-3225 (direct voice line)
                                               757-624-3169 (facsimile)
                                               jmbredehoft@kaufcan.com


### CERTIFICATE OF SERVICE

This will certify that a true copy of the foregoing Objections and Responses to Plaintiff

Jennifer Thong's Second Set of Request for the Production of Documents to Defendants was sent

via first class mail, this 26th day of November, 2007, to:

        Jonathan G. Rose, Esq.
        Sheppard Mullin Richter and Hampton, LLP
        1300 I Street, N.W.
        11th Floor East
        Washington, DC  20005


                                               John M. Bredehoft


1292226\1

# **<u>EXHIBIT 3</u>**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| JENNIFER THONG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:06-01807 (RCL) |
| | ) | |
| ANDRE CHREKY SALON, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' SECOND SUPPLEMENTAL RESPONSES TO
PLAINTIFF JENNIFER THONG'S SECOND SET OF REQUEST
FOR THE PRODUCTION OF DOCUMENTS TO DEFENDANTS**

Defendants Andre Chreky ("Mr. Chreky"), Andre Chreky, Inc. ("ACI"), and SPAC, LLC ("SPAC") (collectively the "Defendants"), by counsel, respond to Plaintiff Jennifer Thong's Second Set of Request for the Production of Documents to Defendants, in accordance with Order of the Court dated January 18, 2008, as follows:

18.    Any and all employment agreements for all employees, officers, managers, and supervisors of the Salon for the period 1998 to the present.

<u>Response</u>:    As previously disclosed, no such agreements exist.    However, in connection with the agreement of counsel, Defendants produce signature pages associated with the Andre Chreky Salon Staff Manual, bates labeled Chreky 005406 to 005913; *see also* acknowledgements associated with IRS memorandum, bates labeled Chreky 005914 to 005965.

19.    All documents evidencing the number of hours worked by employees of the Salon, including, but not limited to, time cards, work schedules, and any reports or notes kept by supervisors or managers regarding the number of hours worked by employees of the Salon.

Response:    Defendants have no such documents, other than previously produced payroll records.

20.    The verified transcript of the Deposition of Andre Chreky in the matter Commonwealth ex rel. Doudaklian v. Andre Chreky, in the Fairfax County Circuit Court, State of Virginia.

Pursuant to the Court's Order, this request shall be deemed to be "a request for a copy of Mr. Chreky's hearing testimony in the matter *Commonwealth ex rel. Doudaklian v. Andre Chreky*, in the Fairfax County Circuit Court."

Response:    *See* Declaration of Andre Chreky enclosed herewith; *see also* hearing transcript (March 9, 2005 and April 21, 2005), bated labeled Chreky 005287 to 005405.

22.    Any and all credit card statements for the period 1998 to the present for all credit cards identified by Defendants in response to Plaintiff's Second Set of Interrogatories, Interrogatory No. 2.

Response:    *See* documents bates labeled Chreky 004142 to 005286

24.    Any and all documents relating or referring to Defendants' telephone bills and statements for the period 1998 to the present.

Response:    Defendants currently possess the previous eight months (from May 2007 through December 2007) of telephone bills, which are bates labeled Chreky 005966 to 005973; Defendants have requested copies of prior bills from Verizon, but Defendants do not currently have these prior bills in their possession or control. Defendants shall supplement this response upon receipt of these prior bills.

2

February 4, 2008                                     Respectfully submitted,


                                                     John M. Bredehoft
                                                     D.C. Bar No. 375606
                                                     KAUFMAN & CANOLES, P.C.
                                                     150 West Main Street, Suite 2100
                                                     Norfolk, Virginia 23510
                                                     757-624-3225 (direct voice line)
                                                     757-624-3169 (facsimile)
                                                     jmbredehoft@kaufcan.com



## CERTIFICATE OF SERVICE

This will certify that a true copy of the foregoing Second Supplemental Responses to

Plaintiff Jennifer Thong's Second Set of Request for the Production of Documents to Defendants

was sent via overnight mail this 4th day of February, 2008, to:

    Jonathan G. Rose, Esq.
    Sheppard Mullin Richter and Hampton, LLP
    1300 I Street, N.W.
    11th Floor East
    Washington, DC  20005


                                                     John M. Bredehoft


::ODMA\PCDOCS\DOCSNFK\1327029\1

3

# EXHIBIT 4

## Emily Seymour

| | |
|---|---|
| **From:** | Emily Seymour |
| **Sent:** | Tuesday, July 22, 2008 8:59 AM |
| **To:** | 'Sullivan, David J.'; 'Smith, Anna Richardson' |
| **Cc:** | Jonathan Rose |
| **Subject:** | RE: Supplemental Documents Still Outstanding |
| **Importance:** | High |

David,

I am writing to follow up on another, important outstanding issue with respect to Defendants' document production. Specifically, with respect to Defendants' response to Plaintiff's Second Request for Documents, No. 24 (telephone bills). As you know, the Court ordered Defendants to produce these bills and telephone statements (i.e., the portion of the telephone bill showing detailed call logs). After the Court ordered these documents to be produced in its January 18 Order, Defendants responded to Plaintiff again on February 4th stating that they: "currently possess the previous 8 months (from May 2007 through December 2007) of telephone bills" but "Defendants have requested copies of prior bills from Verizon, but Defendants do not currently have these prior bills in their possession or control. Defendants shall supplement this response upon receipt of those bills."

To date, we still have not received: (1) this supplemental production of documents you obtained from Verizon, (2) the detailed "statements" requested and ordered produced by the Court, and (3) a supplemental production of telephone bills and statements from December 2007 to the present. As with the American Express documents, we expect these documents produced immediately in order to proceed with the upcoming depositions as currently scheduled.

Regards,
Emily

---

**From:** Jonathan Rose
**Sent:** Monday, July 21, 2008 10:39 AM
**To:** 'Sullivan, David J.'
**Cc:** 'Smith, Anna Richardson'; Emily Seymour
**Subject:** Supplemental Documents Still Outstanding
**Importance:** High

David,

I just wanted to touch base with you on one, important, outstanding issue re: supplementing production, we have not yet received the American Express invoices for the period November through the present. Obviously, as you know these documents were requested, and to the extent that your client has failed to retain them -- that would constitute document destruction, something I'm sure that you would never let your clients do. However, if you do not provide these documents by noon Wednesday, we will need to reschedule Andre's and the 30(b)(6) depositions until you have provided these responsive documents. Please don't hesitate to give me a call if you have any questions, or would like to discuss anything regarding this matter. Best regards, JR.


Jonathan G. Rose
Sheppard Mullin Richter & Hampton LLP
1300 I Street, N.W.
11th Floor East
Washington, D.C. 20005
202-218-0018(direct)

# **<u>EXHIBIT 5</u>**

# KAUFMAN & CANOLES
——— | A Professional Corporation | ———
**Attorneys and Counselors at Law**

David J. Sullivan
757 / 624-3249
djsullivan@kaufcan.com

757 / 624-3000
*fax:* 757 / 624-3169

*Mailing Address:*
P.O. Box 3037
Norfolk, VA 23514

150 West Main Street
Suite 2100
Norfolk, VA 23510

July 25, 2008

**VIA FEDERAL EXPRESS**

Jonathan G. Rose, Esq.
Sheppard Mullin Richter & Hampton, LLP
1300 I Street, N.W.
11th Floor East
Washington, DC 20005

Re:    **Jennifer Thong vs. Andre Chreky Salon and Andre Chreky**
        **Civil No. 1:06-1807**

Dear Mr. Rose:

Enclosed please find documents marked Chreky 006319-006344 (supplemental American Express statements) and Chreky 006345-006524 (supplemental Verizon bills) supplementing Defendants' prior responses to Plaintiff's requests for production of documents.

If you have any questions please do not hesitate to contact me.

Regards,

David J. Sullivan

DJS/jwb

Enclosures

1388110\1

---

Disclosure Required by Internal Revenue Service Circular 230: This communication is not a tax opinion. To the extent it contains tax advice, it is not intended or written by the practitioner to be used, and it cannot be used by the taxpayer, for the purpose of avoiding tax penalties that may be imposed on the taxpayer by the Internal Revenue Service.

---

Chesapeake | Hampton | Newport News | Richmond | Virginia Beach | Williamsburg

# EXHIBIT 6

## Emily Seymour

| | |
|---|---|
| **From:** | Jonathan Rose |
| **Sent:** | Tuesday, August 05, 2008 11:35 AM |
| **To:** | 'Sullivan, David J.' |
| **Cc:** | Emily Seymour |
| **Subject:** | Thong v. Chreky |
| **Attachments:** | Westlaw_Document_12_52_49.doc; 28 Order re Motion to Compel.pdf; Defendants' 2nd Supp Response to 2nd Request for Docs.pdf |

David,

Per our discussion this morning, and Emily's email dated July 22nd, I am writing to follow up on a very significant concern with respect to Defendants' document production in response to Plaintiff's Second Request for Documents, No. 24 (tephone bills).

On January 18, 2008, the Court granted Plaintiff's Motion to Compel (attached), and ordered Defendants to produce all Verizon bills and telephone statements (i.e., the portion of the telephone bill showing detailed call logs) going back to 1998, or, at the very least, going back the 16 months to the time Plaintiff filed her complaint in 2006. After the Court ordered these documents to be produced, Defendants responded to Plaintiff on February 4th (attached) stating that they: "currently possess the previous 8 months (from May 2007 through December 2007) of telephone bills" and Defendants produced these bills (5966-73), but no accompanying detailed statements. Defendants also stated: "Defendants have requested copies of prior bills from Verizon, but Defendants do not currently have these prior bills in their possession or control. Defendants shall supplement this response upon receipt of those bills." Plaintiff understood this to mean that Defendants asked Verizon for all prior bills and statements (i.e, bills and statements prior to February 2008), in order to comply with the Court's order.

Last week, in response to our inquiry, you produced detailed Verizon bills and statements from January 2008 to June 2008 (6345-6524). This is not sufficient, and does not satisfy the Court's order. To date, we still have not received the documents you supposedly requested from Verizon in February 2008, including the detailed "statements" going back at least 16 months to when Plaintiff filed her Complaint as the Court ordered you to produce.

As we discussed, we expect these documents produced no later than noon Friday, or we will alert the Court of your failure to comply with its Order.

Best regards,

Jonathan G. Rose
Sheppard Mullin Richter & Hampton LLP
1300 I Street, N.W.
11th Floor East
Washington, D.C. 20005
202-218-0018(direct)
202-669-0292 (cell)
202-312-9410 (fax)
jrose@sheppardmullin.com

202-669-0292 (cell)
202-312-9410 (fax)
jrose@sheppardmullin.com

# **EXHIBIT 7**

## Emily Seymour

**From:** Jonathan Rose

**Sent:** Thursday, August 07, 2008 11:49 AM

**To:** 'Sullivan, David J.'

**Cc:** Bredehoft, John M.; 'Smith, Anna Richardson'; Emily Seymour

**Subject:** Discovery Issue Follow Up

David,

This is to follow up on outstanding discovery issues.  Though I'm sure you are busy, I have have not heard anything from you in response to my letter yesterday trying to set up a meet and confer call to discuss your many failures to produce relevant responsive materials in response to Plaintiff Thong's Fourth Request for the Production of Documents (although I will be out of town starting tonight, I can make myself available late tomorrow morning or early afternoon).  In addition, we haven't heard anything from you regarding your failure to comply with the Court's Order to Compel from January for detailed Verizon phone records.  Again, please be advised if we do not have all responsive Defendants' Verizon records by noon tomorrow, we will notify the Court of your failure to comply with its Order.  Finally, although I do understand that John was out of the office last week, based on our conversation last week and earlier this week, you were to confirm the proposed schedule for the remaining depositions -- my calendar is filling up quickly, please advise immediately.  Best regards, JR.

Jonathan G. Rose
Sheppard Mullin Richter & Hampton LLP
1300 I Street, N.W.
11th Floor East
Washington, D.C.  20005
202-218-0018(direct)
202-669-0292 (cell)
202-312-9410 (fax)
jrose@sheppardmullin.com

# **EXHIBIT 8**

**KAUFMAN & CANOLES**
——— I A Professional Corporation I ———
**Attorneys and Counselors at Law**

Anna Richardson Smith
757 / 624-3288
arsmith@kaufcan.com

757 / 624-3000
fax: 757 / 624-3169

*Mailing Address:*
P.O. Box 3037
Norfolk, VA 23514

150 West Main Street
Suite 2100
Norfolk, VA 23510

August 8, 2008

Jonathan G. Rose, Esquire
Sheppard Mullin Richter & Hampton, LLP
1300 I Street, N.W.
11th Floor East
Washington, DC 20005

> Re:  ***Jennifer Thong vs. Andre Chreky Salon and Andre Chreky***
>       **Civil No. 1:06-01807 (RCL)**

Dear Jonathan:

Please find enclosed Bates Numbers 6531-6803, detailed Verizon bills for February 2007, April-May 2007, and July-December 2007. We anticipate receiving September-December 2006, and March and June 2007, in this detailed format, mid-week next week. I will then forward to you.

Sincerely,

Anna Richardson Smith

enclosures

Disclosure Required by Internal Revenue Service Circular 230: This communication is not a tax opinion. To the extent it contains tax advice, it is not intended or written by the practitioner to be used, and it cannot be used by the taxpayer, for the purpose of avoiding tax penalties that may be imposed on the taxpayer by the Internal Revenue Service.

Chesapeake     Hampton     Newport News     Richmond     Virginia Beach     Williamsburg

# **<u>EXHIBIT 9</u>**

# KAUFMAN & CANOLES
———— | A Professional Corporation | ————
**Attorneys and Counselors at Law**

Anna Richardson Smith
757 / 624-3288
arsmith@kaufcan.com

757 / 624-3000
*fax:* 757 / 624-3169

*Mailing Address:*
P.O. Box 3037
Norfolk, VA 23514

150 West Main Street
Suite 2100
Norfolk, VA 23510

August 13, 2008

Jonathan G. Rose
Emily Seymour
Shepard Mullin Richter & Hampton, LLP
1300 I Street, N.W.
11th Floor East
Washington, DC 20005

      Re:  Jennifer Thong v. Andre Chreky Salon and Andre Chreky
          Civil No. 1:06-1807

Dear Jonathan and Emily,

    Enclosed please find copies of the detailed Verizon billing statements for the months of 9/06 – 12/06, 3/07, and 6/07, bates numbered 006805 – 006982, in the above-referenced matter. Please contact me should you have any questions.

