IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JENNIFER THONG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 1:06-01807 (RCL) |
| ) | |
| ANDRE CHREKY SALON, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO MODIFY THE COURT'S SCHEDULING ORDER**

At issue in this discovery dispute is whether discovery should be extended by approximately one month for both parties or for only Plaintiff Jennifer Thong.[1] Defendants have requested a universal extension of time for all parties, while Plaintiff has asked this Court to order a unilateral extension of <u>her</u> discovery period by one month, which would mean that Defendants would be required to complete all discovery, including the deposition of the Plaintiff and her experts, before the Plaintiff completes third party and other discovery.[2]

As set forth in Defendants' Memorandum in Support of Defendants' Motion to Modify the Court's Scheduling Order, Defendants assert that a universal extension of discovery by

---

[1] Defendants do not oppose producing documents responsive to discovery requests. The only distinction between Defendants' willingness to produce and Plaintiff's demands is that the documents at issue, which Defendants <u>are</u> producing, have been recently prepared or are being generated by third parties. Many of these documents are being produced today (electronic communications), others are expected from a third party within days (AT&T records for an inactive account), and one other is still being generated by a CPA.

[2] Interestingly, as noted by Plaintiff in her memorandum opposing Defendants' request for a universal extension of time, as of Friday, September 5, 2008, Plaintiff had not yet submitted an expert report for one of her expert witnesses. This expert's deposition is scheduled for next week, and discovery is currently scheduled to close at the end of this month.

approximately one month is appropriate, as Defendants have not committed any of the discovery violations alleged by Plaintiff, and there is no logical reason to force Defendants to complete all discovery one month before Plaintiff completes her discovery. In response to Defendants' proposal for an even-handed extension, Plaintiff's memorandum opens with this wildly inaccurate summary of the "facts" supporting her position:

> *"Defendants have failed to comply with the Court's Order to Compel, have consistently misled Plaintiff that they would satisfy their discovery obligations, and, despite numerous extensions granted by Plaintiff, Defendants have completely failed to comply with their discovery obligations."*

(Plaintiff's Memorandum in Opposition, p. 1) (hereafter "Pl. Br.").

As explained in detail previously, Defendants have complied with the Court's Order to Compel by producing all documents within their possession.[3] As Defendants endeavored to produce telephone records not in Defendants' possession, Plaintiff and Defendants focused on the same Verizon records. As soon as it became known that Plaintiff wanted documents other than Verizon records, Defendants immediately informed Plaintiff that such records would be obtained and produced. There is absolutely nothing to suggest that Defendants have "misled" Plaintiff, other than Plaintiff's baseless assertions in support of her request for a unilateral extension of discovery.[4]

---

[3] While Plaintiff has argued that this obligation includes an obligation to produce documents in the possession of third parties, there is nothing to suggest that any such records **existed** at the time of the Court's Order. The supplemental phone records that have been produced were recreated by Verizon and AT&T, while the few remaining AT&T records being produced relate to an old, dormant account. Similarly, the personal net worth statement has **never existed** and **is being generated for the first time** by a Certified Public Accountant.

[4] The parties have been in regular contact throughout the discovery process in this case, have exchanged numerous telephone calls and e-mails discussing the production of documents in both directions, and there is absolutely no basis to accuse Defendants of trying to mislead the Plaintiff. This is simply wrong and utterly unsupported by the conduct of the Defendants throughout the entire course of discovery in this case. Plaintiff is wholly unable to back up this accusation with any <u>facts</u> whatsoever.

2

Furthermore, the suggestion that Plaintiff has "granted" previous extensions of discovery is, at best, a half truth: the parties **agreed** to these prior extensions. Discovery in this case has been ongoing for well over one year, has been consolidated for certain purposes with the Barrett case, and the schedule has been modified – at the request of both parties, in this case and the Barrett case – for various reasons. Equally ridiculous is the idea that the Defendants have "completely failed" to comply with their discovery obligations. At its core, this is an employment discrimination lawsuit. To date, Defendants have produced over seven thousand (7000!) pages of documents, including several years worth of payroll records for every employee employed by the Andre Chreky Salon, dozens of personnel files, several years worth of personal and corporate tax returns, income statements and balance sheets, cosmetology licenses, personnel policies, and various other documents. To suggest that this represents a complete failure is not only inaccurate, but is indicative of Plaintiff's over-the-top assertions[5] and misunderstanding of the underlying issues in this discovery dispute.

---

[5] Others include: (a) "Defendants apparently requested these (Verizon) documents compelled in the Court's Order only after Plaintiff inquired about their production in July." (Pl. Br. at 4; emphasis in original) (Not only is that not "apparently" the case, but it is dead wrong. Defendants immediately requested these documents from Verizon); (b) "Defendants still have not provided Plaintiff with information regarding their net worth, which has been due for over a year." (Pl. Br. at 5) (Blatantly incorrect: Defendants have provided several years worth of income tax filings for Andre Chreky, Andre Chreky, Inc., and SPAC, LLC; several years worth of payroll data for both Andre Chreky and his wife, Serena Chreky; and income statements and balance sheets for both corporate Defendants in this case. The only document being discussed by the parties at this date is the personal net worth statement for Andre Chreky: a document that has never existed and is being generated as an accommodation, an idea which was first raised in a deposition in the Barrett case in July!); (c) "… Plaintiff suspects that Defendants did not want Plaintiff to see [that there] were numerous calls made by Mr. Chreky to an employee trying to intimidate her and shape her testimony in the days prior to her deposition in this case." (Id. at n.3) (Mr. Chreky cannot telephone an employee without such a baseless and irresponsible accusation being made before this Court, with absolutely no other information in support? Mr. Chreky calls employees of the Andre Chreky Salon all the time. See A. Chreky Dep. at 339-340; 378-379 (Exhibit 1)); (d) "Defendants have offered absolutely no explanation for the CPA's inability to prepare a simple document that she testified she was working on over two months ago…" (Id. at 6) (The document is not simple and Defendants have repeatedly explained that they expected it to take some time for the CPA to obtain, review, and report on the necessary documents.); and (e) "Defendants apparently failed to perform any electronic search for documents prior to responding to Plaintiff's discovery." (Id. at 7) (Again, totally

