IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JENNIFER THONG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-1807 (RCL) |
| ) | |
| ANDRE CHREKY SALON, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Upon consideration of defendants' Motion for Summary Judgment on all counts [82], plaintiff's Opposition [90], defendants' Reply [93], the applicable law and the record herein, for the reasons set forth below, the Motion for Summary Judgment is **denied** as to Counts V and VI and **granted** as to Counts I-IV and VII-IX.

**I.   Background**

Plaintiff, Jennifer Thong, is a former employee of the Andre Chreky Salon, who has alleged violations of the Fair Labor Standards Act of 1963 ("FLSA"), the D.C. Wage and Hour Act ("WHA"), the D.C. Wage Payment and Collection Act ("WPCA"), and the D.C. Human Rights Act ("DCHRA"), as well as common law actions for unlawful assault and battery, conversion, negligence, and intentional infliction of emotional distress. Ms. Thong was employed by the salon for a number of years, from 1998 until 2006, and alleges that she was subjected to constant sexual harassment during that time, in particular a series of sexual assaults during the period between 2003 and the end of 2005. She also alleges insufficient compensation and conversion of tips. Ms. Thong filed suit in Superior Court on September 22, 2006 and the case was

removed to this Court on October 18, 2006. Discovery progressed in conjunction with the related case of *Barrett v. Chreky* under Magistrate Judge Kay, and the defendants moved for summary judgment on March 17, 2009.

## II.     Legal Standard

When considering a motion for summary judgment, the court must take the facts in the light most favorable to the non-moving party, granting them "all justifiable inferences," and then determine if there remains a genuine issue of material fact upon which a jury could hold either way. *Dingle v. District of Columbia,* 571 F. Supp. 2d 87, 94 (D.D.C. 2008). In determining whether or not such an issue exists which could determine the outcome of the suit, the primary consideration is the substantive law on the claim. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

## III.    Discussion

### a. Compensation Claims (Counts I-IV)

Ms. Thong's claims for insufficient compensation as alleged in her complaint have been conclusively shown by the evidence to be false. She was initially concerned about being miscategorized as salaried when she was more accurately an hourly employee (Complaint at ¶ 11-13), but seems in her deposition to be saying that she was docked pay whenever she worked less than 40 hours a week, despite being salaried (Thong Dep. at 160-5). The evidence in the record clearly shows that Ms. Thong was paid overtime and she does not seem to dispute this in her opposition to summary judgment. The arguments on under-compensation contained in that opposition are completely different from those in the original and amended complaint and cannot serve as the grounds for recovery now. Even if Ms. Thong were to be allowed to use these new claims going forward, however, she has failed to provide this Court with sufficient evidence with

which to support these claims or any reasonable grounds upon which to estimate damages. Defendants' motion for summary judgment on Ms. Thong's compensation claims found in Counts I-IV of the Complaint is **granted**.

### b. Intentional Infliction of Emotional Distress (IIED), Negligence, Assault and Battery Claims (Counts VII, VIII, X and XI)

Claims of assault and battery are subject to a one-year statute of limitations in the District of Columbia, and while IIED claims normally have a three-year statute of limitations, when they are "intertwined" with and completely based on claims which have a shorter statute of limitations, they are subject to that period. *Speranza v. Nassim*, 107 F.3d 913, 920 (D.C. Cir. 1997). As there is no "continuing violation" theory of liability for common law torts like assault and battery,[1] Ms. Thong must rely exclusively on events which occurred after September 22, 2005 for these common law claims. She has alleged only one assault during this period, which she claims occurred "late" in 2005 when it was "cool." As defendants note in their motion, it would be impossible for a jury to determine what emotional or financial damages arose as a result of that final alleged assault or, in the case of the negligence and IIED claims, any other allegedly harassing behavior, and which arose from any stale claims upon which Ms. Thong cannot bring suit. For this reason, defendants' motion for summary judgment on Ms. Thong's common law tort claims of IIED, negligence, assault and battery (Counts VII, VIII, X and XI) is **granted**.