Very sincerely,

Anna Richardson Smith

ARS:dbf
Enclosures

Chesapeake    Hampton    Newport News    Richmond    Virginia Beach    Williamsburg

# EXHIBIT 10

## Emily Seymour

| | |
|---|---|
| **From:** | Jonathan Rose |
| **Sent:** | Thursday, August 14, 2008 2:44 PM |
| **To:** | 'Sullivan, David J.' |
| **Cc:** | Bredehoft, John M.; 'Smith, Anna Richardson'; Emily Seymour |
| **Subject:** | Defendants Failure to Comply With Order to Compel |
| **Importance:** | High |

David,
This is to confirm that our meet and confer call from a few minutes ago.  Despite our numerous attempts, and
infinite patience in waiting for Defendants to comply with the Court's 1/18/08 Order to Compel, you have,
apparently deliberately failed to produce responsive materials compelled in the Court's Order.  In particular, you
have failed to produce invoices for Mr. Chreky's cell phone, and instead, only Tuesday of this week, produced
phone invoices from the Salon.  As you are well aware, Mr. Chreky's cell phone records are of significant
importance, and clearly responsive and your failure to produce them can only be viewed as a deliberate attempt
to evade the Court's Order.  In light of your repeated failure to produce the relevant, responsive materials the
Court's compelled in it's 1/18/08 Order, we will be filing a Motion with the Court tomorrow for it's intervention in
your bad faith conduct in meeting your discovery obligations as officers of the Court, and seek sanctions
for all costs flowing from your improper conduct.

Best regards,

Jonathan G. Rose
Sheppard Mullin Richter & Hampton LLP
1300 I Street, N.W.
11th Floor East
Washington, D.C.  20005
202-218-0018(direct)
202-669-0292 (cell)
202-312-9410 (fax)
jrose@sheppardmullin.com

# <u>**EXHIBIT 11**</u>

# KAUFMAN & CANOLES

————— | A Professional Corporation | —————

**Attorneys and Counselors at Law**

David J. Sullivan
757 / 624-3249
djsullivan@kaufcan.com

757 / 624-3000
*fax:* 757 / 624-3169

*Mailing Address:*
P.O. Box 3037
Norfolk, VA 23514

150 West Main Street
Suite 2100
Norfolk, VA 23510

August 15, 2008

Jonathan G. Rose, Esq.
Sheppard Mullin Richter & Hampton, LLP
1300 I Street, N.W.
11th Floor East
Washington, DC 20005

Re:    **Jennifer Thong vs. Andre Chreky Salon and Andre Chreky
Civil No. 1:06-1807**

Dear Jonathan:

Just to ensure that your files are complete, I enclose an additional copy of the subpoena for Mr. Chreky's AT&T cell phone records from last October in the *Barrett* case. I understand that you received a copy of the response directly from Ari Wilkenfeld.

Your letter to me of today might be misread by someone to suggest that defendants somehow concealed the existence of Mr. Chreky's AT&T cell phone from you. I am sure you would agree that any such reading of your letter would be incorrect.

As I believe John has already indicated, the process of obtaining a complete copy of the AT&T records (and further records to date) has already been started. If we can convince AT&T to provide them more quickly, we will do so. All of this is notwithstanding the fact that there has been full compliance with the Court's order, since all of the records in the custody, possession, and control of the defendants were provided in connection with our response in February.

Regards,

David J. Sullivan

DJS/jwb

Enclosure

1394891\1

# EXHIBIT 12

# KAUFMAN & CANOLES

———— | A Professional Corporation | ————

**Attorneys and Counselors at Law**

David J. Sullivan
757 / 624-3249
djsullivan@kaufcan.com

757 / 624-3000
*fax:* 757 / 624-3169

*Mailing Address:*
P.O. Box 3037
Norfolk, VA 23514

150 West Main Street
Suite 2100
Norfolk, VA 23510

August 21, 2008

**VIA FEDERAL EXPRESS**
**LETTER ONLY BY EMAIL**

Jonathan G. Rose, Esq.
Sheppard Mullin Richter & Hampton, LLP
1300 I Street, N.W.
11th Floor East
Washington, DC 20005

Re:    **Jennifer Thong vs. Andre Chreky Salon and Andre Chreky**
       **Civil No. 1:06-1807**

Dear Jonathan:

Without restating our extensive communications on this subject, as we explained last week, we have been in compliance with the Court's order of January 18, 2008, at all times. Nonetheless, enclosed please find documents bates labeled Chreky 006983 - 007333,[1] representing monthly bills and detailed call statements, recently received from AT&T, for the cell phone maintained by Andre Chreky during the period of July 17, 2007 through July 16, 2008. Immediately following our telephone conversation on August 14, 2008, we requested Mr. Chreky's cellular telephone bills from AT&T. We received the documents enclosed herewith this week, and we expect to receive monthly bills and detailed call statements for the time period of September 2006 to July 17, 2007, which are still in the process of being generated by AT&T. We were told by AT&T that it would be 3-5 business days before AT&T would be able to generate and send these older bills, and we have not received them to date, but I expect to receive them any day now (today is the fifth business day since our request). As soon as I receive these older bills, I will send copies to you.

Also enclosed herewith are (a) documents bates labeled Chreky 007334 - 007336, updating our response to your request for documents related to licenses of salon employees (Karkas, Guzman, and Mahboub), and (b) documents bates labeled Chreky 7337 - 7340, pursuant to your request that we produce provider reports (similar to those provided previously) for 2007 and 2008. The Andre Chreky Salon does not maintain copies of these reports in the ordinary course of business, did not have copies of these reports at the time of your request, and there is no data on such reports related

---

[1] Due to a clerical error, we did not mark any documents with bates labels 006991-007004; these labels will not be used on this or any subsequent production.

Jonathan G. Rose, Esq.
August 21, 2008
Page 2

to your client or her claims in this case. Nonetheless, we have generated these documents for your review.

Additionally, we have discussed the fact that we have retained a CPA to prepare a financial net worth statement for Andre Chreky. The CPA is still working on this statement and it is not in our possession at this time. Once this statement is completed by the CPA, we will produce a copy for your review.

Finally, based on our discussions last week regarding Defendants' Responses to Plaintiff's Fourth Request for the Production of Documents, we have retained a computer expert to retrieve any and all e-mail communications that may be responsive. This expert was retained immediately, has been working diligently since our conversation last week, and has reported that he will provide me with the results of his work on Monday, August 25, 2008. Once I've had a chance to receive and review his work, I will immediately produce any and all documents responsive to your request.

If you have any questions or concerns, please contact me.

Regards,

David J. Sullivan

DJS/jwb

Enclosures

1396549\1

# <u>EXHIBIT 13</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JENNIFER THONG ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil No. 1:06-1807 (RCL) |
| ) | |
| ANDRE CHREKY SALON, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFF JENNIFER THONG'S FIRST REQUEST
FOR THE PRODUCTION OF DOCUMENTS TO DEFENDANTS**

Pursuant to Fed. R. Civ. P. 34, Plaintiff Jennifer Thongs ("Ms. Thong" or "Plaintiff"), by and through her attorney, hereby requests that Defendants Andre Chreky, Andre Chreky Salon, and SPAC, LLC (collectively "Defendants") produce all documents and things listed herein to undersigned counsel within thirty (30) days of receipt of this request.

These requests are continuing in nature, and require Defendants to promptly serve a supplemental response if additional documents are acquired by Defendants after its initial response.

These requests shall be read and interpreted in accordance with the definitions and instructions set forth below:

**DEFINITIONS AND INSTRUCTIONS**

1. **Definitions**

1.    The word "document" is used in the broadest sense possible and means the original and all drafts of all written or graphic matter, however produced or reproduced, of any kind or description, whether or not sent or received, and all copies thereof which are different in

19.    Any and all documents that record or memorialize overtime compensation due and/or paid to Salon employees from 1998 to the present.

20.    All documents relating to the procedures used by Defendants to record the tips earned by employees and how tips should be distributed or withheld from employees.

21.    Any and all documents related to a Department of Labor or state agency relating to your compensation practices, including but not limited to wage and hour violations, investigations, findings, and remedial actions required.

22.    Any and all documents concerning any lawsuit or administrative actions under federal, state or local law in which you were a party or a participant.

23.    Documents reflecting any insurance coverage maintained by Defendants that may apply to satisfy or partially satisfy a judgment entered in this case.

24.    Any and all documents pictures, images, drawings, floor plans, blueprints, or architectural designs demonstrating the physical layout of the Salon, including but not limited to images or drawings depicting the Salon service area, offices, kitchen, bathrooms, and supply room.

25.    All documents identifying SPAC and Andre Chreky Salon's owners, officers, managers, and their corporate structure.

26.    Any and all documents reflecting the relationship between SPAC, the Salon, Mr. Chreky and Serena Chreky, including but not limited to rental or lease agreements, administrative service agreements, invoices, bills, checks, corporate filings, and licenses.

27.    Any and all documents or records, from the period 1998 to the present, reflecting Defendants' finances or state of business, including but not limited to records reflecting Defendants' assets, liabilities, revenues, debts, cash flow, and net worth.

28.    Copies of annual and/or quarterly tax filings submitted by Defendants to the Internal Revenue Service and the District of Columbia, Virginia, or any other state entity for the tax years 1998 to 2007.

29.    All documents that Defendants assert support their Affirmative Defenses stated in their Answer.

30.    Any and all documents that have not already been produced in response to the document requests above relating to any and all claims made against you that you may introduce as evidence or otherwise rely upon at any hearing or trial.

# EXHIBIT 14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JENNIFER THONG,                          )
                                         )
       Plaintiff,                   )
                                         )
v.                                       )    C.A. No. 1:06-01807 (RCL)
                                         )
ANDRE CHREKY SALON, ET AL.               )
                                         )
       Defendants.                  )
_____)

### DEFENDANTS' RESPONSES TO PLAINTIFF
### JENNIFER THONG'S FIRST REQUEST FOR THE
### PRODUCTION OF DOCUMENTS TO DEFENDANTS

Defendants Andre Chreky, Andre Chreky Salon, and SPAC, LLC (the "Defendants"), by counsel, responds to Plaintiff Jennifer Thong's First Request for the Production of Documents to Defendants as follows:

1.    Any and all documents identified in your response to Ms. Thong's First Set of Interrogatories or which you used to respond to Ms. Thong's First Set of Interrogatories, and/or which you believe support, refute, tend to support, or tend to refute your response to Ms. Thong's First Set of Interrogatories.

Response:    See Declarations previously produced in connection with Defendants' 26(a)(1) Initial Disclosures (bates labeled Chreky 00001-000028); Jennifer Thong's personnel file (bates labeled Chreky 003090-003117); Time Cards for Jennifer Thong (bates labeled Chreky 003015-003065); Tip Reports for Jennifer Thong (bates labeled Chreky 003066-003089); Andre Chreky Staff Manual (bates labeled Chreky 000096-000126); 2005 and 2006 ADP Payroll Register reports (bates labeled Chreky 000127-000448) and ADP Payroll Earnings

Objection:    Defendants object to this request on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

23.    Documents reflecting any insurance coverage maintained by Defendants that may apply to satisfy or partially satisfy a judgment entered in this case.

Response:    No such documents exist.

24.    Any and all documents pictures, images, drawings, floor plans, blueprints, or architectural designs demonstrating the physical layout of the Salon, including but not limited to images or drawings depicting the Salon service area, offices, kitchen, bathrooms, and supply room.

Objection:    Defendants object to this request on the ground that it is overly burdensome.

25.    All documents identifying SPAC and Andre Chreky Salon's owners, officers, managers, and their corporate structure.

Response:    See Response to Request No. 27.

26.    Any and all documents reflecting the relationship between SPAC, the Salon, Mr. Chreky and Serena Chreky, including but not limited to rental or lease agreements, administrative service agreements, invoices, bills, checks, corporate filings, and licenses.

Objection:    Defendants object to this Request on the ground that it is unduly burdensome.

Response:    Notwithstanding and without waiving this objection, see Response to Request No. 27.

8

27.    Any and all documents or records, from the period 1998 to the present, reflecting Defendants' finances or state of business, including but not limited to records reflecting Defendants' assets, liabilities, revenues, debts, cash flow, and net worth.

Objection:    Defendants object to this Request on the grounds that it is unduly burdensome and not likely to lead to the discovery of admissible evidence, as "any and all documents or records" is overly broad, and the applicable time period is excessive and not relevant to Defendants' current financial status.

Response:    Notwithstanding and without waiving this objection, see Andre Chreky Personal Financial Statement (bates labeled Chreky 000449-000453; **CONFIDENTIAL**); Andre Chreky 2006 personal Tax Return (bates labeled Chreky 002682-002722; **CONFIDENTIAL**); Andre Chreky, Inc. 2005 Tax Return (bates labeled Chreky 000641-000651; **CONFIDENTIAL**); Andre Chreky, Inc. 2006 Tax Return (bates labeled Chreky 000652-000655; **CONFIDENTIAL**); Andre Chreky, Inc. Income Statement and Balance Sheet dated 4/30/07 (bates labeled Chreky 002679-0002681; **CONFIDENTIAL**); SPAC, LLC 2005 Tax Return (bates labeled Chreky 000656-000670; **CONFIDENTIAL**); SPAC, LLC 2006 Tax Return (bates labeled Chreky 000673-000697; **CONFIDENTIAL**); and SPAC, LLC 2006 Income Statement and Balance Sheet (bates labeled Chreky 000671-000672; **CONFIDENTIAL**).

28.    Copies of annual and/or quarterly tax filings submitted by Defendants to the Internal Revenue Service and the District of Columbia, Virginia, or any other state entity for the tax years 1998 to 2007.