Plaintiff's Motion for a Unilateral Extension of Discovery and Motion to Compel should be denied (since Defendants have consented to an extension, this motion is moot; this motion should be denied in all other respects), and Defendants' Motion to Modify the Court's Scheduling Order should be granted, because there are no further documents to compel in this matter and a universal extension of one month is appropriate under the circumstances.

Defendants respectfully invite the attention of the Court to the fact that the relief requested in Defendants' Motion, an extension of time in which to complete discovery, would be effectively denied if not granted before September 12, 2008, as the parties have currently slated the deposition of experts for the week following (week of September 15, 2008) and the deposition of the Plaintiff for the second week following (week of September 22, 2008), under the now-existing scheduling order.

September 8, 2008                                             Respectfully submitted,

                                              _____/s/_____
                                              John M. Bredehoft
                                              D.C. Bar No. 375606
                                              KAUFMAN & CANOLES, P.C.
                                              150 West Main Street, Suite 2100
                                              Norfolk, Virginia 23510
                                              757-624-3225 (direct voice line)
                                              757-624-3169 (facsimile)
                                              jmbredehoft@kaufcan.com

::ODMA\PCDOCS\DOCSNFK\1400585\1

---

unfounded: Defendants <u>did</u> conduct a search and Plaintiff has absolutely no basis for this wild accusation).

```
 1      Q.   Did she ever talk to your wife about your
 2   relationship?
 3      A.   Who?
 4      Q.   Carmen.
 5      A.   About what?
 6      Q.   Your relationship.
 7      A.   What relationship?
 8      Q.   Yes or no.
 9      A.   There is no relationship.  There is nothing
10   to talk to her about.
11      Q.   Do you think Lucinda Roberts has good
12   judgment?
13      A.   We all can be better in life.  I hope she
14   has good judgment.
15      Q.   She is one of your top managers, correct?
16      A.   She is a good manager.
17      Q.   She is your highest paid employee, isn't
18   she?
19      A.   Yes.
20      Q.   She is your most valued employee, you call
21   her several times a day, don't you?
22      A.   She keeps me up to date on everything.
```

1    Q.   You rely on her judgment to keep you up to
2  date every single evening when you call her about
3  what is happening at the salon, right?
4    A.   Of course.
5    Q.   You take her out on your boat, you
6  considered her to be a family friend, right?
7    A.   I take her and her son to the boat, yes.
8    Q.   You heard her testimony, did you not?
9    A.   Yes.
10   Q.   You were sitting here when she testified
11 that she had a high degree of trust and respect for
12 Maurice.  You heard that testimony, right?
13   A.   Yes, because she got him the job.
14   Q.   So she is lying too?
15   A.   She got him the job.
16   Q.   I understand that.  Is she lying too when
17 she says he is someone that she had a high degree of
18 trust and respect for?
19   A.   When she got him the job.  Ask her again,
20 because she doesn't know what Maurice said about her
21 or about anything.
22   Q.   She also testified, did she not, that she

```
 1  video record at 4:36 p.m.
 2          (Discussion off the record.)
 3          (Brief recess.)
 4          VIDEOGRAPHER:  We are now back on the video
 5  record.  The time is 4:47 p.m., and this is the start
 6  of tape 4 in the continuing video deposition of Andre
 7  Chreky.
 8          BY MS. KATZ:
 9      Q.  When was the last time you spoke to Amal?
10      A.  Maybe three weeks ago.  She come to salon to
11  get her haircut.
12      Q.  How would you describe your relationship
13  with her at this point?
14      A.  At this point or any time?  She is a client.
15      Q.  Is she still broken up with her boyfriend?
16      A.  I have no idea.
17      Q.  Did you discuss that with her?
18      A.  No.
19      Q.  What employees other than Mindy Roberts do
20  you call at home or on their cell phones?
21      A.  I call Faviola.
22      Q.  Who else?
```

1      A.     Josephine, Aubrey, Hadur.

2      Q.     Do you call these employees every day?

3      A.     I think Josephine calls me every day, gives
4 me the totals of the shop because she stays after I
5 stay. Faviola maybe four or five times a week.

6      Q.     What is your cell phone number?

7      A.     703-622-5419.

8      Q.     Do you have any other cell phone numbers?

9      A.     No.

10     Q.     Do you have any other cell phone numbers?

11           MR. BREDEHOFT: The witness said no.

12           BY MS. KATZ:

13     Q.     I am sorry. So Josephine calls you at
14 close-up to report what the revenue is?

15     A.     And calls me in the morning sometime, how
16 much change we need.

17     Q.     How much what?

18     A.     Change.

19     Q.     How much revenue goes in and out of your
20 business in a year, how much do you bring in?

21     A.     I don't know.

22     Q.     How does your salon compare to the revenue