### c. Conversion Claim (Count IX)

While Ms. Thong has produced a great deal of evidence as to the belief of many salon stylists and other employees that tips went missing and their belief that Mr. Chreky might be at least partially responsible, she has produced no evidence upon which a reasonable jury could find

---

[1] Defendants' list of cases on this matter, found in footnote 18 on p. 21 of their reply memorandum [93], is uncontested by Ms. Thong. *See, eg., Bryant v. Miss. Military Dept.,* 519 F. Supp. 2d 622, 633 (S.D. Miss. 2007); *Lettis v. U.S. Postal Serv.,* 39 F. Supp. 2d 181, 204 (E.D.N.Y. 1998); *Seaton v. Seaton*, 971 F. Supp. 1188, 1195 (E.D. Tenn. 1997).

that Mr. Chreky did, in fact, take those tips. Ms. Thong has also failed to provide this Court with any reasonable basis upon which a jury could determine damages on this claim. This is due in part to a failure on Mr. Chreky's to keep detailed records, but it is also due to Ms. Thong's failure to keep her own records of 'expected' tips to be compared to the tips she actually reported. While she correctly points to the *Andersen* and *Hunter* cases, among others, as showing a hesitation on the part of courts to use a lack of records against the employee in an under-compensation claim, she fails to provide support for the argument that the claim should go forward without *any* basis for determining the extent of the under-compensation. Ms. Thong has not provided "sufficient evidence [of] the amount and extent of the work" for which she was not paid, as requested in *Andersen*, nor has she provided an "approximation" or "imprecise evidence" as the *Hunter* court required. *Andersen v. Mount Clemens Pottery*, 328 U.S. 680, 688 (1946); *Hunter v. Sprint*, 453 F. Supp. 2d 44, 53 (D.D.C. 2006). This Court is not insensitive to the concerns of a plaintiff who may have a valid claim but is unable to show damages as a result of a lack of records, but it is also unable to allow a claim based purely on speculation to go forward. Defendants' motion for summary judgment on Ms. Thong's conversion claim (Count IX) is **granted**.

   d.  **Sexual Harassment Claims under the DCHRA (Counts V and VI)**

   Defendants raise a number of unsuccessful challenges to Ms. Thong's sexual harassment claims under the DC Human Rights Act (DCHRA). Other than disputing the factual validity of the plaintiff's arguments (which is assumed for the purposes of summary judgment), the defendants have provided four main arguments against the claim: that the claims are, like the common-law tort claims, time-barred, that Ms. Thong's unmarried relationship to Mr. Vuong bars her right to be compensated, and that Ms. Thong cannot claim 'constructive discharge' or damages for retaliation. All of these arguments fail.

First, the defendants dispute Ms. Thong's use of the "continuing violation" doctrine as a means of getting around the DC Human Rights Act's one-year statute of limitations. The basic principle of this exemption is that a pattern of behavior which creates a "hostile work environment" is, by definition, a series of interconnected actions, and to refuse to allow suit or to limit suit because some of the actions took place outside the statutory period defeats the entire purpose of this type of sexual harassment claim. This theory allows plaintiffs to sue for the entirety of a series of actions so long as they are interconnected and at least one of them fell within the statutory period. *Amtrak v. Morgan*, 536 U.S. 101 (2002). [2]

Defendants' arguments mischaracterize the law by focusing on the language of "discrete actions," which are not eligible for the "continuing violation" exemption to the statute of limitations. But as the Supreme Court's opinion in *Morgan*, the definitive case on these kinds of statutory provisions in workplace discrimination, makes clear, these types of sexual assaults which, along with constant sexual harassment, constituted a "hostile work environment" are not what the Court had in mind when it excluded "discrete actions." The Court wrote that "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.' *Id* at 116. Other cases, in D.C. and otherwise, make clear that these kinds of events, hiring/firing or failure to promote or transfer, are the kinds of 'discrete acts' they had in mind, not specific punctuated events in a pattern of sexual harassment.

Some cases have discussed a more applicable concept of whether or not the individual acts outside the statutory period would have been independently actionable and whether the plaintiff

---

[2] *Morgan* and others deal with Title VII as opposed to the D.C. Human Rights Act. However, as a number of D.C. cases emphasize, the standards for the two are the same, with D.C. courts consistently adopting Title VII decisions for the DCHRA. The D.C. Court of Appeals explicitly adopted the *Morgan* framework for the DCHRA in *Lively v. Flexible Packaging*, 830 A2d 874, 889 (D.C. 2003).