9

# EXHIBIT 15

KAUFMAN & CANOLES

# KAUFMAN & CANOLES

———— | A Professional Corporation | ————
**Attorneys and Counselors at Law**

David J. Sullivan
757 / 624-3249
djsullivan@kaufcan.com

757 / 624-3000
*fax:* 757 / 624-3169

*Mailing Address:*
P.O. Box 3037
Norfolk, VA 23514

150 West Main Street
Suite 2100
Norfolk, VA 23510

March 28, 2008

<u>VIA FACSIMILE AND OVERNIGHT MAIL</u>

Ari M. Wilkenfeld, Esq.
Katz Marshall & Banks, LLP
1718 Connecticut Avenue, N.W.
Sixth Floor
Washington, DC 20009

Jonathan G. Rose, Esq.
Sheppard Mullin Richter & Hampton, LLP
1300 I Street, N.W.
11th Floor East
Washington, DC 20005

Re:    **Ronnie Barrett v. Andre Chreky Salon & Spa**
       **Case No.: 1:07 CV 00250 (RCL)**

       **Jennifer Thong vs. Andre Chrecky Salon and Andre Chreky**
       **Civil No. 1:06-1807**

Dear Mr. Wilkenfeld and Mr. Rose:

Today, my client located several documents responsive to discovery requests. Therefore, please find the following documents supplementing my clients' discovery responses and Initial Disclosures in the above-referenced matters:

- Andre Chreky, Inc., Articles of Incorporation, bates labeled Chreky 005974 to 005978;

- Andre Chreky, Inc., Bylaws, bates labeled Chreky 005979 to 006000;

- Andre Chreky, Inc., unanimous written consent, bates labeled Chreky 006001 to 006004;

- Lease documents related to 1604 K Street, SPAC, LLC, and Andre Chreky, Inc., bates labeled Chreky 006006 to 006008;

- SPAC, LLC, Articles of Organization, bates labeled Chreky 006009 to 006011;

- SPAC, LLC, Operating Agreement, bates labeled Chreky 006012 to 006042; and

Ari M. Wilkenfeld, Esq.
Jonathan G. Rose, Esq.
March 28, 2008
Page 2

- SPAC, LLC, unanimous consent of members, bates labeled Chreky 006043 to 006045.

If you have any questions about the documents produced with this letter, or wish to discuss any issues related to this case, please contact me at your earliest convenience.

Regards,

David J. Sullivan

::ODMA\PCDOCS\DOCSNFK\1345862\1

# EXHIBIT 16



1300 I Street, NW  |  11th Floor East  |  Washington, D.C.  20005-3314
202-218-0000 *office*  |  202-218-0020 *fax*  |  ***www.sheppardmullin.com***

Writer's Direct Line: 202-218-1018
jrose@sheppardmullin.com

June 18, 2008

***VIA E-MAIL AND U.S. MAIL***

David Sullivan, Esq.
Kaufman & Canoles, P.C.
150 West Main Street
Suite 2100
Norfolk, VA 23510

             Re:     Jennifer Thong v. Andre Chreky Salon, et al.


Dear David:

        I am writing with respect to Defendants' Responses to Plaintiff's document requests in the above-referenced matter.  Pursuant to Federal Rule of Civil Procedure 26(e), Defendants have an affirmative duty to supplement their discovery responses.  If Defendants are aware of circumstances which would make a prior response incomplete or incorrect in some material respect, Defendants are under a duty to provide proper, supplemental responses.  This would include, by way of example, any updated financial information for the 2007 tax year for Defendants, any recent complaints made by employees regarding harassment, compensation or employment practices, recent tip disclosure forms, updated cosmetology licenses, and any updated employment policies and practices at the Salon.

        Given that the current discovery cut-off is set for July 30, 2008, and Mr. Chreky's deposition will proceed in July, please provide these supplemental responses no later than Monday, June 30, 2008.

        As always, please feel free to contact me if you have any questions with respect to this matter.

                        Sincerely,

                        Jonathan G. Rose

# <u>EXHIBIT 17</u>

## Emily VanSpeybroeck

| | |
|---|---|
| **From:** | Sullivan, David J. [djsullivan@kaufcan.com] |
| **Sent:** | Wednesday, July 09, 2008 5:53 PM |
| **To:** | Emily Seymour; Smith, Anna Richardson |
| **Cc:** | Jonathan Rose |
| **Subject:** | RE: Chreky |

I'm copying Anna Smith on this e-mail; she's going to be helping me, and will be in contact with you, while I phone her with my two cents.

The RFA issue is fine - I'll have that for you when I return next week.

As for the documents, I think the only things that exist are some financial information, which I'm working on, and a couple new licenses. I can spare you the suspense on that last part and tell you that three employees with license problems obtained new licenses, and Serena can also testify to that information during the 30(b)(6).

**From:** Emily Seymour [mailto:ESeymour@sheppardmullin.com]
**Sent:** Wednesday, July 09, 2008 5:32 PM
**To:** Sullivan, David J.
**Cc:** Jonathan Rose
**Subject:** RE: Chreky

Thanks for the quick response, David. For the RFAs, we would appreciate a formal pleading with those objections/ admissions in your responses at some point before the depositions.

As for the document production, we would expect, by way of example, any updated financial information for the 2007 tax year for Defendants, any recent complaints made by employees regarding harassment, compensation or employment practices, recent tip disclosure forms, updated cosmetology licenses, and any updated employment policies and practices at the Salon. As you know, we provided Plaintiff's updated 2007 tax information, and we expect Defendants would do the same. Thanks again, Emily.

**From:** Sullivan, David J. [mailto:djsullivan@kaufcan.com]
**Sent:** Wednesday, July 09, 2008 5:00 PM
**To:** Emily Seymour
**Cc:** Jonathan Rose
**Subject:** RE: Chreky

I can give you a quick response, without a formal pleading right now. Given the definition of "several" in your May 22 letter, our responses/objections to both 36 and 37 are the same as those for the previous, which are otherwise similar - objections with the admission.

As for the supplementing of responses - I am not aware of anything specific that needs to be supplemented, but I'm open to supplementing if you have a specific item I'm overlooking.

**From:** Emily Seymour [mailto:ESeymour@sheppardmullin.com]
**Sent:** Wednesday, July 09, 2008 10:20 AM
**To:** Sullivan, David J.

8/20/2008

**Cc:** Jonathan Rose
**Subject:** Chreky

David,

I am writing to follow-up on a couple of outstanding discovery issues.

First, we are still waiting on a response to our letter dated May 22 requesting responses to Plaintiff's RFAs 36 and 37. You had indicated that you would be providing supplemental responses, but we have not yet received them.

Second, we are still waiting for a response to our letter dated June 18 requesting that Defendants supplement their document productions to include recent financial documents, etc. We had requested that all supplemental documents be produced by June 30 in order to prepare for the upcoming depositions, however, we have not yet received any production.

Please let us know when we can expect responses to these outstanding requests.

Thanks,
Emily

 1300 I Street, N.W.
11th Floor East
Washington, DC 20005-3314
202.218.0000 *office*
202.218.0020 *fax*
**www.sheppardmullin.com**

**Emily Seymour**
202.772.5359 *direct* | 202.312.9447 *direct fax*
ESeymour@sheppardmullin.com

Circular 230 Notice: In accordance with Treasury Regulations we notify you that any tax advice given herein (or in any attachments) is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of (i) avoiding tax penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein (or in any attachments).

Attention: This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

The information contained in this electronic message is legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If you are not the intended recipient of this message, you are hereby notified that any use, distribution, copying or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Kaufman & Canoles at (757) 624-3000 or by return e-mail to helpdesk@kaufcan.com, and purge the communication immediately without making any copy or distribution.

Disclosure Required by Internal Revenue Service Circular 230: This communication is not a tax opinion. To the extent it contains tax advice, it is not intended or written by the practitioner to be used, and it cannot be used by the taxpayer, for the purpose of avoiding tax penalties that may be imposed on the taxpayer by the Internal Revenue Service.

8/20/2008

The information contained in this electronic message is legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If you are not the intended recipient of this message, you are hereby notified that any use, distribution, copying or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Kaufman & Canoles at (757) 624-3000 or by return e-mail to helpdesk@kaufcan.com, and purge the communication immediately without making any copy or distribution.

Disclosure Required by Internal Revenue Service Circular 230: This communication is not a tax opinion. To the extent it contains tax advice, it is not intended or written by the practitioner to be used, and it cannot be used by the taxpayer, for the purpose of avoiding tax penalties that may be imposed on the taxpayer by the Internal Revenue Service.

# **<u>EXHIBIT 18</u>**



1300 I Street, NW | 11th Floor East | Washington, D.C. 20005-3314
202-218-0000 *office* | 202-218-0020 *fax* | **www.sheppardmullin.com**

Writer's Direct Line: 202-218-1018
jrose@sheppardmullin.com

August 18, 2008

*VIA E-MAIL AND U.S. MAIL*

David Sullivan, Esq.
Kaufman & Canoles, P.C.
150 West Main Street
Suite 2100
Norfolk, VA 23510
djsullivan@kaufcan.com

    Re:  <u>Jennifer Thong v. Andre Chreky Salon, et al.</u>

Dear David:

    I am writing to follow-up on an outstanding discovery issue in the above referenced matter.  Specifically, I am writing to follow up on my correspondence of June 18, 2008 and your e-mail correspondence on July 9, 2008 regarding Defendants' production of valid D.C. licenses for several Salon employees.

    Two months ago, on June 18, 2008, we requested Defendants supplement their responses to Plaintiff's document requests pursuant to Federal Rule of Civil Procedure 26(e).  Specifically, we requested Defendants provide "any updated financial information for the 2007 tax year for Defendants, any recent complaints made by employees regarding harassment, compensation or employment practices, recent tip disclosure forms, <u>updated cosmetology licenses</u>, and any updated employment policies and practices at the Salon." (<u>See</u> Correspondence from Jonathan Rose, June 18, 2008, attached.)  Given that the discovery cut-off at that time was set for July 30, 2008, and Mr. Chreky's deposition was scheduled to proceed in July, we requested these supplemental documents be produced no later than Monday, June 30, 2008.

    As of July 9, 2008, you had failed to provide us with <u>any</u> response to our letter, and failed to produce the supplemental responses as requested.  Upon inquiring about the status of the supplemental production, you responded:

    *As for the documents, I think the only things that exist are some financial information, which I'm working on, and a couple new licenses.  I can spare you the suspense on that last part and tell you that three employees with license problems obtained new licenses, and Serena can also testify to that information during the 30(b)(6).*

SHEPPARD MULLIN RICHTER & HAMPTON LLP

David Sullivan
August 18, 2008
Page 2

(See E-mail correspondence from David Sullivan, July 9, 2008, attached.)  While you provided the updated financial information on July 15, 2008, we still have not received the updated licenses for the employees with "license problems," as you promised more than a month ago. This inexplicable delay in the production of these licenses is unacceptable, and we hereby request Defendants produce these documents immediately.

This morning, we just received the detailed Verizon statements for September-December 2006 and March and June 2007, which should have been produced in February pursuant to the Court's January 18, 2008 Order.  However, please be advised we are still waiting for:

(1) detailed statements from Mr. Chreky's cell phone service provider, which should have been produced in February pursuant to the Court's January 18, 2008 Order; and

(2) documents from Defendants' computers in response to Plaintiffs' Fourth Request for the Production of Documents, which were originally due on July 24.

Defendants failure to produce documents within time constraints imposed by Court Order and the Federal Rules of Civil Procedure, as well as within the time periods outlined by Defendants' own promises, has led to increased time and cost expended by Plaintiff in this matter, and hampered Plaintiff's ability to efficiently prosecute her case.

As always, please feel free to contact me if you have any questions with respect to this matter.

Sincerely,

Jonathan G. Rose



SHEPPARD MULLIN RICHTER & HAMPTON LLP
A T T O R N E Y S   A T   L A W

1300 I Street, NW | 11th Floor East | Washington, D.C. 20005-3314
202-218-0000 *office* | 202-218-0020 *fax* | **www.sheppardmullin.com**

Writer's Direct Line: 202-218-1018
jrose@sheppardmullin.com

June 18, 2008

*VIA E-MAIL AND U.S. MAIL*

David Sullivan, Esq.
Kaufman & Canoles, P.C.
150 West Main Street
Suite 2100
Norfolk, VA 23510

        Re:   <u>Jennifer Thong v. Andre Chreky Salon, et al.</u>

Dear David:

     I am writing with respect to Defendants' Responses to Plaintiff's document requests in the above-referenced matter. Pursuant to Federal Rule of Civil Procedure 26(e), Defendants have an affirmative duty to supplement their discovery responses. If Defendants are aware of circumstances which would make a prior response incomplete or incorrect in some material respect, Defendants are under a duty to provide proper, supplemental responses. This would include, by way of example, any updated financial information for the 2007 tax year for Defendants, any recent complaints made by employees regarding harassment, compensation or employment practices, recent tip disclosure forms, updated cosmetology licenses, and any updated employment policies and practices at the Salon.

     Given that the current discovery cut-off is set for July 30, 2008, and Mr. Chreky's deposition will proceed in July, please provide these supplemental responses <u>no later than Monday, June 30, 2008</u>.

     As always, please feel free to contact me if you have any questions with respect to this matter.

                        Sincerely,

                        Jonathan G. Rose

## Emily Seymour

| | |
|---|---|
| **From:** | Sullivan, David J. [djsullivan@kaufcan.com] |
| **Sent:** | Wednesday, July 09, 2008 5:53 PM |
| **To:** | Emily Seymour; Smith, Anna Richardson |
| **Cc:** | Jonathan Rose |
| **Subject:** | RE: Chreky |

I'm copying Anna Smith on this e-mail; she's going to be helping me, and will be in contact with you, while I phone her with my two cents.

The RFA issue is fine - I'll have that for you when I return next week.

As for the documents, I think the only things that exist are some financial information, which I'm working on, and a couple new licenses.  I can spare you the suspense on that last part and tell you that three employees with license problems obtained new licenses, and Serena can also testify to that information during the 30(b)(6).