5

knew about the events at the time. Of the two cases defendants cite to back-up this theory, one seems to be based entirely on pre-*Morgan*/*Lively* precedent[3] and the other was ultimately decided on a different ground which does not apply here, namely that none of the incidents in question occurred within the statutory period.[4] Ms. Thong also alleges that, while she was aware that the *incidents* occurred, she was not aware that they were actionable, namely, she believed that Mr. Chreky was allowed to engage in this behavior with impunity.[5] While this does not defeat the statute of limitations rules on its own, it does undermine the applicability of case-law which points to previous opportunities to sue for actionable incidents as being evidence of why a "continuing violation" theory is inapplicable, as it was the combination of events which led Ms. Thong to quit and to sue.

This type of reasoning also fails to consider the nature of Ms. Thong's allegations. While the assaults were particularly relevant while the assault and battery claim remained on the table and, as the most extreme examples of Mr. Chreky's alleged behavior, they received the most attention in the briefs and the depositions, they are certainly not the entirety of the alleged pattern of behavior which led to the hostile work environment. Ms. Thong has assembled a great deal of evidence of a highly sexualized workplace along with sexual propositions and targeted attention on Ms. Thong by Mr. Chreky to go along with those assaults; together, these allegations are more than enough to provide grounds for a sexual harassment claim, as even Mr. Chreky acknowledged in his deposition. (Andre Chreky Dep. 107-120). Not only did that general pattern quite possibly continue into the statutory period, but it also distinguishes similar cases where the plaintiffs pointed merely to a series of actions on the part of the defendants, all of them independently

---

[3] Schrader v. Tomlinson, 311 F. Supp. 2d 21, 27 (D.D.C. 2004) (Walton, J).
[4] Mayers v. Laborers' Health & Safety Fund, 478 F.3d 364, 370 (D.C. Cir. 2007).
[5] Ms. Thong claims that it was only when she consulted with a lawyer after Mr. Chreky sued her for violation of her non-compete that she discovered that she could sue for his harassing behavior. She offers as a basis for this her cultural and family background, as well as her time in Cambodia.

actionable, and tried to make a pattern. Basing a claim on actionable occurrences which form a pattern of behavior together with occurrences which are not, on their own, actionable, is very different than basing it on a series of occurrences, all independently actionable, strung together. Ms. Thong is not suing solely on the basis of a series of alleged assaults, she is suing on the basis of an alleged pattern of sexual harassment which *includes* assaults.

The second ground on which the defendants attack Ms. Thong's claim regards her allegation that Mr. Chreky's behavior led to a "loss of desire for intimacy" with her 'husband'. The problem with that allegation is that at no point has Mr. Vuong ever actually been her husband in any legal sense, and for the entirety of her employment with the Andre Chreky Salon, Ms. Thong was actually married to another man, Mr. Sem, who she had married in an arranged marriage in 1999. Though she thought she had divorced him in 2004, the divorce was not finalized until 2008, during this litigation. This is relevant because it means that any intimate relations she engaged in with Mr. Vuong during this period would theoretically be considered adultery under Virginia law and any loss of desire to engage in that intimacy would be a loss of desire to commit a theoretically criminal act. As the defense correctly notes, the impairment of the ability to do something you do not have the legal right to do is not an actionable damage under tort law. *Restatement (Second) of Torts* § 7, comment (b).

But like the timeliness argument, this attack ultimately fails. While the Virginia legislature has never repealed the adultery statute and the Virginia Supreme Court has not explicitly declared it unconstitutional, it does not pose a bar to recovery for Ms. Thong. The defense relies primarily on *Zysk v. Zysk,* a Virginia[6] case in which a wife sued a husband for allegedly infecting her with

---

[6] Because Ms. Thong and Mr. Vuong live in Virginia, the things which Ms. Thong claims a loss of desire to do would likely have taken place in Virginia. There are some questions as to whether Virginia law would necessarily apply because 1) the acts *could* have taken place in the District and not be illegal if Ms. Thong had not lost her desire to do them (the District's adultery law (D.C. Code § 22-201) was repealed as "outdated" in 2003), and 2) the District has long had an exemption to the "no recovery for a crime" principle with regards to private, consensual, sexual relations,

herpes during pre-marital sexual intercourse. *Zysk v. Zysk*, 239 Va. 32 (1990). In that case, the Virginia Supreme Court declared that the basic principle of "no recovery for illegal act" was a bar because the couple was engaged in a criminal act when the alleged injury took place. While the situation is not perfectly analogous (Ms. Thong's allegedly criminal behavior was not the cause of the injury and it was also with a third party), it is a clear Virginia precedent barring recovery in a case revolving around sexual conduct which, though common, was at the time illegal under the laws of Virginia.