**From:** Emily Seymour [mailto:ESeymour@sheppardmullin.com]
**Sent:** Wednesday, July 09, 2008 5:32 PM
**To:** Sullivan, David J.
**Cc:** Jonathan Rose
**Subject:** RE: Chreky

Thanks for the quick response, David.  For the RFAs, we would appreciate a formal pleading with those objections/ admissions in your responses at some point before the depositions.

As for the document production, we would expect, by way of example, any updated financial information for the 2007 tax year for Defendants, any recent complaints made by employees regarding harassment, compensation or employment practices, recent tip disclosure forms, updated cosmetology licenses, and any updated employment policies and practices at the Salon.  As you know, we provided Plaintiff's updated 2007 tax information, and we expect Defendants would do the same.  Thanks again, Emily.

**From:** Sullivan, David J. [mailto:djsullivan@kaufcan.com]
**Sent:** Wednesday, July 09, 2008 5:00 PM
**To:** Emily Seymour
**Cc:** Jonathan Rose
**Subject:** RE: Chreky

I can give you a quick response, without a formal pleading right now. Given the definition of "several" in your May 22 letter, our responses/objections to both 36 and 37 are the same as those for the previous, which are otherwise similar - objections with the admission.

As for the supplementing of responses - I am not aware of anything specific that needs to be supplemented, but I'm open to supplementing if you have a specific item I'm overlooking.

**From:** Emily Seymour [mailto:ESeymour@sheppardmullin.com]
**Sent:** Wednesday, July 09, 2008 10:20 AM
**To:** Sullivan, David J.

8/18/2008

**Cc:** Jonathan Rose
**Subject:** Chreky

David,

I am writing to follow-up on a couple of outstanding discovery issues.

First, we are still waiting on a response to our letter dated May 22 requesting responses to Plaintiff's RFAs 36 and 37. You had indicated that you would be providing supplemental responses, but we have not yet received them.

Second, we are still waiting for a response to our letter dated June 18 requesting that Defendants supplement their document productions to include recent financial documents, etc. We had requested that all supplemental documents be produced by June 30 in order to prepare for the upcoming depositions, however, we have not yet received any production.

Please let us know when we can expect responses to these outstanding requests.

Thanks,
Emily

---



1300 I Street, N.W.
11th Floor East
Washington, DC 20005-3314
202.218.0000 *office*
202.218.0020 *fax*
*www.sheppardmullin.com*

**Emily Seymour**
202.772.5359 *direct* | 202.312.9447 *direct fax*
ESeymour@sheppardmullin.com

---

Circular 230 Notice: In accordance with Treasury Regulations we notify you that any tax advice given herein (or in any attachments) is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of (i) avoiding tax penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein (or in any attachments).

Attention: This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

---

The information contained in this electronic message is legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If you are not the intended recipient of this message, you are hereby notified that any use, distribution, copying or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Kaufman & Canoles at (757) 624-3000 or by return e-mail to helpdesk@kaufcan.com, and purge the communication immediately without making any copy or distribution.

Disclosure Required by Internal Revenue Service Circular 230: This communication is not a tax opinion. To the extent it contains tax advice, it is not intended or written by the practitioner to be used, and it cannot be used by the taxpayer, for the purpose of avoiding tax penalties that may be imposed on the taxpayer by the Internal Revenue Service.

8/18/2008

# **<u>EXHIBIT 19</u>**

## Emily Seymour

**From:**  Emily Seymour
**Sent:**  Thursday, August 21, 2008 2:42 PM
**To:**  'Sullivan, David J.'
**Cc:**  'Bredehoft, John M.'; Jonathan Rose
**Subject:** Thong v. Chreky

David,

We are writing to follow-up on numerous concerns regarding Defendants' failure to comply with their discovery obligations.

First, we just received your letter regarding telephone records from AT&T today.  Curiously, it was dated and sent last Friday via U.S. Mail instead of by fax, pdf or other quicker means.  We understand you have now finally requested Mr. Chreky's cellular telephone records from AT&T in order to comply with the Court's January 18 Order.

Second, we are writing to follow up on our correspondence of August 6 regarding Defendants' deficient responses to Plaintiff's Fourth Request for Documents, and our meet and confer on August 11th.  On August 12, you indicated that a computer expert was on-site at the Salon reviewing communications, and you anticipated receiving those documents "within the next 24 hours."   To date, we still have not received those documents.

Also, in regard to Defendants' responses to Plaintiff's Fourth Request for Production, we had requested a privilege log demonstrating the "privileged" communications between Defendants and their estate planner which you withheld from production.  To date, we still have not received this privilege log.

Third, we are writing to follow up on our correspondence of this Monday August 18, where we requested the DC cosmetology licenses for the three employees with "license problems."  We have received absolutely no response to this letter.  To date, we still have not received those documents.

Fourth, you have indicated on several occasions that Defendants CPA has prepared a statement of net worth for Defendants for the purposes of this litigation. Ms. Tosi-Miller testified in July that she was working on this statement - clearly it should have been completed by now.   To date, we still have not received this statement.

Fifth, also during our meet and confer on August 11th, we had requested that Defendants produce updated "performance reports" on the current Salon employees (for 2007 and 2008).  Defendants have already produced these reports through 2006, but you agreed to supplement this production.  We still have not received those documents.

We have been extremely patient in trying to work with you on your numerous discovery failures over the past few months, including granting numerous extensions.  We have written several correspondence over the past few weeks regarding these discovery issues - with no response from Defendants.  You have still failed to produce several categories of documents or otherwise provide concrete information as to how or when you will produce these documents.  Your consistent failures have impeded Plaintiffs' ability to prosecute her claims.

Unless we receive these outstanding materials by noon tomorrow, we will seek the intervention of the Court.

Regards,
Emily

# EXHIBIT 20

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JENNIFER THONG              )

       Plaintiff            )

v.                      )       Civil No. 1:06-1807 (RCL)

ANDRE CHREKY SALON, et al.    )

       Defendants.        )

## PLAINTIFF JENNIFER THONG'S FIRST SET OF
## INTERROGATORIES TO DEFENDANTS

Pursuant to Fed. R. Civ. P. 34, Plaintiff Jennifer Thongs ("Ms. Thong" or "Plaintiff"), by and through her attorney, hereby requests that Defendants Andre Chreky, Andre Chreky Salon, and SPAC, LLC (collectively "Defendants") answer under oath the interrogatories set forth below no later than thirty (30) days after the service of these requests upon Plaintiff.

These requests are continuing in nature, and require Defendants to promptly serve a supplemental response if additional documents are acquired by Defendants after its initial response.

These requests shall be read and interpreted in accordance with the definitions and instructions set forth below:

## DEFINITIONS AND INSTRUCTIONS

1. **Definitions**

1. The word "document" is used in the broadest sense possible and means the original and all drafts of all written or graphic matter, however produced or reproduced, of any kind or description, whether or not sent or received, and all copies thereof which are different in

relating to the removal of clients and whether any records were kept relating to employees that were not to receive additional clients or were to have clients reassigned to others.

12.     For the period 1998 to the present, provide information describing or memorializing the Salon's compensation practices, including but not limited to its policies and procedures for determining rate of pay and overtime practices.

13.     Describe the method used by Defendants to record hours worked by employees, and how tips were recorded and paid to employees.

14.     State the full names, addresses and the telephone numbers of all persons who assist with the preparation and maintenance of Defendants' business records, including but not limited to individuals assisting or performing audits, book keeping/record keeping, and tax preparation.

15.     For the period 1998 to the present, identify and describe the business relationship between Mr. Chreky, Mrs. Chreky, the Salon, and SPAC, including but not limited to information regarding any contractual relationships or leasing agreements that may exist, or information regarding the transfer of assets, property or liability between these entities.

16.     For the period 1998 to the present, provide annual financial information about the Defendants, including but not limited to the Defendants' assets, liabilities, revenues, debts, cash flow and net worth.

17.     For the period 1998 to the present, identify and describe all mortgages and loans owned or held by Defendants in any capacity, including in an individual, partnership, or corporate capacity.

18.     For the period 1998 to the present, identify and describe the assets of Mr. Chreky and any assets owned by any company, partnership, or business entity in which Mr. Chreky has an interest, including but not limited to his real property, homes, stocks, bonds, retirement accounts, savings accounts, or other investments.

19.     Identify all civil, criminal, and/or administrative actions to which you have been a party or in which you have testified, whether in court, in deposition or by declaration or affidavit, including the case name, court or agency name, identifying numbers assigned by the agency or court, the nature of the action, and the outcome of the action.

20.     Identify and describe any electronic data storage or computer system used to maintain the Defendants' business records, and provide the contact information for any individual or company responsible for maintaining the system.

21.     State in detail the factual and legal basis for the defenses you set out in your Answer.

22.     Identify and describe specifically all persons who assisted Defendants in the preparation of the answers to these Interrogatories and all sources of information, including any documents Defendants consulted or referred to in the preparation of the answers.

# **<u>EXHIBIT 21</u>**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JENNIFER THONG | ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) | Civil No. 1:06-1807 (RCL) |
| ANDRE CHREKY SALON, et al. | ) ) | |
| Defendants. | ) ) ) | |

### PLAINTIFF JENNIFER THONG'S FOURTH REQUEST
### FOR THE PRODUCTION OF DOCUMENTS TO DEFENDANTS

Pursuant to Fed. R. Civ. P. 34, Plaintiff Jennifer Thong ("Ms. Thong" or "Plaintiff"), by and through counsel, hereby requests that Defendants Andre Chreky, Andre Chreky Salon, and SPAC, LLC (collectively "Defendants") produce all documents and things listed herein to undersigned counsel within thirty (30) days of receipt of this request.

These requests are continuing in nature, and require Defendants to promptly serve a supplemental response if additional documents are acquired by Defendants after its initial response.

These requests shall be read and interpreted in accordance with the definitions and instructions set forth below:

### DEFINITIONS AND INSTRUCTIONS

**1.    Definitions**

1.    The word "document" is used in the broadest sense possible and means the original and all drafts of all written or graphic matter, however produced or reproduced, of any kind or description, whether or not sent or received, and all copies thereof which are different in

any way from the original (whether by interlineation, receipt stamp, notation, indication of copies sent or received, or otherwise), including without limitation, any paper, book, account, photograph, blueprint, drawing, sketch, schematic, agreement, contract, collective bargaining agreement, memorandum, press release, circular, advertising material, correspondence, letter, telegram, telex, object, report, opinion, investigation, record, transcript, hearing, meeting, study, note, notation, working paper, summary, intra-office communication, diary, chart, minute, index sheet, computer software, invoice, records or recording, or summary of any telephone or other conversation, or of any interview or of any conference, or any other written, recorded, transcribed, punched, taped, filmed or graphic matter, including any electronically stored information in computerized format, computer files, or e-mail of which you have or have had possession, custody or control.

2.    The term "person or entity" means natural persons, businesses, proprietorships, partnerships, firms, corporations, institutions, employee benefit plans, bodies, joint ventures, other forms of legal entity, municipal corporations, federal, state and local governments, all departments and agencies thereof, and any other governmental agencies, any other group or combination acting as an entity, and any representative or agent of the foregoing.

3.    The word "communication" means any manner or form of information or message transmission, however produced or reproduced, whether by "document," electronic transmission, orally or otherwise, which is made, distributed or circulated between or among persons, or data storage or processing units, and any and all documents containing, consisting of, or relating or referring, in any way, either directly or indirectly, to a communication.

4.    The word "Defendants" means Andre Chreky, Andre Chreky Inc./ Andre Chreky Salon, and SPAC, LLC, and any of these entities' owners, directors, employees, agents, managers, representatives, or attorneys.

5.    The word "Mr. Chreky" means Defendant Andre Chreky.

6.    The word "SPAC" means Defendant SPAC, LLC, its owners, directors, employees, agents, managers, representatives, or attorneys.

7.    The word "Salon" means Defendant Andre Chreky Inc./ Andre Chreky Salon, its owners, directors, employees, agents, managers, representatives, or attorneys.

8.    The words "you" and "your" means Andre Chreky, Andre Chreky Inc./ Andre Chreky Salon, and/or SPAC, LLC, and any of these entities' owners, directors, employees, agents, managers, representatives or attorneys.

9.    The words "Plaintiff" or "Ms. Thong" mean Plaintiff Jennifer Thong.

10.    The word "Answer" means the Answer filed by Defendants Andre Chreky, Andre Chreky Salon, and SPAC, LLC in the United States District Court for the District of Columbia (Civil Action No. 1:06-1807), on April 13, 2007, in response to Plaintiff's Amended Complaint, filed on February 16, 2007.

11.    The word "any" means each and every as well as any one.

12.    The words "and" and "or" shall be construed conjunctively or disjunctively, as necessary to make the request inclusive rather than exclusive.

13.    The word "identify" means:

    (a)    with respect to a natural person, to state the full name, present or last known title or position, business affiliation, and business address.

-3-

      (b)     with respect to a corporation, to state the corporation's full name and address.

      (c)     with respect to a person or entity other than a natural person or corporation, to state its proper name or designation and its address.

      14.     The words "relating" or "referring" means consisting of, embodying, summarizing, describing, mentioning, evidencing, or in any way pertaining to.

      15.     The word "date" means the exact day, month and year, if ascertainable, or if not, the best approximation thereof.

      16.     "Personnel file" means the type of file used by Defendants to organize and maintain documents related to Salon employees including documents such as: employment applications, employment agreements, performance evaluations, communications, and similar records related to employment.

      17.     "Goodman & Company" means Goodman & Company, LLP and any of its owners, directors, employees, partners, agents, managers, representatives, or attorneys.

      18.     "Nicole Juliano" means Nicole Juliano or any person with a similar name.