*Zysk v. Zysk* was, however, overruled in 2005 by the Virginia Supreme Court in the wake of the U.S. Supreme Court's ruling in *Lawrence v. Texas*. *Martin v. Ziherl*, 269 Va. 35 (2005). While both *Zysk* and *Martin* deal explicitly only with Virginia's fornication statute and not its adultery statute, there is nothing in the *Martin* opinion which limits itself to the fornication statute. In ruling the fornication statute unconstitutional, the court in *Martin* gave as its reason that the provision, "by subjecting certain private sexual conduct between two consenting adults to criminal penalties…infringes on the rights of adults to 'engage in the private conduct in the exercise of their liberty under the Due Process Clause of the Fourteenth Amendment to the Constitution.'" *Id* at 42, citing *Lawrence v. Texas*, 539 US 558, 564 (2003). The court added, "our holding, like that of the Supreme Court in *Lawrence*, addresses…private, consensual conduct between adults and the respective statutes' impact on such conduct." *Id. at* 43.

It is unclear why the defense believes that this holding is at all limited to the fornication statute; even though the ruling did not declare the adultery statute unconstitutional, it does say that "*Zysk* is no longer controlling precedent to the extent that its holding applies to **private, consensual sexual intercourse**" *Id. at* 43 (emphasis added). While it could not be said that the

---

and there are jurisdictional questions as to whether that doctrine can apply to acts which occurred outside of the District. *Doe v. Roe*, 841 F. Supp. 444, 446 (D.D.C. 1994). This question is irrelevant for our purposes, as neither District nor Virginia law bars recovery in this case.

opinion *strikes down* the adultery statutes per se, it makes clear that it considers statutes criminalizing **private, consensual, sexual intercourse** irrelevant for the purposes of civil litigation. Without some precedent other than *Zysk* to justify the defendants' position, this Court should follow that lead and ignore the possible adultery implications of Ms. Thong's relationships for the purpose of determining the legitimacy of her claim.

  The third attack defendants launch on Ms. Thong's sexual harassment claim is on her 'constructive discharge' argument. Most of a constructive discharge claim is ultimately a matter of fact for the jury to decide, particularly the main question of whether or not the 'hostile work environment' was sufficient to make a reasonable person quit. The defendants argue, however, that the facts of this case preclude a discussion of constructive discharge, on the grounds that Ms. Thong cannot claim that Mr. Chreky's behavior was so intolerable it forced her to leave because of the length of time she put up with his alleged behavior and because of the months between the last assault and her departure. In support of this claim, they point to the 'conventional' amount of time between discriminatory behavior and departure (a few weeks to two months) and to a series of cases where the First Circuit and others held that a plaintiff had not resigned within a "reasonable" amount of time of the discriminatory conduct and was, therefore, barred from bringing a 'constructive discharge' claim. *See eg. Landrau-Romero v. Banco Popular*, 212 F3d 607, 613 (1st Cir. 2000). They also argue that this claim is time-barred, pointing to Ms. Thong's testimony which indicates that she 'decided' to leave before the statutory period began, and point to one case which contains language indicating that the statutory period begins when the decision is made, not when the plaintiff tenders his or her resignation. *Hancock v. Bureau of National Affairs*, 645 A2d 588, 590 (D.C. 1994).

  First, dealing quickly with the timeliness argument, defendants mischaracterize the *Hancock* opinion by selectively quoting to imply that the relevant date is the decision date. In that

case, the court only discusses the decision date in the context of the date of tendering the resignation, as contrasted with the effective date of the resignation. To argue that this precedent requires this Court to try to determine when Ms. Thong decided to leave the Salon and begin the statutory period then is incorrect.