**2.**     **<u>Instructions</u>**

      1.     If Defendants assert a claim of attorney-client privilege or attorney work product with respect to any of the requests contained herein:

      a.     State the precise nature of the privilege or other protection claimed;

      b.     Describe the document with sufficient particularity such that Plaintiff can evaluate the claim of privilege or other protection;

      c.     Identify each person or entity who signed the document and the identity of each person who participated in preparing the document;

d.      State the date of the document;

e.      State the title or heading of the document;

f.      State the numbered request(s) to which the document is responsive;

g.      State the present (or if present is not known, the last known) location and custodian of the document; and

h.      Identify any person or entity who reviewed or received copies of the document.

2.      In producing documents pursuant to this request, please indicate to which numbered request(s) each document is responsive.

3.      This document request is continuing in nature, and to the extent that the Defendants, the Defendants' attorneys, agents or representatives become aware of additional documents responsive to this request subsequent to their initial response to this request, the Defendants are requested immediately to provide such documents, or if such documents are not in the Defendants' custody, possession or control, to provide the information requested herein.

4.      These document requests shall apply to the time period January 1, 1998 to the present.

## DOCUMENTS REQUESTED

1.    The complete personnel file of Nicole Juliano.

2.    The complete personnel file of Marilyn Wareham.

3.    Any and all communications between Defendants and Elizabeth Biggs.

4.    Any and all communications between Serena Chreky and Elizabeth Biggs.

5.    Any and all communications between Defendants and Alban ("Alby") Salaman.

6.    Any and all communications between Serena Chreky and Alban ("Alby") Salaman.

7.    Any and all communications between Defendants and Goodman & Company.

8.    Any and all communications between Serena Chreky and Goodman & Company.

9.    Any and all communications between Defendants and Terrell Braden.

10.   Any and all communications between Serena Chreky and Terrell Braden.


Dated: June 24, 2008

                                        Respectfully submitted,

                           By:    _____
                                        Jonathan G. Rose (DC Bar No. 446208)
                                        Emily N. Seymour (DC Bar No. 500201)
                                        Sheppard Mullin Richter & Hampton, LLP
                                        1300 I Street, N.W.
                                        11th Floor East
                                        Washington, D.C. 20005
                                        (202) 218-0000 (phone)
                                        (202) 218-0020 (fax)
                                        jrose@sheppardmullin.com
                                        eseymour@sheppardmulllin.com

                                        Counsel for Plaintiff Jennifer Thong

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of June 2008, I caused true copies of the foregoing

Plaintiff Jennifer Thong's Fourth Request for the Production of Documents to be personally

served on:

> John Bredehoft, Esq.
> David J. Sullivan, Esq.
> Kaufman & Canoles, P.C.
> 150 West Main Street, Suite 2100
> Norfolk, Virginia 23510

_____
Emily N. Seymour

# **EXHIBIT 22**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JENNIFER THONG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 1:06-01807 (RCL) |
| | ) |
| ANDRE CHREKY SALON, ET AL. | ) |
| | ) |
| Defendants. | ) |
| | ) |

DEFENDANTS' RESPONSES TO PLAINTIFF
JENNIFER THONG'S FOURTH REQUEST FOR THE
PRODUCTION OF DOCUMENTS TO DEFENDANTS

Defendants Andre Chreky, Andre Chreky Salon, and SPAC, LLC (the "Defendants"), by counsel, respond to Plaintiff Jennifer Thong's Fourth Request for the Production of Documents to Defendants as follows:

1.    The complete personnel file of Nicole Juliano.

**Response:**    No such documents exist.

2.    The complete personnel file of Marilyn Wareham.

**Response:**    *See* documents enclosed herewith bates labeled Chreky 006525 - 006527.

3.    Any and all communications between Defendants and Elizabeth Biggs.

**Objection:**    Defendants object to this Request, as it is not limited with respect to applicable time period or subject matter of communication, and is not likely to lead to the discovery of admissible evidence. Defendants assert that Elizabeth Biggs is an independent contractor retained by Andre Chreky, Inc. and SPAC, LLC to perform bookkeeping and related tasks. Furthermore, Defendants assert that Plaintiff has served a subpoena on Ms. Biggs seeking

these documents, and has received responsive documents from Ms. Biggs; accordingly, this Request is duplicative.

**Response:**    Notwithstanding and without waiving this objection, Defendants do not possess any responsive documents.

4.    Any and all communications between Serena Chreky and Elizabeth Biggs.

**Objection:**    Defendants object to this Request, as it is not limited with respect to applicable time period or subject matter of communication, and is not likely to lead to the discovery of admissible evidence. Defendants assert that Elizabeth Biggs is an independent contractor retained by Andre Chreky, Inc. and SPAC, LLC to perform bookkeeping and related tasks. Furthermore, Defendants assert that Plaintiff has served a subpoena on Ms. Biggs seeking these documents, and has received responsive documents from Ms. Biggs; accordingly, this Request is duplicative.

**Response:**    Notwithstanding and without waiving this objection, Defendants do not possess any responsive documents.

5.    Any and all communications between Defendants and Alban ("Alby") Salaman.

**Objection:**    Defendants object to this Request as it seeks documents protected by the attorney-client privilege. Furthermore, Defendants object on the grounds that this Request is not limited with respect to applicable time period or subject matter of communication, and is not likely to lead to the discovery of admissible evidence.

6.    Any and all communications between Serena Chreky and Alban ("Alby") Salaman.

**Objection:**    Defendants object to this Request as it seeks documents protected by the attorney-client privilege. Furthermore, Defendants object on the grounds that this Request is not

2

limited with respect to applicable time period or subject matter of communication, and is not likely to lead to the discovery of admissible evidence.

7.    Any and all communications between Defendants and Goodman & Company.

**Objection:**    Defendants object to this Request, as it is not limited with respect to applicable time period or subject matter of communication, and is not likely to lead to the discovery of admissible evidence. Defendants assert that Goodman & Company is an accounting firm retained by Defendants to perform tax preparation services and to provide related tax advice.    Furthermore, Defendants assert that Plaintiff has served a subpoena on Goodman & Company seeking these documents, and has received responsive documents from Goodman & Company; accordingly, this Request is duplicative.

**Response:**    Notwithstanding and without waiving this objection, *see* documents enclosed herewith bates labeled Chreky 006528 - 006530.

8.    Any and all communications between Serena Chreky and Goodman & Company.

**Objection:**    Defendants object to this Request, as it is not limited with respect to applicable time period or subject matter of communication, and is not likely to lead to the discovery of admissible evidence. Defendants assert that Goodman & Company is an accounting firm retained by Defendants to perform tax preparation services and to provide related tax advice.    Furthermore, Defendants assert that Plaintiff has served a subpoena on Goodman & Company seeking these documents, and has received responsive documents from Goodman & Company; accordingly, this Request is duplicative.

**Response:**    Notwithstanding and without waiving this objection, *see* documents enclosed herewith bates labeled Chreky 006528 - 006530.

9.    Any and all communications between Defendants and Terrell Braden.

3

**Objection:**    Defendants object to this Request, as it is not limited with respect to applicable time period or subject matter of communication, and is not likely to lead to the discovery of admissible evidence. Defendants assert that Terrell Braden is an employee of Adams National Bank, a bank that provides ordinary banking services for Defendants.

**Response:**    Notwithstanding and without waiving this objection, Defendants do not possess any responsive documents.

10.    Any and all communications between Serena Chreky and Terrell Braden.

**Objection:**    Defendants object to this Request, as it is not limited with respect to applicable time period or subject matter of communication, and is not likely to lead to the discovery of admissible evidence. Defendants assert that Terrell Braden is an employee of Adams National Bank, a bank that provides ordinary banking services for Defendants.

**Response:**    Notwithstanding and without waiving this objection, Defendants do not possess any responsive documents.

August 5, 2008                                    Respectfully submitted,


John M. Bredehoft
D.C. Bar No. 375606
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, Virginia 23510
757-624-3225 (direct voice line)
757-624-3169 (facsimile)
jmbredehoft@kaufcan.com

4

## CERTIFICATE OF SERVICE

This will certify that a true copy of the foregoing Plaintiff Jennifer Thong's Fourth Request for the Production of Documents to Defendants was sent via first class mail and electronic mail, this 5th day of August, 2008, to:

Jonathan G. Rose, Esq.
Sheppard Mullin Richter and Hampton, LLP
1300 I Street, N.W.
11th Floor East
Washington, DC 20005

John M. Bredehoft

::ODMA\PCDOCS\DOCSNFK\1384097\4

# EXHIBIT 23

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - x
RONNIE BARRETT,                :
        Plaintiff,            :
                              :
    vs.                       :    C.A. No.
                              :    07-CV-0250(RCL)
ANDRE CHREKY,                 :
ANDRE CHREKY SALON/ANDRE      :
CHREKY INC., SPAC, LLC,       :
                              :
        Defendants.          :
- - - - - - - - - - - - - - x
                              :
JENNIFER THONG,               :
                              :
        Plaintiff,           :
                              :    Civil No.
    vs.                       :    1:06-1807(RCL)
                              :
ANDRE CHREKY SALON, et al.,   :
                              :
        Defendants.          :
- - - - - - - - - - - - - - x

Washington, D.C.
Tuesday, October 16, 2007

        The deposition of MAURICE CLARKE, called for

examination by counsel for Defendants in the

above-entitled matter, pursuant to Notice, in the

offices of Sheppard, Mullin, Richter & Hampton, LLP,

1300 I Street, N.W., 11th Floor East, Washington,

JARDIM REPORTING ASSOCIATES
(703) 867-0396

2

D.C., convened at 9:03 a.m., before PAULA J. EASTES,
a notary public in and for the District of Columbia,
when were present on behalf of the parties:

APPEARANCES:

    On behalf of the Plaintiff Ronnie Barrett:

        ARI M. WILKENFELD, ESQUIRE
        Katz, Marshall & Banks, LLP
        1718 Connecticut Avenue, N.W.
        Sixth Floor
        Washington, D.C. 20009
        (202) 299-1140

    On behalf of the Plaintiff Jennifer Thong:

        JONATHAN G. ROSE, ESQUIRE
        EMILY SEYMOUR, ESQUIRE
        Sheppard, Mullin, Richter & Hampton
        1300 I Street, N.W.
        11th Floor East
        Washington, D.C. 20005
        (202) 772-5390

3

APPEARANCES (Continued):

    On behalf of the Defendants:

        JOHN M. BREDEHOFT, ESQUIRE
        DAVID SULLIVAN, ESQUIRE
        Kaufman & Canoles
        150 West Main Street
        Suite 2100
        Norfolk, Virginia 23510
        (757) 624-3225

    Videographer:  RON MEEK

    Also Present:  ANDRE CHREKY

4

C O N T E N T S

| WITNESS | EXAMINATION BY COUNSEL FOR | |
| | PLAINTIFFS | DEFENDANTS |
| MAURICE CLARKE | | |
| By Mr. Bredehoft | -- | 6 |
| By Mr. Rose | 54 | -- |
| By Mr. Wilkenfeld | 166 | -- |
| By Mr. Bredehoft | -- | 197 |

E X H I B I T S

| Clarke Deposition Exhibits | MARKED |
| No. 1 | 54 |
| No. 2 | 166 |

57

10:28:21 1    touching?

10:28:22 2        A.    Three.

3        Q.    And do you recall the first time that you

4    brought these concerns to Mr. Chreky's attention?

10:28:35 5        A.    Yes.

10:28:36 6        Q.    Could you please tell me approximately when,

10:28:39 7    as best you can recall?

10:28:40 8              I know it was a while ago.  As best you can

10:28:43 9    recall, could you please tell me when this first

10:28:47 10   discussion with Mr. Chreky was where you notified him

10:28:52 11   of complaints by female employees regarding his

10:28:56 12   sexually inappropriate behavior in the workplace?

10:28:59 13       A.    The first one was with an employee named

10:29:06 14   Nicole, I want to say it is Juliano.  She actually

10:29:16 15   was a make-up artist.

10:29:19 16       Q.    Approximately when was this that she came to

10:29:22 17   you to complain about Mr. Chreky's conduct?

10:29:27 18       A.    Again the exact date I am unaware of.

10:29:34 19       Q.    Approximate.

10:29:38 20       A.    I still want to put it in the sense of when

10:29:41 21   we first became in the Washingtonian publication.

22   And actually this was the day before she left at her

58

10:29:59 1    lunch break.

10:30:01 2              She asked me to accompany her to a

10:30:05 3    restaurant that was right down the street, McCormack

10:30:10 4    and Smith.  She handed me a letter.  She had in her

10:30:21 5    hand at least two other letters.

10:30:24 6              At that point in time I read the letter.

10:30:29 7    The letter explained in detail different times and

10:30:41 8    dates in which inappropriate contact, communication,

10:30:50 9    and to my recollection some hotel stays that she had

10:31:08 10   made, and, again, the letter was very explicit on

10:31:14 11   what she was asked to do.

10:31:17 12       Q.    By who?

10:31:18 13       A.    By Andre.

10:31:22 14             And that she wanted to make sure that I

10:31:31 15   knew.  And she also asked me to give him a letter.

16             So, after that meeting I went to him and I

10:31:41 17   gave him the letter.

18        Q.    As best you can recall, even though I

10:31:47 19   understand the subject matter may be uncomfortable,

10:31:51 20   as best you can recall, could you please describe for

10:31:54 21   me what she detailed in her letter with respect to

10:31:58 22   the sexually inappropriate conduct Mr. Chreky

59

10:32:02 1    directed at her?

10:32:08 2        A.    One incident that I can recall he asked her

10:32:11 3    to take a picture.  On the particular picture it

10:32:21 4    stated to where her posterior was showing.

10:32:33 5              There were some other details, but I can't

10:32:36 6    remember exactly about those details and be able to

10:32:44 7    say exactly what it was.

10:32:45 8        Q.    I understand.

9              You said that she gave you a copy of this

10:32:48 10   letter?

10:32:49 11       A.    Yes.

10:32:49 12       Q.    And that she had two other copies --

10:32:52 13       A.    She had two other copies.

14       Q.    -- that she handed you.

10:32:53 15             And she gave you one of those copies --

10:32:56 16       A.    She gave me one.

10:32:57 17       Q.    -- to give to Mr. Chreky?

10:32:58 18       A.    Right.

10:32:59 19       Q.    Was this letter sort of in the form of a

10:33:02 20   resignation letter with an explanation as to why she

10:33:05 21   was?