The argument about length of time between the alleged assault and the resignation is likewise unpersuasive. Dealing first with the question of the amount of time between the last assault and the resignation, this argument is based on an application of the case law to a narrow view of the facts. First, the cases cited here refer explicitly to the "end" of the discriminatory behavior; but while the defendants focus their attention on the timeline of the alleged assaults, there is no indication that the pattern of sexual harassment, of which the alleged assaults are only a part, ended any significant amount of time before Ms. Thong's departure. In fact, in her opposition, Ms. Thong makes clear that she asserts and claims to be able to back-up with evidence admissible at trial that the sexual harassment was pervasive, consistent and did not end any significant time before Ms. Thong left the salon. [7] While we don't know for sure the date of the last alleged sexually charged comment or other alleged inappropriate action on Mr. Chreky's part, this Court certainly cannot say as a matter of law that Ms. Thong's departure from the salon was an "unreasonable" amount of time after the harassment "ended."

The defendants also argue that Ms. Thong's ability to "tolerate" Mr. Chreky's alleged behavior for so many years makes it unreasonable as a matter of law for a jury to find that that behavior created an intolerable work environment forcing her departure. But they have failed to provide any case law to back up this assertion, and Ms. Thong has provided at least one case from the D.C. Court of Appeals which indicates that the amount of time worked is *not* relevant, and

---

[7] Plaintiff's Statement of Facts contains examples too numerous to mention of claims that the sexual harassment was ongoing and continuous, with no indication that it ended any significant time before Ms. Thong's departure. Examples include "Repeatedly during and up to her termination, Mr. Chreky would [proposition her]" ¶15 and "From 2004 into 2006, [another allegation of inappropriate touching]" ¶ 16.

10

says that courts should instead focus on the "existence of aggravating conditions in the workplace which would lead a reasonable person to resign." *Atlantic Richfield Co v. DC Commission on Human Rights,* 515 A2d 1095, 1101 (D.C. 1986). Their assertion that, as a matter of logic, a set of conditions tolerated for many years cannot be considered intolerable enough to warrant resignation is false; Ms. Thong has claimed that she simply could no longer handle the treatment and was unwilling to take the chance that she would be subjected to another assault or worse, so when she found another option, she took it. This argument could be reasonably believed by the jury and would be sufficient to justify a verdict in her favor on the constructive discharge claim.

The fourth attack on Ms. Thong's sexual harassment claim comes on the retaliation claim. Defendants argue that Ms. Thong has not demonstrated a sufficient causal connection between protected behavior and retaliatory actions taken by Mr. Chreky. While they make timeliness arguments relating to the witnesses Ms. Thong plans to put forward which fail for the reasons discussed above, they also argue that, even with this testimony, there is insufficient evidence of a connection because there is neither causal nor temporal relation between Ms. Thong's refusal of Mr. Chreky's alleged advances and the 'book blocking' (instructing receptionists not to take new appointments for Ms. Thong and to reschedule existing ones to other stylists) or humiliation. Defendants further argue that, since Ms. Thong was paid by the hour and not the client, there is no economic damage which results from 'book-blocking'.

While a retaliation claim does require some type of connection between the protected behavior and the alleged retaliation, this burden is not a heavy one at this stage. As the D.C. Circuit wrote in 2001, "the initial burden is not great, as the plaintiff need only establish facts adequate to permit an inference of retaliatory motive." *Forman v. Small,* 271 F. 3d 285, 299 (D.C. Cir. 2001) (citing *McKenna v. Weinberger,* 729 F. 2d 783, 790 (D.C. Cir. 1984)). There is certainly enough to permit such an inference here. Further, the argument that her hourly

11

compensation precludes a claim for economic damages from book-blocking completely ignores the substantial income Ms. Thong earns from tips, which she only earns from seeing clients, and which undoubtedly increases when she is able to establish long-term relationships with valuable clients. These types of damages are certainly real and Ms. Thong has sufficient evidence to bring claims for them to a jury. Defendants' motion for summary judgment on Ms. Thong's sexual harassment (Counts V and VI) is **denied**.

### IV. Conclusion

For the foregoing reasons, this 13th day of July, 2009,

The Motion for Summary Judgment [82] will be **GRANTED** on Counts I-IV, VII-XI, and these claims will be **DISMISSED**.

The Motion for Summary Judgment [82] will be **DENIED** on Counts V and VI.

A separate order shall issue this date.


Signed by Royce C. Lamberth, United States District Judge, on July 13, 2009.