10:33:05 22       A.    No.

60

10:33:06 1              It was an explanation because she was

10:33:08 2    actually leaving that day.  It was actually a total

10:33:18 3    explanation of pretty much the start to finish of her

10:33:22 4    employment and the things that she encountered and

10:33:27 5    what happened to her.

10:33:31 6        Q.    And although I understand you say you can't

10:33:33 7    remember the exact specifics of what was detailed in

10:33:37 8    the letter, do you recall whether or not there were

10:33:40 9    attempts at inappropriate touching of Nicole?

10:33:45 10       A.    Yes.

10:33:45 11       Q.    Described in this letter?

10:33:47 12       A.    Yes.

10:33:48 13       Q.    And do you recall Mr. Chreky inviting her,

10:33:53 14   whether or not the letter contained invitations, for

10:33:56 15   her to join Mr. Chreky at a hotel or other place

10:34:00 16   where they could be alone to have sex?

10:34:04 17       A.    I can't remember the sex part.  But I do

10:34:12 18   remember it -- well, actually her staying at a hotel.

10:34:15 19   I don't know which hotel it was.  But it is a vague

10:34:20 20   recollection of that letter as far as what is stated.

10:34:25 21       Q.    As best you can recall, this description of

22   the stay in the hotel, was that an out of town event

61

10:34:33 1  that Mr. Chreky was also at?

10:34:35 2      A.   No.

10:34:16 3      Q.   So, it was a local hotel?

4      A.   Right.

10:34:43 5      Q.   Is there anything else that you can recall

10:34:45 6  with respect to the letter that describes the

10:34:47 7  sexually inappropriate conduct of Mr. Chreky towards

10:34:51 8  her, towards Nicole?

10:34:55 9      A.   No.  I can't.

10:34:57 10      Like I said, I remember reading the letter

10:35:00 11  in detail, but the time frame from which that has

10:35:08 12  transpired has been a long time.

10:35:07 13      Q.   Certainly.

10:35:09 14      When Nicole brought this letter to you, were

10:35:12 15  you stunned that there were allegations that

10:35:16 16  Mr. Chreky was conducting himself in this manner,

10:35:23 17  sexually inappropriate behavior towards his

10:35:26 18  employees, or was that something you were already

10:35:29 19  familiar with through other complaints?

10:35:31 20      A.   I wasn't stunned.

10:35:32 21      Q.   You were not stunned?

10:35:33 22      A.   No.

62

10:35:33 1      Q.   And the reason you were not stunned was

10:35:38 2  because other female employees had come to you before

10:35:40 3  Nicole had with this letter describing similar types

10:35:43 4  of conduct by Mr. Chreky?

10:35:46 5      MR. BREDEHOFT:  Asked and answered.

10:35:46 6      Don't pay any attention to me.

7      BY MR. ROSE:

10:35:47 8      Q.   You may answer.  He is just clarifying the

10:35:50 9  record from his perspective.

10:35:53 10      A.   My recollection of that situation is because

10:35:57 11  prior to that she had communicated to me.  She also

10:36:04 12  had asked me on several different occasions to

10:36:09 13  actually walk her to her car, to actually say that I

10:36:16 14  was giving her a ride home, even though at this time

10:36:20 15  this young lady actually she lived in Baltimore.

10:36:24 16      And what would transpire is that she would

10:36:27 17  find herself in a situation to where he wanted to

17 18  talk to her after work, which would consequently by

10. . 19  us not finishing until 8:00 or 9:00 o'clock at night

10:36:40 20  it would almost get to be like too late for her to

10:36:44 21  actually drive home.

10:36:45 22      Q.   Well, let me ask you a question about the

63

10:36:47 1  situations where he would be trying to talk with her.

10:36:51 2      Could you please describe for me as best you

10:36:53 3  can what were those situations?

10:36:58 4      Was Mr. Chreky asking her to come up to his

10:36:59 5  office to speak with him?

10:37:01 6      A.   Yes.

10:37:02 7      Q.   And do you recall that occurring on more

10:37:04 8  than one occasion?

10:37:05 9      A.   Yes.

10:37:14 10      Q.   So, she gave you the letter that day and you

10:37:17 11  weren't stunned to receive it.

10:37:18 12      What did you do with the letter?

10:37:21 13      A.   Actually I misplaced the letter.

10:37:24 14      I gave his letter to him.

10:37:25 15      Q.   And did you stand there while Mr. Chreky

10:37:30 16  read it?

10:37:31 17      A.   Actually he didn't read it.  He opened it

10:37:35 18  up, he looked at it and he balled it up.

10:37:38 19      Q.   He balled it up in a piece of trash?

10:37:40 20      A.   Yes.

10:37:40 21      Q.   Did you see him throw it away?

10:37:43 22      A.   No.  Because actually he still had it in his

64

10:37:46 1  hand.  He just balled it up.

10:37:48 2      Q.   But he balled it up, crumpled it up --

10:37:51 3      A.   Right.

10:37:52 4      Q.   -- appearing that he thought of it as trash?

10:37:54 5      A.   Yes.

10:37:58 6      Q.   And did Nicole give you the other copy that

10:38:00 7  was in her hand?

10:38:03 8      A.   I don't know who she actually gave the other

10:38:08 9  copy to.  And she might have even had more copies.

10:38:10 10      Q.   Okay.

10:38:11 11      A.   But I know she had more than just the copy

10:38:14 12  that she gave to me.

10:38:17 13      Q.   And are you aware of whether or not this

10:38:24 14  letter was distributed or received by any other

10:38:27 15  employees of the salon or management of the salon?

10:38:30 16      A.   I can't.  I can't speculate on that.

10:38:33 17      Q.   Do you know whether or not Mrs. Chreky

10:38:36 18  became aware of this letter?

10:38:38 19      A.   I don't know.

10:38:38 20      Q.   What about any assistants to Mrs. Chreky, do

10:38:43 21  you know whether or not they were made aware of the

10:38:46 22  letter, or at least the contents of the complaints in

16

17

65

10:38:48  1    the letter?

10:38:48  2        A.   I don't know.

10:--:--  3        Q.   Did Mr. Chreky say anything at all after he

          4    balled up the letter without reading it?

10:39:03  5        A.   And again, I can't repeat his exact, you

10:39:06  6    know, comment, you know, concerning it.

10:39:13  7             It was the start of a denial scenario.  As

10:39:22  8    things moved forward with other complaints that I

10:39:27  9    received it pretty much became the same verbiage

10:39:31 10    behind it.

10:39:31 11        Q.   Can you, as best you can recall, and I

10:39:33 12    understand that this is some years ago, but as best

10:39:35 13    you can recall, what was the tone of Mr. Chreky's

10:39:38 14    response?

10:39:38 15        A.   Well, of course, he was cross about it.  And

10:39:57 16    he also too was, I guess to put it in a category,

10:39:57 17    that they had problems, that it was, you know,

10:40:05 18    something mental, you know, stress.

10:40:08 19        Q.   Trying to blame it on the person

10:40:10 20    complaining?

10:40:11 21        A.   Yes.  Some type of, you know, scenario along

10:40:15 22    that line.

66

10:40:16  1        Q.   And did you say anything else to Mr. Chreky?

10:40:18  2        A.   Not on that particular incident.

10:40:21  3        Q.   Okay.

10:40:23  4             And let me just ask you this.

10:40:25  5             As a result of your bringing this document,

10:40:29  6    this letter from Nicole to Mr. Chreky, and personally

10:40:35  7    handing it to him, do you know whether or not there

10:40:35  8    was any investigation by Mr. Chreky or anyone else in

10:40:38  9    the management as to trying to investigate the

10:40:44 10    complaints?

10:40:45 11        A.   No.  There wasn't.  Not to my knowledge.

10:40:54 12        Q.   You mentioned that there were at least two

10:40:58 13    other occasions that you spoke directly with

10:40:59 14    Mr. Chreky with respect to complaints that were made

10:41:02 15    by female employees about his sexually inappropriate

10:41:06 16    conduct.

         17        A.   Yes.

1'       18        Q.   Could you describe the next instance that

1...     19    you recall where you spoke with Mr. Chreky about such

10:41:10 20    complaints?

10:41:13 21        A.   The next incident was with the assistant --

10:41:22 22    I mean, with a manager.  Her name was Carmen.

67

10:41:27  1        Q.   Okay.

10:41:31  2             Could you please describe for me what was it

10:41:34  3    that Carmen came to you and complained about with

10:41:37  4    respect to Mr. Chreky's sexually inappropriate

10:41:40  5    conduct?

10:41:40  6        A.   Well, Carmen came to me and said that she

10:41:48  7    was having a sexual relationship with Andre and that

10:41:52  8    she wanted to end the sexual relationship.

10:42:00  9        Q.   Was she upset when she was telling you this?

10:42:03 10        A.   Yes.

10:42:05 11        Q.   What else did Carmen tell you on that

10:42:07 12    occasion?

10:42:08 13        A.   Well, I mean, pretty much that was the gist

10:42:14 14    of the conversation.

10:42:14 15             That very next day she was leaving to go on

10:42:17 16    vacation and she didn't want me to say anything to

10:42:25 17    him until that following week.

10:42:28 18        Q.   But the clear import of her conversation

10:42:28 19    with you was that she did want you to say something

10:42:31 20    to Mr. Chreky?

10:42:32 21        A.   Yes.

10:42:36 22        Q.   And did you have a conversation with

68

10:42:38  1    Mr. Chreky with respect to Carmen's complaints?

10:42:43  2        A.   Yes.

10:42:43  3        Q.   Or with respect to the sexual relationship

10:42:45  4    she was having with Mr. Chreky?

10:42:47  5        A.   Yes.

10:42:48  6        Q.   And what did you tell Mr. Chreky?

10:42:53  7        A.   That, again the gist of it, I can't remember

10:42:59  8    exactly what I said to him concerning that situation,

10:43:00  9    no more than again that she was uncomfortable in that

         10    situation.

10:43:13 11             And again his reply was the same as the

10:43:18 12    first reply, except he wasn't angry about it, but

10:43:23 13    explained to me that again she was having personal

10:43:30 14    problems and it is something that had manifested, you

10:43:34 15    know, in her head.

10:43:37 16             But again, prior to that, in my

10:43:42 17    communication with her she told me that she can

10:43:47 18    describe his anatomy.  And that is, you know, again I

10:43:56 19    am like, I kind of figured if she could, how could

10:44:00 20    she if something hadn't happened?

10:44:03 21        Q.   I have to tell you.  I have never gone here

10:44:07 22    in any case before.

# <u>EXHIBIT 24</u>

Capital Reporting Company

Page 1

                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
-----------------------------------:

JENNIFER THONG,                    :
            Plaintiff,             :
       vs.                         : C.A. No.:

                                   : 1:06-1807 (RCL)

ANDRE CHREKY SALON, et al.,        :

            Defendants.            :

-----------------------------------:
RONNIE BARRETT,                    :
                                   :
            Plaintiff,             :
                                   :
       vs.                         : C.A. No.:
                                   : 07-CV-0250 (RCL)
ANDRE CHREKY SALON, et al.,        :
            Defendants.            :

-----------------------------------:
                            Washington, D.C.
                       Tuesday, June 24, 2008

Deposition of:

                    ELIZABETH BIGGS

called for oral examination by counsel for

Plaintiff Thong, pursuant to notice, at Sheppard,

Mullin, Richter & Hampton, L.L.P., 1300 I Street,
Northwest, 11th Floor East, Washington, D.C., before
Shari R. Broussard, RPR, of Capital Reporting

Company, a Notary Public in and for the District of
Columbia, beginning at 12:10 p.m., when were present
on behalf of the respective parties:

Page 98

1    A    I would see their names on a payroll
2   register.  But, again, there have been a lot of
3   names that have come and gone and -- and I -- I
4   don't recall whether they've ever been on payroll
5   or not.
6    Q    Okay.  You think the children of your
7   employers are names that you might forget?
8    A    I -- yeah, I -- they could have been on
9   the payroll records and I didn't take much note of
10  it.  Yeah, I don't know whether they have been paid
11  through the salon or not since I've been there.  I
12  don't recall ever seeing their names, but I can't
13  say that --
14   Q    Are you --
15   A    -- they've never been paid.
16   Q    Do you know whether or not they file any
17  income tax --
18   A    I --
19   Q    -- returns?
20   A    I know that in the -- the last year there
21  was -- the same CPA firm that, you know, filed the
22  Chrekys did a gift -- a gifting tax for them of

Page 99

1   some kind.  I don't recall exactly what that form
2   was, but...
3    Q    You say that -- that these teenagers had
4   to file some sort of tax form last year that you're
5   aware of?
6    A    Yes, I'm aware that there was a tax form
7   that related to gifts.
8    Q    Gifts from where?
9    A    From Andre and Serena.
10   Q    And what were the form of these gifts?
11   A    Money.  They set up accounts for them,
12  and that's all been, you know, recognized and --
13  and the proper forms filed with the IRS.
14   Q    What were the amount of the gifts?
15   A    One year it was a hundred thousand
16  dollars to each of the daughters.
17   Q    Well, we were just talking about one
18  year.  We're talking about the last year.  Has
19  there been more than one year where they've been
20  given substantial gifts?
21   A    Then they were given I believe it was
22  $24,000 each.  So one would have been, I guess, in

Page 100

1   '06 and then one in '07.  I --
2    Q    So you were aware that each of them got
3   $24,000, and that would be $12,000 from each
4   Mr. and Mrs. Chreky, and that would be to avoid the
5   gift tax, correct?
6    A    I believe that was the -- yeah.
7    Q    But you're saying the most recent year
8   they were given a far more substantial gift?
9    A    No, it was the first year.
10   Q    It was the first year?
11   A    They were given a hundred thousand
12  dollars each.
13   Q    Do you have any understanding as to the
14  logic behind their gift giving?
15   A    Let's see.  I, you know, obviously I can
16  only speculate on what Andre was thinking -- on
17  what Andre and Serena were thinking.
18   Q    They never ever discussed with you that
19  we're thinking -- we're thinking of making a
20  substantial gift to our children and how that might
21  impact their personal finances or otherwise?
22   A    They -- they did ask me if they could do

Page 101

1   that and what the tax implications were, and I
2   forwarded all those questions to the CPA.
3    Q    And what did the CPA say?
4    A    Oh.  It's complicated.  It's in one of
5   those e-mails.  I'm betting you've read it.
6   There's a million dollar gifting that could happen
7   that affects the, you know -- I don't know.  I have
8   not committed all the IRS bits to memory.  But I --
9   what I do know is that the CPA is completely aware
10  and has filed the appropriate tax filings that are
11  required.
12   Q    After the CPA provided the advice to you,
13  did you relate to the Chreky -- you relayed that
14  information to the Chrekys, correct?
15   A    If it was by e-mail, it was probably
16  e-mail copied to Serena as well.
17   Q    But, again, my question is did you have
18  any discussions with either Mr. or Mrs. Chreky with
19  respect to that piece of tax advice --
20   A    Tax advice.
21   Q    -- given by their CPAs?
22   A    I guess only this is what she said and so

26  (Pages 98 to 101)

# Capital Reporting Company

Page 186

1    provide a client?
2        A    No.
3        MR. SULLIVAN: Foundation.
4        THE WITNESS: I -- I think a bookkeeper
5    would provide that. A bookkeeper or certainly
6    someone with as much experience as I have knows
7    that you can't move money from one company to
8    another without charging an interest rate.
9        Now, maybe it was bad advice and I should
10   have charged more, but it was paid back before the
11   end of May, so --
12   BY MR. ROSE:
13       Q    Okay. Were there any negotiations?
14       A    No.
15       Q    Mr. Chreky didn't negotiate with himself?
16       A    No, he did not as far as I know.
17       Q    You just presented a piece of paper based
18   on what you thought was -- was appropriate?
19       A    Correct.
20       Q    Okay. And you have the ability to have
21   money moved between SPAC and Andre Chreky, Inc.?
22       A    Only if I'm asked by Andre, and I always

Page 187

1    copy Serena because I think that's appropriate.
2        Q    Is that a yes?
3        A    That is a yes with a copy to Serena so
4    that she has that.
5        Q    The answer is that you can move money
6    between accounts, correct?
7        MR. SULLIVAN: This has been asked and
8    answered a few times.
9        MR. ROSE: I know. I know. I just want
10   to --
11       THE WITNESS: I would not do it and I
12   don't think that the banker would do it if he --
13   BY MR. ROSE:
14       Q    Okay.
15       A    I don't think that the banker would do it
16   if he did not see that Serena was included in the
17   e-mail. He knows that way that she's in the loop
18   and that --
19       Q    I'm not suggesting there's anything
20   toward. I'm just trying to get a sense of what
21   your functions are and include.
22       A    Correct, and -- and I believe --

Page 188

1        Q    And moving money, directing the movement
2    of money between accounts is one of the
3    responsibilities?
4        MR. SULLIVAN: Asked and answered.
5        THE WITNESS: Again, only when I'm
6    directed to do so, and I do not believe that the
7    banker would do it without Serena being copied on
8    the e-mail because that would not be appropriate.
9        MR. ROSE: Okay. We're going to take a
10   little break. We'll be right back.
11       MR. HADLEY: The time is 3:28 p.m. We're
12   going off the record.
13       (Brief recess.)
14       VIDEO TECHNICIAN: The time is 3:40 p.m.
15   We're back on the record.
16   BY MR. ROSE:
17       Q    How many credit cards do the Chrekys
18   have?
19       A    I'm --
20       MR. SULLIVAN: Foundation.
21       THE WITNESS: I'm only aware of one
22   corporate credit card, which is an American Express

Page 189

1    card.
2    BY MR. ROSE:
3        Q    Is it one account with separate cards?
4        A    Correct.
5        MR. SULLIVAN: Foundation.
6    BY MR. ROSE:
7        Q    And who has those cards?
8        A    Andre and Serena.
9        Q    Uh-huh. When the account comes in, does
10   it show who billed -- I'm sorry -- who was
11   responsible for the individual charge?
12       A    Correct. There's a listing --
13       Q    Or which card at least was used?
14       A    Correct.
15       Q    Okay. Same account, separate cards and
16   it has their names on it like Andre and Serena on
17   one card and the other?
18       A    Correct.
19       Q    And do you go through the -- the charges
20   allotted to the corporate card to ensure that
21   they're business expenses?
22       A    I record them in the -- in Peachtree,

48 (Pages 186 to 189)



2bb6d1d6-0da7-460f-a8e8-6cc61d41008d

## Capital Reporting Company

Page 198

1 purchase of the Porsche was legitimate or not, but
2 I asked the question of the CPA who gave her
3 answer.
4 BY MR. ROSE:
5    Q    Do you believe that it's a legitimate
6 business purpose for a business to simply transport
7 someone who works for the business round-trip to
8 and from their home?
9    A    You know, you're asking me questions that
10 I believe I've already answered.  I -- I did not
11 make a judgment call on whether that was a business
12 expense or not.  I just asked the CPA for her
13 advice on it and she said --
14    Q    I'm just asking you a question.  That's
15 all.
16    A    Sure.
17    Q    That's -- that's it.  You're the one
18 who's looping back.  The answer is a simple yes or
19 no.
20         Could you please reread the question for
21 her?
22         Believe me, if I had asked the question

Page 199

1 before, he would have objected.  Okay.
2         (The reporter read the record as
3         requested.)
4         MR. SULLIVAN:  Same objection.
5 Foundation.
6         MR. HADLEY:  If you know.
7         THE WITNESS:  I don't know whether it's a
8 legitimate business expense or not.
9 BY MR. ROSE:
10    Q    You don't think that has any -- has any
11 bearing on your responsibilities as a bookkeeper,
12 for a business to make any kind of determination
13 along those lines?
14    A    That's correct, yes.
15    Q    Whose responsibility is that?
16         MR. SULLIVAN:  Asked and answered.
17         THE WITNESS:  Because I believe that
18 they're tax issues and a CPA is the sort of person
19 who needs to answer those.  So I forward those --
20 all that sort of question to the CPA.
21 BY MR. ROSE:
22    Q    Why didn't you just tell the Chrekys to

Page 200

1 call the CPA?
2    A    Because one of the things that they ask
3 me to do is talk to the CPA for them.  It's just
4 more convenient for them I believe.
5    Q    Are you familiar with the old children's
6 game, Telephone Game?
7    A    Yeah.
8    Q    Do you believe there's anything to it
9 that things get lost in translation even by smart,
10 well-meaning people?
11    A    I suppose it's possible.  Most of the
12 answers come back via e-mail and most of them are
13 copied to Serena as well.
14    Q    So you're saying --
15    A    So --
16    Q    -- that they are communicating directly,
17 they're just not having to actually type out the
18 e-mail, you're performing that service as part of
19 your responsibilities for your fees?
20    A    Correct.
21         (Biggs Exhibit Number 9 was
22         marked for identification.)

Page 201

1 BY MR. ROSE:
2    Q    Ms. Biggs, I'm showing you a document
3 that's been marked as Exhibit 9.
4    A    Correct.
5    Q    Directing your attention to the e-mail at
6 the bottom of the page, it's not the one all the
7 way at the bottom, it's the one from Mrs. Chreky to
8 Charlotte with a cc: to you and it's dated
9 March 24th, 2008.  Do you see that?
10    A    I do.
11    Q    Okay.  Who's Charlotte?
12    A    She's someone who works at an insurance
13 broker.
14    Q    Okay.
15    A    This was in regards to a payment on an
16 insurance policy.
17    Q    Okay.
18    A    Charlotte Bruzek, O'Donovan & Associates.
19    Q    Okay.  It says, "Hi Charlotte - I've
20 copied our CFO, Elizabeth Biggs, on this e-mail,
21 but to the best of my knowledge we did mail out a
22 check for you.  We will be in touch with you

51 (Pages 198 to 201)

2bb6d1d6-0da7-460f-a8e8-6cc61d41008d

# EXHIBIT 25



1300 I Street, NW  |  11th Floor East  |  Washington, D.C.  20005-3314
202-218-0000 *office*  |  202-218-0020 *fax*  |  **www.sheppardmullin.com**

Writer's Direct Line: (202) 218-1018
jrose@sheppardmullin.com

August 6, 2008

*VIA E-MAIL AND U.S. MAIL*

David Sullivan, Esq.
Kaufman & Canoles, PC
150 West Main Street, Suite 2100
Norfolk, VA 23510
djsullivan@kaufcan.com

                    Re:     Thong v. Chreky, et al.

Dear David:

            We are in receipt of Defendants' responses to Plaintiff Jennifer Thong's Fourth
Request for the Production of Documents in the above-referenced matter.  After reviewing
Defendants' responses and the six (6) pages of documents produced concurrently therewith, we
believe Defendants' responses are unacceptable and fail to comply with their duty to produce all
responsive documents.  We are writing in a good-faith effort to resolve these concerns pursuant
to Local Rule 7(m) of the United States District Court for the District of Columbia.

            As you are well aware, the scope of discovery is "broad", allowing for discovery
regarding any matter, not privileged, relevant to a claim or defense.  Tequila Centinela, S.A. de
C.V. v. Bacardi & Co. Ltd., 242 F.R.D. 1, 6-7 (D.D.C. 2007) (Lamberth, J.).  The term
"relevance" at the discovery stage is a broadly construed term and is given very liberal treatment.
Id.  The treatment of the term is so liberal that relevant information sought need not even "be
admissible at trial if the discovery appears reasonably calculated to lead to the discovery of
admissible evidence."  Id.; F.R.C.P. 26(b)(1).

            Once relevance has been established, the burden is on the party objecting to the
discovery to show that the information sought is not readily available to it.  Id. at 8.  In order to
satisfy its burden, the objecting party must make a specific, detailed showing.  Id.  The objector
must do more than just state the objection, the objector must submit affidavits or offer evidence
which reveals the nature of the objection.  Id.

            Defendants object to a number of Plaintiff's document requests on the basis that
they are "not likely to lead to the discovery of admissible evidence."  Defendants have provided
no supporting evidence beyond that vague objection.  It is improper for Defendants to summarily
determine what discovery is or is not "likely" to lead to admissible evidence at this stage.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

David Sullivan, Esq.
August 6, 2008
Page 2

Defendants are not privy to all of Plaintiff's theories of the case and legal strategy. Plaintiff's document requests are well within the permissible scope of discovery and reasonably calculated to lead to the discovery of admissible evidence in this case.

In addition, Defendants object to the vast majority of Plaintiff's document requests on the basis that they are "not limited with respect to applicable time period." This is simply false. As indicated in Instruction No. 4, Plaintiff limited her requests to the time period of January 1, 1998 to the present - the period during which Plaintiff was employed at the Andre Chreky Salon (1998 – 2006) and the time period of this lawsuit (2006 to the present). Defendants' blanket objection has no basis will not be upheld by the Court. In an effort to narrow the areas of disagreement, however, Plaintiff is willing to discuss tailoring the applicable time period with respect to certain requests.

**Plaintiff's Fourth Request for the Production of Documents**

Document Request No. 1

Document Request No. 1 seeks the complete personnel file of Nicole Juliano.[1] Ms. Juliano's personnel file is unquestionably relevant to Plaintiff's claims of sexual harassment in this case. To Plaintiff's knowledge, Ms. Juliano previously worked as a make-up artist at the Andre Chreky Salon. Maurice Clarke testified that Ms. Juliano complained to him about Mr. Chreky's inappropriate sexual advances during her employment at the Salon. Specifically, Mr. Clarke testified that Ms. Juliano provided him with a letter explaining in explicit detail the different times and dates Mr. Chreky touched her, or made inappropriate sexual advances towards her. Mr. Clarke testified he gave this letter to Mr. Chreky as part of his efforts to bring these concerns to Mr. Chreky's attention, and Mr. Chreky balled the letter up in his hand like a piece of trash. See generally Clarke Deposition, at pp. 57-65. This letter, along with any other information about Ms. Juliano and her complaints of sexual harassment by Mr. Chreky are undisputedly relevant to Plaintiff's claims.

Defendants now claim that "no such documents exist." This response is extremely troubling. To date, Defendants have produced approximately forty (40) personnel files in this action, including the personnel files for Ms. Thong and Ms. Barrett, all of Defendants' declarants, as well as the personnel files of Ms. Thong's and Ms. Barrett's declarants. Defendants had absolutely no difficulty locating and producing the personnel files for all of these individuals, most of whom, like Ms. Juliano, have not worked in the Salon for a number of years. Yet, curiously, Defendants are "missing" the personnel file of another woman who, like Ms. Thong and Ms. Barrett, rejected Mr. Chreky's unwelcome sexual advances and detailed the events in writing – a letter which should have been placed in her personnel file. Defendants

---

[1]     Plaintiff defined "Nicole Juliano" to mean Nicole Juliano or any person with a similar name, as Plaintiff was unaware of the exact spelling of Ms. Juliano's name.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

David Sullivan, Esq.
August 6, 2008
Page 3

response is, to say the least, suspect. Please confirm all potential locations have been searched for this personnel file, and this file has not been destroyed since the commencement of this action.

Document Requests Nos. 3 & 4

      Document Request Nos. 3 and 4 seek communications between Defendants, Ms. Chreky and Ms. Elizabeth Biggs. As a preliminary matter, Defendants' "assertion" that "Elizabeth Biggs is an independent contractor retained by Andre Chreky, Inc. and SPAC, LLC to perform bookkeeping and related tasks" is simply not a proper discovery objection. Plaintiff will disregard this superfluous "assertion."

      Defendants object that Requests Nos. 3 and 4 are "not likely to lead to the discovery of admissible evidence." It is improper for Defendants to summarily determine what discovery is or is not "likely" to lead to admissible evidence at this stage, as Defendants are not privy to Plaintiff's theories of the case and legal strategy. However, it should be clear from Ms. Biggs' deposition why such communications are relevant. Curiously, Defendants did not object to Plaintiff's Rule 45 subpoena to Ms. Biggs on the basis that it was "not likely to lead to the discovery of admissible evidence," but now suddenly raise the issue when it would require Defendants to review and produce documents.

      Defendants' also object that Requests Nos. 3 and 4 are "duplicative" because Plaintiff also served a Rule 45 subpoena on Ms. Biggs, and Ms. Biggs produced responsive documents. This objection makes no sense. The Request is not "duplicative" on Defendants, as Plaintiff has not made an identical prior request on Defendants. Moreover, the fact that Plaintiff issued a Rule 45 subpoena to Ms. Biggs seeking similar communications is completely irrelevant and unpersuasive. Ms. Biggs testified she did not retain, and did not produce, all communications between herself and the Defendants because her usual business practice is to only retain communications she deems "important" and those she may need to reference at a later date. Consequently, Ms. Biggs' document production did not include all communications between her and the Defendants over the course of their four year working relationship. Certainly, additional communications exist that Ms. Biggs did not deem "important" enough for retention, but were (or should have been) retained by Defendants.

      Defendants' respond to both Request Nos. 3 and 4 by asserting that they "do not possess **any** responsive documents" (emphasis added). This response is completely implausible. Ms. Biggs has been the Defendants' bookkeeper for approximately 3-4 years and is their current bookkeeper. Ms. Biggs testified she works at the Salon in the early morning hours, and the remainder of the day corresponds with Ms. Chreky via e-mail while she is at her other job. In addition, Ms. Biggs testified she always copies Serena Chreky on all communications between herself and Adams National Bank and Goodman and Company. It is extremely difficult to

SHEPPARD MULLIN RICHTER & HAMPTON LLP

David Sullivan, Esq.
August 6, 2008
Page 4

believe the Defendants have not retained <u>any</u> of these communications regarding their personal and business finances.

Defendants should, at the very least, have retained <u>all</u> communications since the date Plaintiff filed her lawsuit as part of their document retention efforts. Moreover, Defendants have been on notice that Plaintiff sought these specific communications to/from Ms. Biggs at least as of June 24, 2008 – the date Plaintiff served her Fourth Request for Documents. To the extent that any communications between and among the Defendants, Ms. Chreky and Ms. Biggs during this time frame have been deleted, this obviously constitutes spoliation of evidence and Plaintiff intends to promptly alert the Court.

Document Requests Nos. 5 & 6

Document Request Nos. 5 and 6 seek communications between Defendants, Ms. Chreky and their estate planner, Mr. Salaman. Plaintiff understands that some, or all, of these communications with Mr. Salaman may be protected by the attorney-client privilege if Mr. Salaman is, in fact, an attorney. However, Plaintiff respectfully requests that Defendants produce a privilege log so Plaintiff can evaluate the merits of this asserted privilege, and confirm the privilege has not been waived; for example, by copying a third-party on the communications.

Document Requests Nos. 7 & 8

Document Request Nos. 7 and 8 seek communications between Defendants, Ms. Chreky and their CPA firm, Goodman & Company. As a preliminary matter, Defendants' "assertion" that "Goodman & Company is an accounting firm retained by Defendants to perform tax preparation services and to provide related tax advice" is simply not a proper objection. Plaintiff will disregard this superfluous "assertion."

Defendants object that Requests Nos. 7 and 8 are not likely to lead to the discovery of admissible evidence. As with Request Nos. 3 and 4, it is improper for Defendants to summarily determine what discovery is or is not "likely" to lead to admissible evidence at this stage, as Defendants are not privy to Plaintiff's theories of the case and legal strategy. However, it should be clear from Ms. Tosi-Miller's deposition why such communications are relevant. As with the subpoena served on Ms. Biggs, Defendants did not object to Plaintiff's Rule 45 subpoena to Ms. Tosi-Miller on the basis that it was not "likely" to lead to the discovery of admissible evidence, but now raise the issue when it would require Defendants to review and produce documents.

Defendants similarly object these Requests are "duplicative" because Plaintiff also served a Rule 45 subpoena on Ms. Tosi-Miller, and Ms. Tosi-Miller produced responsive documents. Again, this objection makes no sense. The Request is not "duplicative" on Defendants, as Plaintiff has not made an identical prior request on Defendants. Moreover, the

SHEPPARD MULLIN RICHTER & HAMPTON LLP

David Sullivan, Esq.
August 6, 2008
Page 5

fact that Plaintiff issued a Rule 45 subpoena to Ms. Tosi-Miller seeking similar communications is completely irrelevant and unpersuasive. Ms. Tosi-Miller produced the communications she retained between herself and the Defendants. However, this is far from comprehensive. Ms. Tosi-Miller did not likely retain all communications she sent to the Defendants, which would more logically be in Defendants' files. In addition, because Ms. Tosi-Miller is not a Defendant in this action, she is under no obligation to retain documents since the filing of Plaintiffs' Complaint, whereas Defendants are under such an obligation and should have retained all such communications.

In response to these Requests, Defendants produced just three (3) pages (6528-30), one invoice for tax services. This response is completely absurd. Goodman and Company has been Defendants' CPA been for the last three (3) tax years. Ms. Tosi-Miller produced documents demonstrating communications between herself and Serena Chreky – sometimes communicating multiple times a day. Some of the communications produced between and among Goodman, Ms. Biggs and Ms. Chreky are as recent as July 2008, as they were discussing the Defendants' 2007 tax filings. It is completely unbelieveable that Defendants did not retain one, single communication related to their personal and corporate finances between to and/or from their CPA over the course of this three-year relationship, even the communications regarding this year's tax filings. To the extent that any communications between and among the Defendants and Goodman have been deleted during the time Defendants were on notice of this discovery, this obviously constitutes spoliation of evidence and Plaintiff intends to promptly alert the Court.

Document Requests Nos. 9 & 10

Document Request Nos. 9 and 10 seek communications between Defendants, Ms. Chreky and Terrell Braden. Defendants' "assertion" that "Terrell Braden is an employee of Adams National Bank, a bank that provides ordinary banking services for Defendants" is simply not a proper objection. Plaintiff will disregard this superfluous "assertion."

Once again, Defendants' response to both Requests Nos. 9 and 10 asserting that they "do not possess **any** responsive documents" (emphasis added) is completely astonishing. Ms. Biggs testified she "always" copied Ms. Chreky on any communications between herself and Mr. Braden when providing Mr. Braden with any instructions regarding the Chreky's accounts at Adams National Bank. Are Defendants stating that they have not retained a single communication to/from their bank with instructions on how to handle their finances?

SHEPPARD MULLIN RICHTER & HAMPTON LLP

David Sullivan, Esq.
August 6, 2008
Page 6

      Plaintiff expected that Defendants would provide substantive responses in good faith, and we do not believe the Court will uphold Defendants' hollow objections, and responses that are completely inconsistent with the testimony given in this case. Pursuant to Local Rule 7(m) of the U.S. District Court for the District of Columbia, we would like to schedule a teleconference to discuss Defendants' inadequate discovery responses so that we can hopefully avoid filing a motion to compel with the Court, or at least narrow the areas of disagreement. We are available for a teleconference anytime this afternoon, or tomorrow, August 7th, anytime. Please let me know a time that is convenient for you on these days, or propose an alternate date and time. We would like to resolve any areas of disagreement this week so that any outstanding concerns can be addressed with the Court as soon as possible.

             Sincerely,

             Jonathan G. Rose

c:     John M. Bredehoft, Esq.

# **EXHIBIT 26**

**Emily VanSpeybroeck**

| | |
|---|---|
| **From:** | Jonathan Rose |
| **Sent:** | Tuesday, August 12, 2008 5:18 PM |
| **To:** | 'Sullivan, David J.'; Emily Seymour |
| **Subject:** | RE: Status |

Thank you very much, David.


Jonathan G. Rose
Sheppard Mullin Richter & Hampton LLP
1300 I Street, N.W.
11th Floor East
Washington, D.C.  20005
202-218-0018(direct)
202-669-0292 (cell)
202-312-9410 (fax)
jrose@sheppardmullin.com


**From:** Sullivan, David J. [mailto:djsullivan@kaufcan.com]
**Sent:** Tuesday, August 12, 2008 5:04 PM
**To:** Jonathan Rose; Emily Seymour
**Subject:** RE: Status

I can't answer that with specificity right now, but I'll update you tomorrow when I receive the documents.  As for your other request, I will address your concerns with my client.

**From:** Jonathan Rose [mailto:JRose@sheppardmullin.com]
**Sent:** Tuesday, August 12, 2008 3:56 PM
**To:** Sullivan, David J.; Emily Seymour
**Subject:** RE: Status

David,

Thank you for the update.  Could you please give us an idea of the volume.  In addition, given your client's obvious failure to make any good faith attempt to collect responsive materials in terms of e-mail, etc., we would kindly ask you to please re-double your efforts to make sure your clients are not being equally lackadaisical in their review for other responsive documents we discussed yesterday in our meet and confer -- i.e., for among other things, Nicole Juliano's (or however you spell her name) personnel file.  Best regards, JR.


Jonathan G. Rose
Sheppard Mullin Richter & Hampton LLP
1300 I Street, N.W.
11th Floor East
Washington, D.C.  20005
202-218-0018(direct)


8/20/2008

202-669-0292 (cell)
202-312-9410 (fax)
jrose@sheppardmullin.com



1300 I Street, N.W.
11th Floor East
Washington, DC 20005-3314
202.218.0000 *office*
202.218.0020 *fax*
**www.sheppardmullin.com**

**Jonathan Rose**
202-218-0018 *direct* | 202.312.9410 *direct fax*
JRose@sheppardmullin.com | Bio

Circular 230 Notice: In accordance with Treasury Regulations we notify you that any tax advice given herein (or in any attachments) is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of (i) avoiding tax penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein (or in any attachments).

Attention: This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

**From:** Sullivan, David J. [mailto:djsullivan@kaufcan.com]
**Sent:** Tuesday, August 12, 2008 3:48 PM
**To:** Jonathan Rose; Emily Seymour
**Subject:** Status

Jonathan and Emily,

I am writing to update you on a couple of discovery matters.

First, I have a new stack of bills from Verizon that we're labeling and copying for production. I think these bills will complete our production, and I expect to be able to send them out tomorrow.

Second, we had a computer expert on site today with my client collecting e-mails that I will receive in the next 24 hours. As we discussed yesterday, this review was done to expand upon our response to your fourth request for the production of documents, and to satisfy our obligation to provide response documents. Due to many circumstances, including some difficulty we experienced conducting our search and John being out of the office due to the death of his father, we understand that this has caused some delay and I apologize for that. We are working as quickly as possible to minimize delay and to provide responsive documents. We remain 100% willing to work with you on this matter, to the extent this process infringes upon your ability to take depositions or otherwise complete discovery, we will make whatever schedule changes you deem necessary to allow us to fully respond to your discovery requests and enable you to conduct important discovery proceedings such as depositions. Please let me know.

If you have any questions, I am available at your convenience.

Best Regards,

David

David J. Sullivan, Esq.
Kaufman & Canoles, P.C.
150 West Main Street
Suite 2100
Norfolk, Virginia 23510

Direct dial: 757-624-3249

The information contained in this electronic message is legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If you are not the intended recipient of this message, you are hereby notified that any use, distribution, copying or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Kaufman & Canoles at (757) 624-3000 or by return e-mail to helpdesk@kaufcan.com, and purge the communication immediately without making any copy or distribution.

Disclosure Required by Internal Revenue Service Circular 230: This communication is not a tax opinion. To the extent it contains tax advice, it is not intended or written by the practitioner to be used, and it cannot be used by the taxpayer, for the purpose of avoiding tax penalties that may be imposed on the taxpayer by the Internal Revenue Service.

The information contained in this electronic message is legally privileged and confidential under applicable law, and is intended only for the use of the individual or entity named above. If you are not the intended recipient of this message, you are hereby notified that any use, distribution, copying or disclosure of this communication is strictly prohibited. If you have received this communication in error, please notify Kaufman & Canoles at (757) 624-3000 or by return e-mail to helpdesk@kaufcan.com, and purge the communication immediately without making any copy or distribution.

Disclosure Required by Internal Revenue Service Circular 230: This communication is not a tax opinion. To the extent it contains tax advice, it is not intended or written by the practitioner to be used, and it cannot be used by the taxpayer, for the purpose of avoiding tax penalties that may be imposed on the taxpayer by the Internal Revenue Service.

8/20/2008

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

JENNIFER THONG                              )
                                            )
        Plaintiff                           )
                                            )
v.                                          )      Civil No. 1:06-1807 (RCL)
                                            )
ANDRE CHREKY SALON, et al.                  )
                                            )
        Defendants.                         )
_____   )

### [PROPOSED] ORDER

UPON CONSIDERATION of Plaintiff's Motion for a Unilateral Extension of Discovery and Motion to Compel the Immediate Production of Documents ("Motion"), Defendants' Opposition, any Reply thereto, and the entire record in this case, it is this _____ day of _____, 2008, hereby:

**ORDERED** Plaintiff's Motion shall be and hereby is **GRANTED,** and it is hereby **ORDERED** that discovery shall be extended as to the Plaintiff until October 31, 2008, and it is hereby **ORDERED** that Defendants shall produce: (1) all telephone records for Defendant Chreky's cellular phone; (2) a statement of Defendants' net worth; (3) all communications responsive to Plaintiff's Fourth Request for the Production of Documents; and (4) a privilege log detailing Defendants' communications with their Estate Planner, no later than September 8, 2008.


                                    _____
                                    United States District Judge

Notice to:

Jonathan G. Rose
Emily N. Seymour
Sheppard Mullin Richter & Hampton, LLP
1300 I Street, N.W.
Suite 1100 East
Washington, D.C. 20005
(202) 218-0000
(202) 218-0020 (fax)

Attorneys for Plaintiff Jennifer Thong


John M. Bredehoft
David J. Sullivan
Kaufman & Canoles, P.C.
150 West Main Street
Post Office Box 3037
Norfolk, VA 23514-3037
(757) 624-3225
(757) 624-3169 (fax)

Attorneys for all Defendants